**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANIEL ALHOLM** ) | |
| **individually and on** ) | |
| **behalf of those similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. _____** |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **THE VRDOLYAK LAW GROUP, LLC,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## CLASS ACTION COMPLAINT

Plaintiff Daniel Alholm individually, and on behalf of all others similarly situated, and by and through the undersigned counsel, bring this Class Action Complaint against Defendant the Vrdolyak Law Group, LLC (referred to herein as "VLG" or "Defendant"), and allege the following based upon personal knowledge, investigation of counsel, and upon information and belief as follows:

### NATURE OF THE ACTION

1.  Plaintiff Daniel Alholm brings this action, on behalf of himself and a Class of similarly situated individuals, against Defendant VLG for violations of the Wiretap Act and related state laws, and on behalf of himself for fraud and violations of his publicity and likeness rights, as more fully described herein.

### PARTIES

2.  Plaintiff, Daniel Alholm ("Mr. Alholm"), is an adult citizen and resident of the State of Tennessee.

1

3.     Defendant The Vrdolyak Law Group, LLC, is a domestic limited liability company with its headquarters and principal place of business at 9618 S. Commercial Ave., Chicago, Illinois 60617.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction pursuant to 28 U.S.C. U.S.C. § 1331 because Plaintiff alleges violations of the Federal Wiretap Act, 18 U.S.C. §§ 2511, *et seq.*

5.     This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy involves more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interests and costs, as each member of the proposed Class is entitled to a minimum of $10,000 in statutory damages for Defendant's violation of the Wiretap Act. Further, at least one Plaintiff and Defendant are citizens of different states. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act ("CAFA") are present.

6.     This Court also has diversity jurisdiction over Mr. Alholm's state law claims pursuant to 28 U.S.C. §§1332 and 1367.

7.     This Court has personal jurisdiction over the Defendant because its principal place of business is in the State of Illinois, where it conducted the fraudulent and illegal activity at issue in this case.

8.     Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)-(c), because Defendant VLG is deemed to reside in any judicial district in which it is subject to personal jurisdiction and the time the action is commenced, a substantial part of the events giving rise to this lawsuit occurred in this District, and Defendant caused harm to Class members residing in this District.

## STATEMENT OF FACTS AND ALLEGATIONS

I. **VLG Induces Mr. Alholm to Work for VLG, to His and the Firm's Clients' Detriment**

1. **VLG Misrepresents its Capabilities and Successes**

9.     Mr. Alholm is a successful personal injury attorney, who, in 2017, had a burgeoning book of clients and a promising reputation in the Chicago legal community.

10.     In March of 2017, Mr. Alholm left his prior employer and began interviewing with several of Chicago's preeminent personal injury law firms and was being seriously considered for employment with at least three firms.

11.     On April 25, 2017, Mr. Alholm was approached by a representative of VLG, Grant Stoffle III, who expressed interest in hiring Mr. Alholm. At the same, Mr. Alhom was in the final stages of the hiring process with a different, highly respected personal injury firm in Chicago.

12.     Mr. Alholm then had a meeting with VLG hiring partners, including Edward "Eddie" Vrdolyak Jr., Peter Vrdolyak (together, "the Partners"), and Steve Armbruster. During this meeting, Mr. Alholm informed them that he was being considered by several of the top personal injury firms in Chicago.

13.     In an effort to convince Mr. Alholm to choose VLG, the Partners made several representations and assurances to Mr. Alholm, including that:

  i.     Mr. Alholm would be hired to focus on multidistrict mass tort litigation, including preexisting carbon monoxide poisoning cases and cases involving clients Mr. Alholm had already been retained by or could bring to the firm;

  ii.     VLG had all of the resources, qualified personnel, and finances Mr. Alholm would need to successfully litigate the mass tort cases;

  iii.     VLG would use the aforementioned resources, qualified personnel, and finances to successfully litigate the mass tort cases; and

iv.    as evidence of the foregoing, VLG had recovered over $9 Billion for its clients.

14.    During this meeting, Mr. Alholm expressed his concerns about VLG's reputation, particularly that the firm's founder, Edward Vrdolyak, Sr., had been disbarred and imprisoned.[1] The Partners and Mr. Armbruster assured Mr. Alholm that VLG and its employees were not involved in any improper or illegal activity, and that any such activity was long in the past.

15.    Believing these representations and assurances, Mr. Alholm chose VLG and began work on May 15, 2017.

**2.    Mr. Alholm's Reliance on VLG's Representations Proves Disastrous**

**i.    VLG Does not Provide the Resources it Promised to Mr. Alholm**

16.    Shortly after he was hired, Mr. Alholm was assigned 60 to 75 small cases to handle, leaving him to work 12- to 15-hour days with no little to no time to work on his mass tort caseload.

17.    Mr. Alholm also discovered that a majority of the VLG legal support staff were friends and/or family of the Vrdolyaks, many of whom had no office or legal work experience, leaving Mr. Alholm to take on more work and spend additional time correcting errors made by the support staff.

18.    Employee turnover and understaffing were persistent issues at VLG during Mr. Alholm's employment. Employees were routinely fired without warning, with their workload reassigned to Mr. Alholm and/or other VLG employees. This further impeded Mr. Alholm's ability to work on the mass tort cases he was hired to do and strained the resources he was promised he would have to help him.

---

[1] In 2008, Edward Vrdolyak Sr. pled guilty to mail and wire fraud in violation of 18 U.S.C. § 371 and was sentenced to ten months in prison. Then, in 2016, Vrdolyak was indicted for income tax evasion. He pled guilty on March 4, 2019 and was sentenced to eighteen months in prison.

19.     In August of 2017, the Partners made plans to open a Nashville office and asked Mr. Alholm to move to Nashville and manage the new office. The Partners assured him that the firm would support him and invest in their business as Mr. Alholm moved to Nashville and relocated his family there.

20.     Once in Nashville, Mr. Alholm began marketing for the firm, networking with attorneys, doctors, vendors, and marketing outlets to promote the business and build positive professional relationships for himself and VLG in the Nashville community.

21.     Initially, VLG financed various marketing campaigns. However, Mr. Alholm soon discovered that VLG was not capable of adequately financing the needs of the business, financial resources for which VLG promised it possessed when Mr. Alholm was hired and again when he agreed to relocate himself and his family to open the Nashville office.

22.     VLG failed to pay bills for its advertising, the VLG postage meter in Nashville was shut down for non-payment, the VLG office supply vendor stopped fulfilling VLG orders, and VLG company credit cards (photocopies of which were provided to Mr. Alholm and staff) were frequently at their limit and often were declined, all causing professional embarrassment and reputational harm to Mr. Alholm.

23.     Mr. Alholm had to spend nearly $20,000.00 of his own money on filing fees, office costs, and other work-related expenses after VLG credit cards were unavailable or declined.

## ii.     **VLG Continued its Inappropriate, Unethical, and Illegal Conduct, which Mr. Alholm Was Not Aware of Upon His Hiring, and He Relied Upon to His and His Clients' Detriment**

24.     Mr. Alholm eventually became aware of inappropriate and illegal directives and conduct of VLG managers and partners, at odds with the ethical obligations of attorneys licensed to practice law in Illinois and Tennessee.

5

25.     Mr. Alholm learned that VLG utilized client agreements that unethically took advantage of the firm's clients, as described more fully below.

26.     Specifically, VLG collected contingency fees from its clients based on Med-Pay coverage, a type of liability insurance that covers a policyholder regardless of fault. Upon information and belief, collecting a contingency fee on Med-Pay is unethical.

27.     Additionally, in addition to collecting contingency fees based on Med-Pay coverage, VLG charged its clients a "Med-Pay processing charge" – a flat fee for handling Med-Pay.

28.     VLG steered its clients to litigation lenders such as Miles Lustig (d/b/a Client Funding Solutions ("CFS")) ("CFS/Lustig"), a litigation lender whom VLG and its principals had a close, confidential relationship. VLG principals socialized and traveled with Mr. Lustig, and Mr. Lustig effectively represented himself as an alter ego and agent of VLG. When VLG clients asked for loan referrals, VLG did not refer its clients to litigation lenders other than CFS/Lustig, upon information and belief. After making these non-arms-length referrals, VLG collected contingency fees (25%) for reductions in litigation loans, based on purportedly negotiated reductions in loan repayment amounts to CFS/Lustig.

29.     VLG charged other fees to clients that were unrelated to work actually performed. These fees included "processing maintenance charges" for postage, copies, etc., "docket management fees," and fees for handling multiple cases—all fees it "accelerated" and deducted from its clients' settlements at the first possible opportunity.

30.     VLG, in order to increase recoverable economic damages in litigation (and thus, its own fees), routinely inflated clients' medical bills by directing them to receive excessive and unnecessary medical care—including from specific physicians who VLG knew would perform

excessive and unnecessary medical tests and procedures—often telling the physicians the amount of the defendant's insurance that was available to pay for such care. In exchange for increasing the value of the case by providing this care, these physicians are paid via inflated medical liens, entitling them to payments many times higher than they would receive treating insured or self-pay patients.

31. Physicians involved in this scheme include, upon information and belief, Dr. E., Dr. H., Dr. M., and Dr. B., at least one of whom has been convicted on Medicare fraud charges involving a similar kickback scheme.[2]

32. To maintain their lucrative positions in the scheme, these physicians "donated" funds to VLG-sponsored charity events—elaborate parties thrown by VLG with ostensible charitable purposes. In reality, Edward J. Vrdolyak ("Eddie Vrdolyak" or "Mr. Vrdolyak"), Pete Vrdolyak, and Steve Armbruster announced plans to "shake down" the doctors to underwrite the parties, sham charitable contributions made to VLG in recognition of the windfall the physicians continue to reap by participation in the patient and insurance fraud scheme.

33. Mr. Alholm routinely observed Eddie Vrdolyak, Peter Vrdolyak, and Steve Armbruster make antisemitic and racist jokes and use racial slurs, including in reference to VLG employees.

34. Mr. Alholm became aware of an offshore sports gambling operation involving a close friend and associate ("Mr. U") of VLG leadership. Mr. U attended VLG firm events and recruited firm employees to wager on sports through his offshore gambling operation.

---

[2] These physicians' identities are withheld to the extent they are involved in current litigation involving Mr. Alholm's clients.

35.     Mr. Alholm brought his clients' cases to VLG specifically relying on VLG's representations that it would properly staff and litigate the cases and treat the clients in good faith, not knowing that it would subject his clients to these schemes and illegal and unethical practices, and, based upon the foregoing, hurt the value of his clients' and his recovery based on these schemes.

## II.     VLG's Culture of Surreptitious Surveillance of Clients, Employees, and Others

### 1.     Eddie Vrdolyak's Fixation with Employee Surveillance

36.     Upon information and belief, Eddie Vrdolyak, managing partner of VLG, has a fixation with audio and video surveillance.

37.      Each of VLG's Chicago and Nashville offices have been, and, upon information and belief, remain equipped with a network of audio and video surveillance cameras, which Mr. Vrodlyak monitored from his office that contained numerous screens for purposes of video surveillance.

38.     Mr. Vrdolyak, who worked in one of the Chicago VLG offices, directed an employee to call Mr. Alholm to tell him that he was watching the cameras for the Nashville office and could see that the employees there were spending too much time on their cell phones.

39.     Mr. Vrdolyak also routinely instructed subordinate VLG employees to monitor each other's conversations, and regularly directed these employees to conduct "voicemail audits," wherein VLG employees reviewed other employees' phone voicemail messages. These employees were instructed by Mr. Vrdolyak to report all unanswered voicemail messages to him.

40.     In early February 2019, Mr. Vrdolyak instructed VLG employee Sean Gaughan to "pull the tape" of a conference call that occurred on February 7, 2019 between VLG employees in

the Nashville office and Mr. Vrdolyak to determine if VLG employees were making disparaging remarks about Mr. Vrdolyak while the conference room phone was muted.

41.     Upon information and belief, these employees were not aware that their meeting was audio-visually recorded.

42.     On February 8, 2019, Mr. Vrdolyak held a phone call with Mr. Alholm and other VLG employees informing them that he had a recording of the conversation in the conference room, that employees had made derogatory comments about him while the phone was muted and that the employees involved in making the derogatory comments would be terminated.

43.     Later that day or the next day, Peter Vrdolyak, another partner at VLG, called Mr. Alholm and informed him that he had also heard the recording.

44.     Eddie Vrdolyak later stated that the conference room conversation was not actually recorded, but that he had been told about the disparaging comments from another VLG employee who was in the conference room when the comments were made.

45.     Eddie Vrdolyak later explained that he had lied about there being a recording of the conference room conversation—and instructed Mr. Gaughan and Peter Vrdolyak to lie—in an effort to protect the reporting employee from retaliation from other VLG employees.

### 2.   Mr. Alholm Learns of VLG's Database of Illegally Recorded Phone Calls

46.     In January 2020, VLG's office telecommunications software was upgraded to a new SIPCOM telephone system, which, in addition to customary business communication services, was expressly marketed for its "call recording" functionality.

47.     In early January 2020, Mr. Alholm had a phone call with VLG employee, Mr. G, about Mr. G resigning from VLG. Mr. G was seemingly uncomfortable to talk to Mr. Alholm. At

the time, Mr. Alholm believed that there was another VLG employee in Mr. G's office and therefore, Mr. G was unwilling to speak candidly.

48.     On January 9, 2020, Mr. G called Mr. Alholm to caution him about what he discussed on his work phone because all phone calls made on VLG phones were being recorded and existed in a database on the computer. Mr. G informed Mr. Alholm that he was able to "look up" his phone calls, "click on them" and listen to them.

49.     Upon learning of the illegal surveillance and inquiring about his ethical duties to the Illinois Attorney Registration Disciplinary Committee and the Tennessee Board of Professional Responsibility, Mr. Alholm resigned from VLG on January 24, 2020.

50.     A VLG IT employee/consultant also told Mr. Alholm that all phone calls at the downtown Chicago office had been recorded, though at the time of the conversation, Mr. Alholm believed it was an innocent mistake that had been remedied.

**III.    VLG's Actions Continue to Cause Professional Harm to Mr. Alholm and the Class**

51.     As a result of VLG's actions, Mr. Alholm suffered and continues to suffer reputational harm, invasion of privacy, and his forced resignation.

52.     As a result of VLG's actions, Mr. Alholm and all class members suffered an invasion of privacy and other harms.

**DISCOVERY RULE, FRAUDULENT CONCEALMENT TOLLING, AND ESTOPPEL**

53.     Plaintiff repeats and re-alleges the allegations set forth above. At all times relevant to this Complaint, Defendant and its agents took active steps to conceal their unlawful activities, including the unlawful recording and fraudulent acts alleged herein. For example and without limitation, Defendant and its agents concealed their efforts to wiretap Plaintiff and the Class and continued to tell Plaintiff and the Class that no recordings has been made. Nor did Defendant tell

Plaintiff and the Class it had defrauded clients or would fail to devote resources and effort necessary to pursue litigation, contrary to its representations.

54.     As a result of VLG's actions, Mr. Alholm and all class members suffered an invasion of privacy and other harms.

55.     **Discovery Rule:** Plaintiff and the members of the Class had no knowledge of the harms or fraud alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until in the case of Mr. Alholm on or about (at the earliest) January 9, 2020, the date upon which Mr. Alholm learned of the illegal recording at issue in this case. Before and following that date, Defendant actively concealed the fraud and illegal recording in this case both from Plaintiff and the Class. For these reasons, the statute of limitations as to Plaintiff's and the Class's claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and the members of the Class have alleged in this Complaint.

56.     **Fraudulent Concealment:** In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Class. Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the existence of the illegal recording and fraud alleged herein until on or about (at the earliest, in the case of Plaintiff only) January 9, 2020. Before that time, Plaintiff and the members of the Class were unaware of Defendant's unlawful conduct, and did not know before then that Defendant was illegally recording and defrauding Plaintiff and Class members. Defendants provided no information, actual or constructive, to Plaintiff and members of the Class that they were being injured by Defendants unlawful conduct, and moreover took steps to conceal that conduct before and after January 9, 2020. Defendant specifically denied recording Plaintiff and the Class up through and until the date of the filing of

this Complaint, Plaintiff and the members of the Class could not have discovered the alleged unlawful activity, including the conspiracy or combination alleged herein, at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendant and its agents to avoid detection of, and fraudulently conceal, its and their unlawful conduct.

57.     VLG and Mr. Alholm executed an agreement, for good and valuable consideration, that tolled the statute of limitations with respect to the illegal call recording allegations in this Complaint. Mr. Alholm relies on that agreement in bringing these claims on behalf of himself and the Class.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action on behalf of himself, and behalf of all other persons similarly situated (hereinafter and before referred to as "the Class").

59.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States whose wire, oral, or electronic communications were intercepted by Defendant VLG from January 9, 2018 through the present.

Collectively, all these persons will be referred to as "Class members."

60.     Plaintiff represents, and is a member of, the Class.  Excluded from the Class is Defendant and any entities in which a Defendant has a controlling interest, Defendant's, partners, officers, directors, agents and legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiff's counsel, and Defendant's Counsel.

61.     Plaintiff does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the hundreds.

62.     Plaintiff and all members of the Class have been harmed by Defendant's acts, including, but not limited to, intercepting and/or recording Class members' wire, oral, and/or electronic communications during the class period.

63.     This Class Action Complaint seeks injunctive relief and money damages.

64.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendant and/or any vendors who intercepted and/or recorded the illegal calls on its behalf.

65.     There are well defined, nearly identical, questions of law and fact affecting all Class members. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant illegally intercepted the wire, oral, and/or electronic communications of Plaintiff and the Class;

b.      Whether Defendant defrauded Plaintiff and the Class;

c.      Whether Defendant is liable to Plaintiff and the Class for damages, and the amount of such damages;

d.      Whether Defendant should be enjoined from engaging in such conduct in the future.

66.     As a person whose phone calls were intercepted, recorded, and monitored without his knowledge or consent, Plaintiff asserts claims that are typical of each Class member.  Plaintiff

will fairly and adequately represent and protect the interests of the Class and have no interests which are antagonistic to any member of the Class.

67.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state fraud and wiretapping statutes, including federal and state consumer protection claims involving statutory damages such as those brought under the Wiretap Act.

68.     A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the Wiretap Act. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for the violation of the Wiretap Act are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because damages are set by statute and the Class and class period are discrete.

69.     Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole, most appropriate. Moreover, on information and belief, Plaintiff alleges that the Wiretap Act violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**FRAUD**
**(On Behalf of Plaintiff Daniel Alholm, individually)**

70.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     VLG made misrepresentations of material fact to Plaintiff Daniel Alholm when, among other things, it:

       a.       Represented to him that it had settled $9,000,000,000 in cases;

       b.       Represented to him that it would adequately staff, fund, and prosecute his and his clients' cases; and

       c.       Represented to him that it was no longer engaged in illegality.

72.    VLG knew that the statements made to Mr. Alholm, as outlined in ¶ 71 and otherwise above, were untrue.

73.    VLG made the untrue statements as outlined in ¶ 71 and otherwise above with the intent to induce Mr. Alholm to accept an offer of employment with VLG.

74.    Mr. Alholm justifiably relied on these statements in accepting an offer of employment with VLG.

75.    As a result, Mr. Alholm was injured and suffered damages as described herein.

<u>**SECOND CAUSE OF ACTION**</u>
**VIOLATIONS OF THE FEDERAL WIRETAP ACT, 18 U.S.C. §§ 2511, *ET SEQ.***
**(On Behalf of Plaintiff Daniel Alholm, and the Class)**

76.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

77.    18 U.S.C. § 2511 provides, in relevant part, that:

(1) . . . [A]ny person who--(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . . (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or] (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

78.     Upon information and belief, VLG has intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiff's and Class members' wire or electronic communications in violation of 18 U.S.C. § 2511(1)(a), as alleged herein; and/or

79.     Upon information and belief, VLG has intentionally disclosed, or endeavored to disclose, to another person the contents of Plaintiff's and Class members' wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of 18 U.S.C. § 2511(1)(c), as alleged herein; and/or

80.     Upon information and belief, VLG has intentionally used, or endeavored to use, the contents of Plaintiff's and Class members' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. § 2511(1)(d), as alleged herein.

81.     VLG did not notify Plaintiff or Class members of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiffs or Class members consent to such interception, disclosure, and or use.

82.     Upon information and belief, VLG is currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting VLG from violating provisions of the Federal Wiretap Act in the future.

83.     As a result of VLG's intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications in violation of 18 U.S.C. § 2511 *et seq.*,

Plaintiff and each Class member are entitled to: actual damages and any profits made by VLG as a result of its violations; or statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000; punitive damages; and an award of attorneys' fees and costs, pursuant to 18 U.S.C. § 2520.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE TENNESSEE WIRETAPPING AND ELECTRONIC SURVEILLANCE ACT, T.C.A. § 39-13-601, *ET SEQ.*
### (On Behalf of Plaintiff Daniel Alholm and the Class)

84.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

85.     T.C.A. § 39-13-601 provides, in relevant part, that:

> (a)(1) . . . [A] person commits an offense who: (A) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . . (C) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection (a); or (D) Intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know, that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection (a).

> It further provides that:
> A violation of subdivision (a)(1) . . . shall be subject to suit as provided in § 39-13-603.

86.     Upon information and belief, VLG has intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiff's and Class members' wire or electronic communications in violation of T.C.A. § 39-13-601(a)(1)(A), as alleged herein; and/or

87.     Upon information and belief, VLG has intentionally disclosed, or endeavored to disclose, to another person the contents of Plaintiff's and Class members' wire, oral, or electronic

communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of T.C.A. § 39-13-601(a)(1)(C), as alleged herein; and/or

88. Upon information and belief, VLG has intentionally used, or endeavored to use, the contents of Plaintiff's and Class members' wire or electronic communications, while knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of T.C.A. § 39-13-601(a)(1)(D), as alleged herein.

89. VLG did not notify Plaintiff or Class members of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiff or Class members consent to such interception, disclosure, and or use.

90. Upon information and belief, VLG is currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting VLG from violating provisions of the Tennessee Wiretapping and Electronic Surveillance Act in the future.

91. As a result of VLG's intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications in violation of T.C.A. § 39-13-601 *et seq.*, Plaintiff and each Class member are entitled to: actual damages and any profits made by VLG as a result of its violations; or statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000; punitive damages; and an award of attorneys' fees and costs, pursuant to T.C.A. § 39-13-603.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE ILLINOIS EAVESDROPPING ACT,
## IL ST CH 720 § 5/14-1, *ET SEQ.*
### (On Behalf of Plaintiff Daniel Alholm and the Class)

92.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

93.     720 Ill. Comp. Stat. Ann. 5/14-2 provides, in relevant part, that:

> (a) A person commits eavesdropping when he or she knowingly and intentionally: (1) Uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation; (2) Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation; . . . or (5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

94.     Upon information and belief, VLG has knowingly and intentionally used an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of Plaintiff's and Class members' private conversation, communications in violation of 720 Ill. Comp. Stat. Ann. 5/14-2(1), as alleged herein; and/or

95.     Upon information and belief, VLG used an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which VLG agents or employees were a party in violation of 720 Ill. Comp. Stat. Ann. 5/14-2(2), as alleged herein; and/or

96.     Upon information and belief, VLG has used or disclosed any information which it knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of 720 Ill. Comp. Stat. Ann. 5/14-1 *et seq.*, as alleged herein.

97.     VLG did not notify Plaintiff or Class members of the above-described intentional interception, disclosure, and/or use of their wire or electronic communications, nor did Plaintiff or Class members consent to such interception, disclosure, and or use.

98.     Upon information and belief, VLG is currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications, and therefore, are entitled to and do seek injunctive relief prohibiting VLG from violating provisions of the Illinois Eavesdropping Act in the future.

99.     As a result of VLG's intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications in violation of 720 Ill. Comp. Stat. Ann. 5/14-1 *et seq.*, Plaintiff and each Class member are entitled to: an injunction by this Court prohibiting further prohibiting further eavesdropping by VLG; actual damages as a result of VLG's violations; and punitive damages, pursuant to 720 Ill. Comp. Stat. Ann. 5/14-6.

**FIFTH CAUSE OF ACTION**
**MISAPPROPRIATION OF LIKENESS IN VIOLATION OF THE**
**TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984, T.C.A. § 47-25-1101,**
**_ET SEQ._**
**(On Behalf of Plaintiff Daniel Alholm, individually)**

100.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

101.     T.C.A. § 47-25-1105 provides, in relevant part, that:

> (a) Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, . . . without such individual's prior consent, . . . shall be liable to a civil action.

102.    VLG knowingly and intentionally used Mr. Alholm's name, photograph, and likeness on VLG's website without his permission to falsely advertise Mr. Alholm as an attorney employed by VLG in violation of T.C.A. § 47-25-1105.

103.    VLG willfully continued to falsely advertise Mr. Alholm as a VLG employee when Mr. Alholm's name, photograph, and likeness remained on VLG's website for 27 months after Mr. Alholm departed and many months after he requested that his name and photograph be removed.

104.    Mr. Alholm's likeness continues to be displayed on VLG's website to this day.

105.    As a result of VLG's knowing and intentional use of Mr. Alholm's name, photograph, and likeness impermissibly for over 27 months, Mr. Alholm suffered actual damages as described herein.

## SIXTH CAUSE OF ACTION
### MISAPPROPRIATION OF LIKENESS IN VIOLATION OF THE
### ILLINOIS RIGHTS OF PUBLICITY ACT, 765 Ill. Comp. Stat. Ann. 1075/1, *ET SEQ.*
### (On Behalf of Plaintiff Daniel Alholm, individually)

106.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

107.    765 Ill. Comp. Stat. Ann. 1075/30 provides, in relevant part, that:

> (a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person. . .

108.    VLG knowingly and intentionally used Mr. Alholm's name and photograph on VLG's website to falsely advertise Mr. Alholm as an attorney employed by VLG in violation of 765 Ill. Comp. Stat. Ann. 1075/30.

109.    VLG's use of Mr. Alholm's name and photograph on its website was for a "commercial purpose" as defined by 765 Ill. Comp. Stat. Ann. 1075/5.

110.    VLG did not obtain Mr. Alholm's consent for the continued use of is name and photograph as required by 765 Ill. Comp. Stat. Ann. 1075/30.

111.    VLG's continued use Mr. Alholm's name and photograph, purporting him to be a VLG employee, on VLG's website for many months after Mr. Alholm requested that his name and photograph be removed, constitutes a willful violation of 765 Ill. Comp. Stat. Ann. 1075/30.

112.    As a result of VLG's knowing, intentional, and willful use of Plaintiff's name and photograph, Plaintiff is entitled to: the greater of Mr. Alholm's actual damages, VLG's profits derived from its unauthorized use, or $1,000; punitive damages pursuant to 765 Ill. Comp. Stat. Ann. 1075/40; and attorney's fees and costs pursuant to 765 Ill. Comp. Stat. Ann. 1075/55.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

A.    Injunctive relief prohibiting such violations of the Wiretap Act by Defendant in the future;

B.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, punitive damages, attorney fees, expenses, and costs;

C.    As a result of Defendant's violations of 18 U.S.C. § 2511 *et seq.* and T.C.A. § 39-13-601 *et seq.*, Plaintiff seeks for himself and each Class member $100 per day of violation or $10,000, whichever is greater, in statutory damages for each and every violation of the Wiretap Act and related state statutes;

D.    An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.    An order certifying this action as a class action under Federal Rules of Civil Procedure 23, establishing an appropriate Class (and any subclasses the Court deems appropriate),

defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

      F.     An order requiring Defendant pay the costs involved in notifying the Class members about the judgment and administering the claims process;

      G.     A trial by jury on all counts so triable; and

      H.     Such other relief as the Court deems just and proper.

Dated: April 7, 2022            Respectfully submitted,

John Spragens (TN Bar No. 31445) (N.D. Ill. General Bar)
SPRAGENS LAW PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Counsel for Plaintiff and the Proposed Class*