**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ALHOLM, individually and on behalf of those similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:22-cv-01820 |
| v. | ) ) ) | Hon. Robert M. Dow |
| THE VRDOLYAK LAW GROUP, LLC, | ) ) ) | |
| *Defendant*. | ) | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

Defendant the Vrdolyak Law Group, LLC ("<u>VLG</u>"), by and through its undersigned counsel, states the following in support of its motion to dismiss the complaint brought by Plaintiff Daniel Alholm ("<u>Alholm</u>"):

**INTRODUCTION**

Using false allegations that VLG was illegally recording its clients' telephone calls, Alholm defamed the firm, interfered in its contractual relationships, and stole its Tennessee-based clients. During negotiations over Alholm's theft of VLG's clients, Alholm attempted to extort payment from VLG by threatening to bring this lawsuit. When VLG refused to be blackmailed by false claims, Alholm filed suit. Alholm's claims here are contradicted by filings he made in VLG's earlier-filed Illinois state lawsuit against him. Hoisted on his own petard, and unable to demonstrate any reason this case should remain in federal court, Alholm's complaint must be dismissed.

## FACTUAL BACKGROUND

Approximately 18 months after Alholm was entrusted by VLG to set up and operate VLG's Nashville office (and after VLG paid his moving, licensing, and related expenses) he sent a memorandum to VLG's management in Chicago, stating that he was resigning immediately and falsely accusing VLG of myriad ethical and legal violations:

> Numerous sources have informed me that VLG has been violating Federal Law (18 U.S.C. 2511) Illinois law (720 ILCS 5/14-1) and Tennessee law (39- 13-601) by illegally recording phone conversations. Under the Rules of Professional Conduct for the States of Illinois and Tennessee, I am required to report misconduct and I have done so accordingly . . . .

> The Tennessee Board of Professional Responsibility is very concerned about protecting the interests of the TN clients and told me it would be unethical for me to walk away and leave them at a firm that has no attorneys licensed in the state. They advised me to write to each client and tell them they have the choice to have me continue to represent them outside of VLG, have VLG continue to represent them even though VLG does not have any TN attorneys . . . .

> The issues addressed in this document are currently the subject of multiple bar association investigations and I believe are likely to be the subject of federal and state criminal investigations.

Alholm also sent his false allegations to the Illinois Attorney Registration and Disciplinary Commission ("IARDC") and the Tennessee Board of Professional Responsibility ("TBPR"), alleging that "Vrdolyak Law Group has been illegally recording the telephone conversations of its employees and others" and that such conduct "has been knowingly going on by Edward J. Vrdolyak and others within the firm." Alholm repeated these false allegations to an associate attorney in the Nashville office, which caused the associate to submit his own notice of immediate resignation to VLG.

Alholm never expressed any concern to VLG's management that any illegal conduct, including telephone wiretapping, was occurring, nor did he take reasonable steps to determine whether such allegations were true (they were not). The day after Alholm sent his notice of

resignation, VLG's counsel wrote from Chicago requesting that Alholm immediately contact him to discuss his allegations, including the "numerous sources" Alholm referenced who allegedly advised him VLG was recording calls. VLG's counsel also requested any other evidence or information Alholm had to support his allegations. Alholm never provided VLG with any evidence, information, or support for his false claims.

Within days of Alholm's resignation, VLG was subsequently contacted by both the TBPR and IARDC seeking responses to the communication Alholm had sent them claiming that VLG was improperly and illegally recording phone communications at its offices. VLG promptly responded, and both entities closed the inquiries, dismissing them without further investigation. Following Alholm's rash of false statements to the various professional regulators, and using his supposed ethical concerns as a pretext to funnel clients away from VLG to himself, Alholm solicited VLG's clients in Tennessee before he resigned from the firm. He advised them that he planned to resign and that they could (1) have Alholm continue to represent them, (2) remain with VLG, but that VLG had no attorneys in Tennessee (a false statement), or (3) find alternative new counsel.

On January 31, 2020, Alholm sent a memorandum to VLG advising it that 12 clients sought to discontinue their relationship with VLG and wanted Alholm and his new firm, Alholm Law PC, to represent them. VLG had received no communication from the clients indicating their desire to terminate their relationship with VLG, nor had it received any direction from clients regarding the turnover of files. VLG, through its representatives, attempted to communicate with its Tennessee clients to determine their desires with respect to the firm's representation. Five of the 12 clients Alholm identified informed VLG that they in fact expressed no desire to discontinue their relationship with VLG, contrary to Alholm's memorandum.

In 2020, VLG sued Alholm in Cook County, Illinois, for breach of fiduciary duty, tortious interference, defamation and false light due to the false statements Alholm made about VLG, and Alholm's reckless, tortious and unlawful conduct in attempting to disrupt VLG's business and steal its clients. (*See The Vrdolyak Law Group, LLC v. Daniel Alholm*, Cook County Case No. 20-CH-01852.) The parties subsequently engaged in several rounds of pleading and dispositive motion briefing and Alholm has now filed an answer to several of VLG's claims. (*See* State Case Ans., attached hereto as Exhibit A.)

After the filing of VLG's state law claim against Alholm, Alholm subsequently contacted VLG in November of 2020 in writing and reiterated that Alholm learned of alleged recordings being made in February of 2019 and again threatened to bring claims over the same. The November 2020 correspondence went much further however, and largely explains some of the reasons Alholm has brought the claims he has before this Court and the true intent behind this lawsuit. The November 2020 correspondence was a wide-ranging letter that falsely accused members of the firm of illegal conduct, the firm of fraudulent and illegal practices and of violations of the code of ethics. It made scurrilous claims against VLG and its attorneys. In exchange for not publicizing these issues in a complaint, settling class and individual claims, and giving up movie and book rights against the firm, Alholm wanted millions of dollars. Some of the allegations that have nothing to do with Alholm's claims have crept into the complaint even now in a patent attempt to bring bad publicity for the firm. Ultimately VLG refused to be extorted and advised Alholm and his counsel on April 6, 2022, as follows:

> Based on our recent communications it seems you and Dan Alholm intend to file a complaint against Vrdolyak Law Group ("VLG") tomorrow based on allegations that: 1) VLG improperly made recordings of some kind in violation of federal and/or state statutes.... As you are aware, we previously offered to make IT personnel familiar with VLG's video and communications systems available to you and Mr. Alholm to confirm that VLG has not and does not make recordings in

violation of eavesdropping statutes. We renew that offer now and are willing to entertain any inquiries you or your clients may have to confirm that allegations of improper recordings are incorrect. It is our position that if your or Mr. Alholm or anyone affiliated with either of you file a complaint based on these assertions in the face of VLG's offers to permit virtually any investigation into the falsity of the eavesdropping allegations, that filing would be in violation of the duty of an attorney to properly investigate allegations in a pleading that you know or should know are false.

*     *     *     *

In the event a complaint is filed asserting any of these allegations VLG will defend itself vigorously and bring a motion for sanctions as a result of what will clearly be vexatious litigation. While I cannot imagine an attorney would file a complaint asserting claims of this sort after what you have been told, in the event a complaint is filed, please provide me with a courtesy copy immediately thereafter.

Alholm filed his baseless Complaint in this Court on April 7 and did so in lieu of bringing counterclaims in VLG's state suit against him.[1] Alholm alleges the following: Count I (common law fraud), claiming that VLG fraudulently induced him to enter its employ; Count II (federal wiretapping violations under 18 U.S.C. §§ 2511 *et seq.*), bringing individual and class claims that VLG illegally recorded telephone calls at its offices; Count III (Tennessee wiretapping violations under Tenn. Code. Ann. § 39-13-601 *et seq.*) individually and as a class; Count IV (violations of the Illinois Eavesdropping Act, 720 ILCS § 5/14-1 *et seq.*) individually and as a class; Count V (misappropriation of personal rights under Tennessee law, Tenn. Code. Ann. § 47-25-1101) individually; and Count VI (violation of Illinois' Rights of Publicity Act, 765 ILCS § 1075/1 *et seq.*) individually. None of Alholm's claims should remain before this Court.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*,

---

[1] VLG anticipates filing a Motion for Sanctions under seal subsequent to the filing of the instant motion which more clearly lays out the allegations in the November 2020 correspondence and the motivations behind the instant lawsuit.

550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and its basis. *Twombly*, 550 U.S. at 555. The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). "[N]aked assertions devoid of further factual enhancement" are not sufficient. *Iqbal*, 556 U.S. at 663; nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When pleading fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A complaint alleging fraud must provide the who, what, when, where, and how" of the fraud's perpetration. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted).

Finally, "[i]t is, of course, axiomatic that the named representative of a class must be a member of that class." *Foster v. Ctr. Twp. of La Porte Cty.*, 798 F.2d 237, 244 (7th Cir. 1986). "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives, and adequacy of representation is one of the requirements for class certification." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).

## ARGUMENT

None of Alholm's claims should continue in this Court. Each of his wiretapping claims are subject to expired statutes of limitation and must be dismissed. Therefore, Alholm cannot serve as a named plaintiff for his class wiretapping claims and the class allegations must also be dismissed. There are no grounds for the Court to retain supplemental jurisdiction over Alholm's remaining,

unrelated state law claims. Finally, Alholm has failed to sufficiently plead fraud in the inducement. For all these reasons, the complaint should be dismissed in full.

## I.  Alholm's Wiretapping Claims Are Time-Barred and No Tolling Doctrine Saves Them.

Alholm's complaint must be dismissed, as the wiretapping claims that form the crux of his suit—and serve to carry both his class and federal jurisdiction allegations—are time-barred.

### A.  Statute of Limitations and Tolling

Alholm's wiretapping claims were subject to (at most) a two-year statute of limitations but he failed to even seek a tolling agreement until, according to his own pleadings, nearly three years had passed since he was on notice of the claimed wrongdoing. As such, the statute of limitations applies and Alholm cannot bring his wiretapping claims, and thus further cannot serve as a class representative.

Alholm's Count II, which he brings on his own behalf and that of the purported class, alleges "violations of the federal wiretap act, 18 U.S.C. §§ 2511, *et seq.*" (Compl. at 15). The federal wiretap act contains a two-year statute of limitations. "A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).[2]

Alholm's complaint claims that in January 2020, a fellow VLG employee told him that calls made on VLG telephones were being recorded. (Compl. ¶ 48.) The complaint is drafted to suggest that the two-year statute of limitations on Alholm's claims only began running at that time;

---

[2] Alholm's Tennessee wiretapping claim is likewise subject to a two-year limitations period. Tenn. Code. Ann. § 39-13-603(d). Because Alholm's Illinois wiretapping count claims that "VLG has used or disclosed any information which it knows or reasonably should know was obtained from a private conversation or private electronic communication" (Compl. ¶ 86), his claim implicates and is subject to a one-year statute of limitations. *See* 735 ILCS § 5/13-201 ("Actions for . . . publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."). Thus, Alholm's Counts III and IV must also fail.

in turn, this would mean his claim was tolled until filing by the parties' first tolling agreement, effective January 9, 2022. But according to Alholm's pleadings in VLG's parallel state case, Alholm was first on notice of VLG's purported wiretapping of telephones in March 2019. In that case, Alholm's answer to VLG's complaint "affirmatively avers that [VLG's IT consultant] stated to him in words or substance in March of 2019 that VLG was recording calls on the telephone system of the Chicago office." (Ex. A ¶ 30.)

The Court may take judicial notice of court filings, including those filed in other suits. *See Schacter v. City of Chicago*, 848 F. App'x 208, 208 (7th Cir. 2021); *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017) ("[W]hen it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate.") (citations and internal quotation marks omitted). Assuming that VLG was illegally recording telephone calls, Alholm (by his own admission) was on notice of the purported recording no later than March 2019, and was thus obligated to bring or toll his wiretapping claims no later than March 2021. He failed to do so.

Alholm's complaint sets forth multiple excuses for his violation of the statute of limitations, none of which are compelling. As an initial point, the parties' tolling agreements only began to run in January 2022 (*see* First Tolling Agreement, attached hereto as Exhibit B.) Because Alholm's two-year deadline ran out in March 2021, the tolling agreements cannot serve to extend his time for filing.

Alholm also raises the traditional doctrines of the discovery rule and fraudulent concealment in an attempt to explain his delay. As to the discovery rule, Alholm argues that he "had no knowledge of the harms or fraud alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until . . . on or about (at the earliest) January 9, 2020,

the date upon which Mr. Alholm learned of the illegal recording at issue in this case." (Compl. ¶ 55.) This allegation is squarely contradicted by Alholm's answer in the state case that he learned "in March of 2019 that VLG was recording calls on the telephone system of the Chicago office." Alholm cannot attempt to bolster his claims in the state case by citing to an alleged disclosure while in his federal suit purport that no such conversation took place.

Alholm's fraudulent concealment allegations are similarly flawed. Under the doctrine of fraudulent concealment, the statute of limitations "may be tolled if there is fraudulent concealment of the fraudulent acts. Plaintiffs then would have two years from the date a reasonable person would discover the concealment to commence an action." *Miller v. Gain Fin., Inc.*, 995 F.2d 706, 710 (7th Cir. 1993). Alholm claims that before January 2020, he was "unaware of Defendant's unlawful conduct, and did not know before then that Defendant was illegally recording and defrauding Plaintiff and Class members." (Compl. ¶ 56.) He further alleges that because VLG denied making illegal recordings, he "could not have discovered the alleged unlawful activity, including the conspiracy or combination alleged herein, at an earlier date by the exercise of reasonable diligence." (*Id.*)

As with his discovery rule argument, Alholm's fraudulent concealment argument is mooted by his claim in the state litigation that he was told VLG was recording phone calls in March 2019. *See Watkins v. United States*, 954 F.3d 947, 949 (7th Cir. 2017) (taking judicial notice of earlier-filed state claims to establish untimeliness of federal claim). Moreover, while he states that VLG denied (and continues to deny) wrongdoing, Alholm makes zero allegations demonstrating the sort of active steps a defendant must take to conceal facts sufficient to invoke fraudulent concealment. *See Miller*, 995 F.2d at 710 ("Appellants did not state how the attorneys concealed the information or in what manner any concealment was accomplished."). Because Alholm's own filing states he

was put on notice of wiretapping in March 2019, and because he presents no grounds to toll the statute of limitations, his wiretapping claims are time-barred.

### B. Class Allegations

Because Alholm's wiretapping claims are time-barred, he cannot serve as a class representative for those claims; the class action allegations must also be dismissed. "It is, of course, axiomatic that the named representative of a class must be a member of that class." *Foster v. Ctr. Twp. of La Porte Cty.*, 798 F.2d 237, 244 (7th Cir. 1986). Alholm cannot be a class member because, as noted above, he is subject to a unique statute of limitations defense. This defense may not applicable to other class members. "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives, and adequacy of representation is one of the requirements for class certification." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (citing Fed. R. Civ. P. 23). Alholm cannot serve as a class representative or bring claims on the class's behalf, so the entirety of Counts II, III, and IV must be dismissed.

### II. The Court Should Decline to Exercise Jurisdiction Over Alholm's State Fraud and Likeness Claims.

Beyond his class wiretapping claims, Alholm brings three individual claims on his own behalf: common law fraud (Count I) and violations of Tennessee and Illinois personal publicity and likeness statutes (Counts V and VI). Because Alholm cannot bring his individual or class wiretapping claims, the Court should decline to exercise supplemental jurisdiction over his individual state law claims.

Generally, supplemental jurisdiction "allows federal courts to decide state-law claims that are outside the federal diversity jurisdiction if they are so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Elecs. Games, Inc. v. Garrity*, 479

- 10 -

F.3d 904, 906 (7th Cir. 2007). As an initial point, even if Alholm's wiretapping claims were not dismissed, Alholm's individual claims do not qualify for supplemental jurisdiction. They are not "so closely related" to the wiretapping claims "as to be in effect part of the same case." Rather, they involve VLG's purported inducements to hire Alholm and the appearance of his photograph on VLG's website. These allegations are factually and legally distinct from VLG's alleged wiretapping and, in fact, are more closely related to the employee-employer claims raised in the pending state chancery case brought by VLG.

The case for dismissing the individual claims, however, is even stronger if the federal wiretapping claim is dismissed. "The district courts may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction." *Id.* (quoting 28 U.S.C. 1367). Indeed, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir. 1994)); *see also Wilson v. Price*, 624 F.3d 389, 395 (7th Cir. 2010) ("Because the federal claims were properly dismissed, it was also appropriate for the district court to dismiss the pendent state law claims in the absence of any independent basis for federal jurisdiction.")

Neither Alholm's complaint nor the posture of this case—where no answer has yet been filed—demonstrate any reason the general rule should not be applied and the state claims be dismissed. Indeed, Alholm may attempt to pursue any claims he has as counterclaims in VLG's state suit which, arguably, he should have done in the first place, but instead strategically brought here in an attempt to make good on previously made threats.

### III.     Alholm Fails to Plead Fraud with Specificity.

Finally, and as an independent basis for dismissal, Alholm's individual fraud claim (Count I) fails to plead fraud with the requisite specificity. "A complaint alleging fraud must provide the who, what, when, where, and how" of the fraud's perpetration. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted).

Alholm's fraud claim is based on the allegation that he was induced to enter VLG's employ by allegedly false statements; namely, that Alholm would be able to work on multidistrict mass tort litigation; that VLG "had resources, qualified personnel, and finances" Alholm needed to litigate his mass tort cases; and that VLG had recovered over $9 billion for its clients. (Compl. ¶ 13.) Finally, Alholm claims he "expressed his concerns about VLG's reputation, particularly that the firm's founder, Edward Vrdolyak, Sr., had been disbarred and imprisoned. The Partners and Mr. Armbruster assured Mr. Alholm that VLG and its employees were not involved in any improper or illegal activity, and that any such activity was long in the past." (*Id.* ¶ 14.)

None of these allegations sufficiently allege fraud, which requires pleading "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Cain v. Osman*, 286 F. App'x 934, 936 (7th Cir. 2008) (quoting *Wernikoff v. Health Care Serv. Corp.*, 877 N.E.2d 11, 16, (Ill. App. Ct. 2007)).

First, VLG's purported statements that Alholm would have the necessary support to focus on his multidistrict tort litigation, and Alholm's belief that he was not given his desired level of support, are matters of opinion unsuitable for a fraud claim. "To establish fraud under Illinois law, the defendants must prove a misrepresentation of *fact*." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293,

1298 (7th Cir. 1993) (emphasis added). "A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." (*Id.*) (citations and internal quotation marks omitted). Second, Alholm fails to allege that VLG's claimed $9 billion in recovery was false, what he believes the actual recovery figure to be, the difference between them, or that such difference was material enough to induce him to work for VLG.

Third, Edward Vrdolyak Sr. is not a member of VLG and was never a member of the firm during Alholm's tenure there. Mr. Vrdolyak's status as a *former* attorney was a matter of public record. Alholm fails to show why any of Vrdolyak Sr.'s purported actions should be attributed to VLG at any point. Furthermore, even assuming that Alholm's false allegations regarding VLG's wiretapping were true, Alholm fails to plead that they were occurring at the time of his interview, thus rendering VLG's purported statements false. Finally, none of Alholm's false and irrelevant claims intended to embarrass VLG, such as alleged offensive jokes, provide any basis for a fraud claim. They are purposefully included here in an attempt to smear VLG as Alholm previously threatened to do.

## CONCLUSION

WHEREFORE, Defendant the Vrdolyak Law Group, LLC prays that the Court dismiss with prejudice Plaintiff Daniel Alholm's Complaint; enter judgment in Defendant's favor and against Plaintiff; tax all costs to Plaintiff; and enter and award such other and further relief as it deems necessary and proper.

Dated: July 5, 2022                            Respectfully submitted,

- 13 -

<u>/s/ Robert D. Sweeney</u>
Robert D. Sweeney
William C. O'Hara
SWEENEY, SCHARKEY & BLANCHARD LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2022, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ Robert D. Sweeney

EXHIBIT A

FILED
6/15/2022 11:27 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH01852
Calendar, 11
18296972

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

THE VRDOLYAK                )
LAW GROUP, LLC              )
                            )
      Plaintiff,           )
                            )
v.                          )    Case No. 20 CH 1852
                            )    Calendar 11
DANIEL ALHOLM,              )
                            )
      Defendant.           )

## DEFENDANT'S ANSWER TO SECOND AMENDED COMPLAINT

Defendant, Daniel Alholm ("Alholm and/or Defendant"), by and through his attorneys, Elvis Gonzalez, Ltd., submits his Answer to Plaintiff, The Vrdolyak Law Group, LLC's Second Amended Complaint ("VLG"), and alleges as follows:

## NATURE OF THE CONTROVERSY

1.     VLG is a law firm that has built its reputation as one of Illinois's premier personal injury law firms by providing legal services to Illinois residents and others needing legal representation for over 55 years. This action involves a dishonest and disloyal former employee of VLG, Daniel Alholm, who has engaged in a knowing and intentional course of conduct since January 2020, and possibly much earlier, designed to enrich himself at the expense of VLG. VLG brings this action for breach of fiduciary duty, tortious interference, defamation and false light as a consequence of the false statements Alholm made about VLG to multiple third-parties, and Alholm's otherreckless, tortious and unlawful conduct in attempting to disrupt VLG's business and, in  the process, steal VLG's clients. VLG brings this action for compensatory and punitive damages from Alholm and disgorgement of any profits he has

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

received as a result of his willful and intentional conduct and breach of his fiduciary duty to VLG.

**ANSWER:**

Defendant admits that VLG bring this action for compensatory and punitive damages, and other relief, and denies the remaining allegations in Paragraph 1.

## PARTIES

2.      Plaintiff, The Vrdolyak Law Group LLC, is a domestic limited liability company whose principal place of business is located in Chicago, Illinois.

**ANSWER:**

Defendant admits the allegations in Paragraph 2.

3.      Defendant, Daniel Alholm, was an employee of VLG, and presumably is a resident of the state of Tennessee.  Alholm practiced law and was licensed as an attorney in the State of Illinois, before he requested that VLG allow him to move to Nashville to run the VLG office in Tennessee.

**ANSWER:**

Defendant denies requesting that VLG allow him to relocate to Tennessee, and affirmatively avers he stated a willingness to do so while attending a conference in Tennessee, and VLG subsequently approached him, and inquired as to whether he would be willing to open the Nashville office.  Defendant admits the remaining allegations in Paragraph 3.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 735 ILCS § 5/2-209 because VLG and Alholm conduct business in Cook County. Alholm was paid out of

VLG's office in Illinois, and VLG covered all expenses for Alholm and the Nashville office of VLG out of Cook County, Illinois.

**ANSWER:**

The allegations contained in Paragraph 4 state legal conclusions to which no answer is required. To the extent they are deemed to state allegations of fact, Defendant denies them.

5.      Venue is proper under 735 ILCS § 5/2-101 because many of the transactions, or some parts of them, out of which these causes of action arose, occurred in Cook County, Illinois.

**ANSWER:**

The allegations contained in Paragraph 5 state legal conclusions to which no answer is required. To the extent they are deemed to state allegations of fact, Defendant denies them.

## FACTS COMMON TO ALL COUNTS

6.      In approximately May of 2017, Alholm approached VLG management seeking a position with VLG. VLG was not seeking an attorney of Alholm's level or experience, but Alholm represented that he had a substantial practice which he could not support on his own. He indicated his desire to leave his then current firm and join VLG with his case load. VLG considered Alholm's suggestion and ultimately made Alholm an offer of employment as an attorney. Alholm was not offered, and did not have, any ownership or membership interest in VLG.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 6.

7.      In or around mid-2018 VLG opened a new law office in Nashville, Tennessee. As part of that expansion Alholm again approached Firm management and suggested that he would be willing to relocate to Nashville to run that office if the Firm would pay his relocation expenses. VLG again agreed and paid for Alholm's move to Tennessee. In March of 2018, VLG

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

paid all the fees for Alholm to become licensed in Tennessee, and in July of 2018 VLG paid Alholm's Tennessee bar dues. All payments were made from the VLG office in Cook County.

**ANSWER:**

Defendant denies approaching VLG's management, but admits he stated a willingness to relocate to Nashville.  Defendant further denies conditioning his relocation on the payment of his expenses.  Defendant admits the remaining allegations contained in Paragraph 7.

8.      Shortly thereafter, following VLG's acquisition of space, buildout of the office, installation of necessary technology and furniture, Alholm, as an employee of VLG, began practicing law at VLG's office in Nashville. As part of the expansion, VLG also hired another attorney, Eric Benton, who was licensed to practice law in Tennessee.

**ANSWER:**

Defendant admits the allegations contained in the first sentence of Paragraph 8, but affirmatively avers that Benton was hired as a law clerk, who was employed for approximately eighteen months before being licensed as an attorney.

9.      Throughout the existence of the Nashville office, all costs and expenses were paid for out of VLG's offices in Cook County, including Alholm's malpractice insurance, payroll, reimbursement of expenses, rent, phones and IT consulting, and countless other administrative functions required to operate a law office.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 9.

10.      In addition, VLG marketed the Nashville office and coordinated referrals in Tennessee overwhelmingly through VLG's office in Cook County. Virtually all calls from

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

potential clients were routed to the main office in Chicago and handled though the Firm's intake department on Commercial Avenue. From there a potential client would bedirected to the appropriate attorneys at other offices, including Alholm in Tennessee, if necessary.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 10.

11.     VLG spends substantial amounts of money every month marketing the Firm wherever it maintains offices, including in Tennessee. All of those costs, even for marketing in Tennessee, whether that entails outdoor advertising, television, radio, or the like, were negotiated by VLG administration in Cook County and paid for out of the Chicago office as well.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 11.

12.     To the extent Alholm ever incurred expenses himself, as part of his employment with VLG in Nashville, Alholm would submit expense reimbursement requests to VLG in Chicago and receive repayment from VLG in Chicago.

**ANSWER:**

Defendant admits the allegations in Paragraph 12.

13.     Furthermore, all executive decision-making relating to the Nashville office would be presented by Alholm to VLG management in Cook County, and such decision-making ultimately had to be approved by VLG management in Chicago.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

**ANSWER:**

Defendant admits the allegations in Paragraph 13.

14.     Alholm regularly contacted VLG management and administration in Chicago relative to updates and statuses on cases and the Nashville office and would, onoccasion, be conferenced into the offices in Chicago for firm-wide announcements, seminars or other communications.

**ANSWER:**

Defendant admits the allegations in Paragraph 14.

## THE EVENTS GIVING RISE TO THIS ACTION

15.     On January 24, 2020, VLG received a communication from Alholm advising that Alholm was resigning from the Firm immediately.

**ANSWER:**

Defendant admits the allegations in Paragraph 15.

16.     In his resignation memo Alholm accused VLG of a host of unethical and illegal conduct relating to the non-consensual recording of phone calls at all VLG offices.

**ANSWER:**

Defendant admits only that his resignation memo described unethical and illegal conduct relating to the non-consensual recording of phone calls at VLG's offices.

17.     Specifically, Alholm stated:

> Numerous sources have informed me that VLG has been violating FederalLaw (18 U.S.C. 2511) Illinois law (720 ILCS 5/14-1) and Tennessee law (39-13-601) by illegally recording phone conversations. Under the Rules of Professional Conduct for the States of Illinois and Tennessee, I am required to report misconduct and I have done so accordingly . . . .
>
> The Tennessee Board of Professional Responsibility is very concerned about protecting the interests of the TN clients and told me it would be unethicalfor me

FILED DATE: 6/15/2022 11:27 AM 2020CH01852

to walk away and leave them at a firm that has no attorneys licensed in the state. They advised me to write to each client and tell them they have the choice to have me continue to represent them outside of VLG, have VLG continue to represent them even though VLG does not have any TN attorneys . . . .

The issues addressed in this document are currently the subject of multiple bar association investigations and I believe are likely to be the subject of federal and state criminal investigations.

*(A true and correct copy of Alholm's communication is attached as Exhibit A.)*

**ANSWER:**

Defendant denies any allegations contrary to, or inconsistent with, Exhibit A, which document is the best evidence of its terms.

18.     Along with Alholm's resignation, Alholm also sent a note from the Firm's associate in Nashville, Eric Benton.  Mr. Benton's note stated:

To Whom it May Concern, I, Eric Benton, am resigning immediately. I am tendering my resignation based on information disclosed to me about the actions of the law firm. After lengthy discussions with both the Tennessee Board of Professional Responsibility and my counsel I have determined that it is best for me to resign effective immediately.

*(A true and correct copy of Benton's communication is attached as Exhibit B.)*

**ANSWER:**

Defendant admits to sending correspondence from Eric Benton with his resignation memo, but denies any other allegations contrary to, or inconsistent with, Exhibit B, which document is the best evidence of its terms.

19.     In short, Alholm had lied.  He fabricated an untrue and defamatory story that VLG was illegally recording telephone conversations, falsely purported to have heard the story from "multiple sources," and repeated the lie to Benton and to the state regulatory agencies, all with an eye toward harming VLG's reputation and finances and taking its client revenues for himself.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 19.

20.     On January 25, 2020, counsel for VLG wrote to Alholm requesting that Alholm immediately contact counsel for VLG to discuss his very serious allegations.  That included a request to speak with Alholm about the "numerous sources" Alholm allegedly spoke to that advised him VLG was allegedly recording calls. VLG's counsel also requested any other evidence or information Alholm had to support the scandalous and scurrilous allegations he had made about VLG.

**ANSWER:**

Defendant admits the allegations in Paragraph 19.

21.     Alholm has never provided any evidence supporting his allegations, because none exists.  His claims that VLG illegally recorded telephone calls were intentionally crafted lies.

**ANSWER**:

Alholm denies the allegations contained in Paragraph 21, and affirmatively avers he has provided VLG with evidence of his allegations, including prior statements by VLG's own principle that he became aware of disparaging statements about him by an administrative employee, whom he terminated, because a telephone conversation was recorded.

22.     As of January 24, 2020, when VLG received Alholm's resignation, VLG had never been advised by Alholm or anyone else, that there was a concern regarding possible non-consensual recording of phone calls taking place through VLG's phone system.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

23.     While VLG was reaching out to Alholm to determine what factual support he had for making such allegations, VLG also contacted its IT consultant to determine whether the phone system was, or could be used, as Alholm alleged.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23.

24.     Firm's IT consultants provided VLG with a statement that read:

> The Call Recording feature is not active on your phone system. The Asterisk based phone platform that you use at all your offices including but not limited to the Nashville office has this feature built in as standard. The feature requires activation on the back end of the system.
>
> To activate call recording we would require a written request on company letterhead by an authorized person/s at Vrdolyak Law Group for activation and configuration. We have had no requests from Vrdolyak Law Group to activate this feature, therefore the feature remains deactivated.

*(A true and correct copy of the IT consultant's communication is attached as Exhibit C.)*

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24.

25.     A copy of this communication was provided to Alholm with a letter from counsel for VLG on January 25, 2020.

**ANSWER:**

Defendant admits to being provided with a letter from VLG's counsel on January 25, 2020.

FILED DATE: 6/15/2022 11:27 AM 2020CH01852

26.     Prior to defaming VLG, Alholm asked another of VLG's IT consultants, Mike Conlee, whether the firm's video security or telephone equipment in the Nashville office recorded audio while Alholm was an employee of VLG. Conlee personally and specifically informed Alholm—before Alholm knowingly made such false statements to third parties—that neither the video equipment, nor the telephones made audio recordings.

**ANSWER**:

Alholm denies the allegations contained in Paragraph 26, and affirmatively avers Conlee disclosed to him that VLG's telephone equipment did record audio in the Chicago office, and Alholm informed him the practice was illegal as conducted.

27.     Within days of Alholm's resignation, VLG was subsequently contacted by both the Tennessee Board of Professional Responsibility ("TBPR") and the Illinois Attorney Registration and Disciplinary Commission ("IARDC") seeking responses to communications Alholm had sent those organizations prior to his resignation claiming that VLG was improperly and illegally recording phone communications at all of its offices.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 27.

28.     Both TBPR and IARDC furnished VLG with the communications Alholm had sent, apparently on January 21, which stated in relevant part:

> I feel it is my duty under the Rules of Professional Responsibility in the states of Illinois and Tennessee to report misconduct on the part of Vrdolyak Law Group. Specifically, I believe it is my duty to report violations of Rules 8.3 and 8.4 of The Rules of Professional Conduct.
>
> I have reasonable belief that Vrdolyak Law Group has been illegally recording the telephone conversations of its employees and others within their three offices in Chicago as well as their office in Nashville. I have spoken to multiple sources

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

who have told me this conduct has been knowingly going on by Edward J. Vrdolyak and others within the firm. It is my belief that this conduct violates Federal Law (18 U.S.C. 2511) as well as Illinois law (720 ILCS 5/14-1) Tennessee law (39-13-601) and the Rules of Professional Conduct for the States of Illinois and Tennessee.

It should be emphasized that all of these alleged recordings have been taking place without the consent of any of the parties involved. It further concerns me that non-employees such as opposing counsel, mediators, clients, insurance adjusters or anyone else who may have been present in one of our offices and used the telephone could have been recorded withouttheir knowledge. I fear that such recordings could have been used for nefarious reasons and to gain an unfair advantage in judicial proceedings.

I have reason to believe that numerous individuals within Vrdolyak Law Group are aware that this is going on. Amongst the individuals I believe know the most about this activity are Edward J. Vrdolyak (Managing Partner), Grant Stoffle (Office Manager), and outside IT director Mike Conlee.

I would like to inform both Boards that upon my mailing of this letter it isalso my intention to submit my resignation as I do not see any reasonable way in which I could continue my employment.

*(True and correct copies of Alholm's communication to the TBPR and IARDC areattached as Exhibit D and Exhibit E respectively.)*

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in the first clause of Paragraph, and denies any remaining allegations contrary to, or inconsistent with, Exhibits D and E, which documents are the best evidence of their terms.

29.   Alholm's statements were false.  Both Edward J. Vrdolyak and Grant Stoffle have verified that they were never contacted by Alholm inquiring about his allegations at any time.  They further deny any knowledge of such recording or that it ever occurred.

**ANSWER:**

Defendant denies his statements were false.  Defendant lacks knowledge sufficient to

FILED DATE: 6/15/2022 11:27 AM    2020CH01852

form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 29.

30.     In fact, Conlee, VLG's IT consultant, has confirmed that as the individual with the most knowledge of VLG's technology, he can state with certainty that VLG made no audio recording nor has been capable of making such recordings at VLG's offices since his professional involvement began with the Firm in May of 2017.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 30, but affirmatively avers that Conlee stated to him in words or substance in March of 2019 that VLG was recording calls on the telephone system of the Chicago office.

31.     Conlee led the IT consulting for VLG for the entire period during which Alholm worked at VLG's Nashville and Chicago offices.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 31.

32.     At some point before and/or closely following Alholm's rash of false statements to the various professional regulators and, on information and belief, VLG's other attorney in Nashville (Mr. Benton) and other attorneys, Alholm reached out to VLG's clients in Tennessee.

**ANSWER:**

Defendant admits to reaching out to VLG's clients in Tennessee, and to making statements to various professional regulators, but denies the remaining allegations contained in Paragraph 32.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

33.     Alholm reached out to these clients and advised them that he was resigning, that they had the option of having him continue to represent them; that they could stay with VLG who he told the clients had no attorneys in Tennessee; or they could find alternative new counsel.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 31, and affirmatively avers he did so at the direction of the Tennessee Board of Professional Responsibility

34.     These clients formed the true target and purpose of Alholm's scheme:   he invented the false story of VLG illegally recording calls as a pretext to leave the firm and wrongfully solicit its clients, thus harming the firm's bottom line while enriching himself.

**ANSWER**:

Alholm denies the allegations contained in Paragraph 34.

35.     Alholm apparently sent written letters to this effect to a substantial number of VLG's Tennessee clients, if not all of them, and asked them to return the letter to his new office at Alholm Law having checked a box next to one of the three alternatives. *(A true and correct copy of a sample letter Alholm sent to VLG's clients is attached as Exhibit F.)*

**ANSWER:**

Defendant admits he sent letters to VLG's Tennessee clients as directed by the Tennessee Board of Professional Responsibility, and denies any other allegations contrary to, or inconsistent with, Exhibit F, which document is the best evidence of its terms.

36.     On information and belief, Alholm did this before he resigned from VLG, but after he formed Alholm Law PC on January 22, 2020. (*A true and correct copy of the Tennessee Secretary of State's Business Entity Detail page, reflecting the initial filing date of January 22, 2020, is attached as Exhibit G.*)

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

**ANSWER:**

Defendant denies the allegations contained in Paragraph 36.

37.     Additionally, unlike a good faith actor, Alholm never consulted with VLG with respect to what form any such communication to VLG's client should take or what the substance of that communication would be.  His goal was not the protection of the clients' rights, but to steal VLG's revenue associated with its clients' cases and to harm VLG.  Indeed, if Alholm had actually been concerned with the rights of VLG's clients, he would have provided additional notice of resignation allowing VLG to replace him without potentially disrupting the clients' representation.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 37, and affirmatively avers he was ethically bound to his obligation to resign upon learning of VLG's illegal conduct.

38.     In reality, VLG secured the employment of an experienced attorney licensed in Tennessee to service clients in VLG's Nashville office within one business day of receiving Alholm's and Benton's resignations.  Alholm falsely and recklessly alleged that VLG had no attorneys to service clients in the Nashville office when in fact, it did.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of Paragraph 35.  The remaining allegations state legal conclusions to which no answer is required.  To the extent they are deemed to be allegations of fact, Defendant denies them, and affirmatively avers at the time he made the statement, it was objectively true, and that he was advised by VLG clients approximately 7 to 10 days after his

resignation that VLG had still not yet hired a replacement attorney, but was in the process of doing so.

39.     On January 31, 2020, Alholm sent a memorandum to VLG advising the Firm that 12 clients sought to discontinue their relationship with VLG.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 39.

40.     Alholm advised VLG via his memo that the 12 clients wanted Alholm and his firm, Alholm Law PC, to represent them, and Alholm demanded that VLG turn over the relevant client files immediately.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 40.

41.     At the time VLG received Alholm's memo seeking the turnover of the client files, VLG had received no communication from the clients indicating their desire to terminate their relationship with VLG, nor had they received any direction from clients regarding the turnover of files.

**ANSWER:**

Defendant denies that VLG had not received communications from clients at the time it received his memorandum because he enclosed executed forms.  Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 41.

42.     The Firm, through its representatives, attempted to communicate with its Tennessee clients to determine their desires with respect to VLG's representation.  In a further

example of Alholm's malicious and reckless pattern of lying, five of the 12 clients Alholm identified in his memo expressed no desire to discontinue their relationship with VLG.

**ANSWER**:

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 42.

43.     VLG subsequently made the client files for the cases Alholm was seeking to take available to Alholm on February 11, 2020, even though it appeared Alholm had acted surreptitiously in concocting this entire scheme.

**ANSWER**:

Defendant admits the allegations contained in the first clause of Paragraph 43, but denies the remaining allegations.

44.     VLG did not want clients to be harmed while it sorted through Alholm's false allegations and apparent raid of its Tennessee business.

**ANSWER:**

Defendant lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 44.

45.     Alholm's subsequent actions confirm his disregard for the clients' actual rights and interests.  Upon arriving at VLG's offices in Nashville, Alholm advised the staff that rather than take the files and checks (specifically prepared for him) which were arranged in a secure conference room, that VLG staff should leave the files—which included medical records, privileged communications, attorney work-product, and all the other sensitive information contained in the client files—in the lobby of the building with the front desk staff for pickup later that day.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

**ANSWER**:

Defendant admits the allegations contained in Paragraph 42, and affirmatively avrs he acted as he did to avoid a confrontation after VLG attempted to physically intimidate him.

46.     Alholm was accompanied by a second individual when he presented at VLG's Nashville office to collect the files and checks, and they easily could have taken them at that time.

**ANSWER**:

Defendant admits the allegations contained in Paragraph 42, and affirmatively avers he acted as he did to avoid a confrontation after VLG attempted to physically intimidate him, which the second individual similarly observed.

47.     The individuals Alholm suggested VLG give the files to are not affiliated with VLG, VLG's clients, or Alholm Law PC.  VLG management did not want to risk disclosing client confidences and potentially violating state and federal laws relative to medical records and other personal information by turning over the client files to unidentified third parties, who were not attorneys, as Alholm suggested.

**ANSWER**:

Defendant admits the allegations contained in the first sentence of Paragraph 47, but lacks knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 47.

## COUNT I
### (Breach of Fiduciary Duty)

48.     VLG repeats and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 47 as set forth above.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

**ANSWER**:

Defendant incorporates by reference the allegations contained in paragraphs 1 through 47 of his Answer as if fully set forth herein.

49.　　Under Illinois law Alholm owed VLG fiduciary duties of loyalty and care while he was an employee of VLG, which included acting in the best interests of the Firm.

**ANSWER**:

Paragraph 49 states legal conclusions to which no answer is required. To the extent they are deemed to be allegations of fact, Defendant denies them.

50.　　On information and belief, Alholm conveyed information that was false to Eric Benton regarding the Firm's activities causing Benton to resign from the Firm.

**ANSWER**:

Defendant denies the allegations contained in Paragraph 50.

51.　　On information and belief, Alholm conveyed information that was false to at least one other lawyer at the Firm, causing damage to Firm's relationships with its other lawyers.

**ANSWER**:

Defendant denies the allegations contained in Paragraph 51.

52.　　On information and belief, Alholm sent communications to some or all of VLG's clients in Tennessee seeking to have them leave VLG and follow Alholm to Alholm Law PC., while Alholm was an employee of the Firm.

**ANSWER**:

Defendant admits to sending communications to VLG's clients as directed by the Tennessee Board of Professional Responsibility, but denies the remaining allegations contained in Paragraph 52.

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

53.     Alholm breached his fiduciary duties to VLG by making false representations to other employees of the firm, without making a reasonable investigation into his concerns, and by soliciting clients of VLG while Alholm was an employee of VLG.

**ANSWER**:

Paragraph 53 states legal conclusions to which no answer is required. To the extent they are deemed to state allegations of fact, Defendant denies them.

54.     As a direct and proximate result of Alholm's breach of his fiduciary duties to VLG, VLG has been damaged.

**ANSWER**:

Paragraph 54 states legal conclusions to which no answer is required. To the extent they are deemed to state allegations of fact, Defendant denies them.

WHEREFORE, Defendant, Daniel Alholm, denies that Plaintiff, The Vrdolyak Law Group LLC, is entitled to any relief whatsoever, and prays that judgment be entered in his favor, and for such other and further relief as this Court deems just and fair.

## COUNT II
### (**Defamation – *per se***)

*This count is subject of a motion to dismiss filed by Defendant*

## COUNT III
### (**Defamation – *per quod***)

*This count is subject of a motion to dismiss filed by Defendant*

## COUNT IV
### (**False Light**)

*This count is subject of a motion to dismiss filed by Defendant*

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

## COUNT V
### (<u>Tortious Interference with Business Expectancy</u>)

99.     VLG repeats and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 47 as set forth above.

**<u>ANSWER</u>**:

Defendant incorporates by reference the allegations contained in paragraphs 1 through 47 of his Answer as if fully set forth herein.

100.     Until the events giving rise to this action, VLG had maintained a valid employer/employee relationship with Eric Benton.

**<u>ANSWER</u>**:

Defendant admits that VLG previously maintained a valid employer/employee relationship with Eric Benton, but denies his actions that are the basis of this action caused the termination of that relationship.

101.     Until the events giving rise to this action, VLG had maintained valid attorney-client, contractual relationships, with its clients.

**<u>ANSWER</u>**:

Defendant admits that VLG previously maintained a valid attorney-client and contractual relationship with various clients.

102.     As detailed above, Alholm was fully aware of VLG's relationship with Benton, but intentionally interfered with the relationship by knowingly: (a) making false statements to Benton without a reasonable investigation of whether the statements were true or false; (b) causing Benton to terminate his relationship with VLG, such that VLG would have no attorneys in the Nashville office once Alholm resigned.

**ANSWER**:

The allegations contained in Paragraph 102 state legal conclusions to which no answer is denied. To the extent the allegations are deemed allegations of fact, Defendant denies them.

103.    As detailed above, Alholm knew that if he made the false statements to Benton causing Benton to leave VLG, Alholm would be able to solicit VLG's clients and advise them that the Firm had no attorneys in Nashville to service their cases. In reality, VLG hired an experienced Tennessee attorney to work in the Nashville office the next business day following Alholm's resignation.

**ANSWER**:

The allegations contained in Paragraph 103 state legal conclusions to which no answer is denied. To the extent the allegations are deemed allegations of fact, Defendant denies them.

WHEREFORE, Defendant, Daniel Alholm, denies that Plaintiff, The Vrdolyak Law Group LLC, is entitled to any relief whatsoever, and prays that judgment be entered in his favor, and for such other and further relief as this Court deems just and fair.

Respectfully submitted,

DANIEL ALHOLM


By:  /s Elvis D. Gonzalez
     One of His Attorneys

Elvis D. Gonzalez
egonzalez@elvisgonzalezltd.com
ELVIS GONZALEZ, LTD.
233 South Wacker Drive, Suite 6149
Chicago, IL 60606
(312) 558-9779
Firm No. 43658
404211.2-12680.00100

FILED DATE: 6/15/2022 11:27 AM  2020CH01852

FILED DATE: 6/15/2022 11:27 AM   2020CH01852

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| THE VRDOLYAK | ) | |
| LAW GROUP, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 CH 1852 |
| | ) | Calendar 11 |
| DANIEL ALHOLM, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF WANT OF KNOWLEDGE**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true:

1.      I am over eighteen years of age and a citizen of the State of Illinois.  I have personal knowledge of the facts stated herein and if called as a witness could competently testify to such facts.

2.      Pursuant to Section 5/2-610 of the Illinois Code of Civil Procedure, I certify that the statements of want of knowledge set forth in the Answer in the above-entitled cause are true and correct.

FURTHER AFFIANT SAYETH NOT.


/s Daniel G. Alholm_____

June 15, 2022                         DANIEL G. ALHOLM

*Prepared by:*

Elvis D. Gonzalez
egonzalez@elvisgonzalezltd.com
ELVIS GONZALEZ, LTD.
233 South Wacker Drive, Suite 6149
Chicago, IL 60606
(312) 558-9779
Firm No. 43658
405751.1-12690.00100

# EXHIBIT B

## TOLLING AGREEMENT

Tolling Agreement made and entered into as of this 8th day of January, 2022, by and among Daniel Alholm ("Alholm"), a Tennessee resident on behalf of himself individually and a class of similarly situated, current and former employees of VLG, whose calls Mr. Alholm alleges were recorded by VLG (collectively, the "Employee Wiretap Class"); and The Vrdolyak Law Group ("VLG").

## RECITALS

A.  VLG has sued Alholm in the Circuit Court of Cook County, Illinois in a case titled *The Vrdolyak Law Group v. Daniel Alholm*, Case No. 2020 CH 1852. That case surrounds allegations by VLG that Alholm made false representations about VLG, interfered with client relationships with VLG, improperly took VLG clients, and otherwise breached fiduciary duties owed to VLG, among others.

B.  Alholm asserts he is entitled to referral fees on cases currently being prosecuted by VLG.  VLG asserts it is entitled to quantum meruit and potentially fees on the cases taken from VLG by Alholm following his separation from VLG.

C.  The parties have been negotiating: (A) what referrals are truly Alholm's and what amount the referral fee should be, (B) what are the quantum meruit fees owed to VLG for cases Alholm took from VLG, and (C) what is the value and necessary consideration needed for VLG to dismiss the Cook County litigation against Alholm.

D.  Mr. Alholm alleges that VLG recorded, intercepted, disclosed, and/or used the contents of his and the Employee Wiretap Class's wire and electronic communications without their consent.

E.  As a result of these alleged violations, Mr. Alholm alleges that VLG is liable to him and the Employee Wiretap Class, giving rise to certain legal claims under the Federal Wiretap Act, 18 U.S.C. §§ 2511 *et seq.*, the Tennessee Wiretapping and Electronic Surveillance Act, T.C.A. § 39-13-601 *et seq.*, and/or the Illinois Eavesdropping Act, 720 ILCS 5/14 *et seq.* (the "Claims").

F.  Although the parties have not been able to reach agreement as to the items set forth in Paragraph C above, they desire to continue negotiations directed toward a resolution of the same. If Alholm files a complaint sounding in the Claims identified in Paragraphs D and E above it is unlikely the negotiations between the parties will continue.

1

G.      For the reasons set forth above, each of the parties hereto believes that it is in its best interest to toll the running of the applicable statute of limitations and repose, for the Federal Wiretap Act claims, and state law equivalents in Tennessee and Illinois, to allow them to pursue a negotiated resolution of the matters set forth in Paragraphs A-C.

## **W I T N E S S E T H:**

NOW, THEREFORE, in consideration of the premises and the benefits to be obtained by each party hereunder, the parties agree as follows:

1.      <u>Consideration</u>.   The parties agree that this tolling arrangement is an independent and separately enforceable agreement made in consideration of the mutual covenants contained herein and for other good and valuable consideration, including the forbearance from litigation by Alholm and the forbearance from asserting a statute of limitations defense by VLG, the receipt and sufficiency of which are hereby acknowledged.

2.      <u>Tolling and Forbearance</u>.  Each party agrees that the running of any statute of limitations, statute of repose, laches, and any similar period related to the timing of the assertion of the Claims shall be suspended, tolled and shall not run during the period beginning on the date of signing this Agreement and ending on March 9, 2022.  During such period, Alholm agrees to refrain from filing any lawsuit against VLG asserting his Claims, unless Alholm's counsel notifies VLG of its intention to terminate this agreement and file suit no less than (7) days after giving notice.  On March 10, 2022, the statute of limitations applicable to the Claims shall again begin to run with respect to each party to this Agreement.  The parties expressly agree that any suit asserting the Claims that is filed on the earlier of March 10, 2022, or seven (7) days after Alholm's counsel notifies VLG of its intention to terminate this agreement and file suit shall have the same legal

effect with respect to limitations and repose as if it were filed on or before January 8, 2021.

       3.    <u>Representation; Reasonableness of Terms</u>.  Each party hereby agrees that it has had the benefit of counsel in connection with the consideration of this Agreement and that based on such advice of counsel, each believes that the terms, extent, and duration of this tolling arrangement are reasonable and shall not hereafter be challenged on any basis.

       4.    <u>No Admission of Liability</u>.  Nothing in this Tolling Agreement shall be deemed to imply or permit any inference of liability, whether by reason of assertion of lack of standard of care or otherwise.

       5.    <u>Notice</u>.  Notice may be established through email to VLG's counsel, Robert D. Sweeney (rsweeney@ssbpartners.com), and Alholm's counsel, John T. Spragens (john@spragenslaw.com), or if email is not used, then upon mailing via U.S. Mail, Certified Mail with Return Receipt Requested or any acceptable means of overnight delivery such FedEx, UPS or other similar means of expedited delivery, properly addressed to the parties at the addresses set out hereafter or at such other address as to which notice may be given through the means here described:

    **VLG**:                    Robert D. Sweeney
                             Sweeney, Scharkey & Blanchard LLC
                             230 West Monroe Street, Suite 1500
                             Chicago, IL 60606

    **Alholm:**             John Spragens
                             Spragens Law PLC
                             311 22nd Ave. N.
                             Nashville, TN 37203

       6.    <u>Duplicate Signature Pages</u>.  This Agreement may be executed in multiple counterparts, each of which shall be effective as an original.

7.   Modification.   This Agreement may be modified only by written instrument executed by the parties to the Agreement.

8.   Applicable Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

9.   Merger.   This Agreement constitutes the entire agreement of the Parties regarding the matters set forth herein.

10.   Execution by Parties' Counsel.   The undersigned attorneys warrant and represent that they have the express authority of their respective clients to enter into this Agreement, and to bind those clients thereby. This Agreement shall be binding upon the Parties upon the signing of this Agreement by the attorneys whose signatures appear below and who represent the Parties.

IN WITNESS WHEREOF, the parties have executed and delivered, or have caused the execution and delivery, of this Agreement to be effective as of the date set forth above.

**Daniel Alholm:**

__January 8, 2022_____          By: _____
Date                                      John T. Spragens

**VLG:**

__Jan 8, 2022_____          By: _____
Date                                      Robert D. Sweeney