IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL ALHOLM, individually and on behalf of those similarly situated, | )<br>)<br>) |
| *Plaintiff*, | ) Case No. 1:22-cv-01820 <br>) <br>) Hon. Robert M. Dow |
| v. | )<br>) |
| THE VRDOLYAK LAW GROUP, LLC, | )<br>) |
| *Defendant*. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant the Vrdolyak Law Group, LLC ("VLG"), by and through its undersigned counsel, states the following in reply in support of its motion to dismiss the complaint brought by Plaintiff Daniel Alholm ("Alholm"):

Alholm's response to VLG's motion to dismiss confirms that he has failed to properly plead any claims in this Court. Alholm provides no compelling reason why his own unambiguous claim that he was on notice of purported wiretapping in 2019 should not bar his claims now; he is unable to contest that he is not a typical member of his alleged class; he has failed to plead fraud with particularity; and he has failed to plead this Court's jurisdiction over his remaining state law claims. Alholm's complaint should be dismissed in its entirety.

**I.  Alholm Fails to Show His Wiretapping Claims Are Timely.**

Nothing in Alholm's response negates the simple fact that the wiretapping claims that form the crux of his suit are time-barred. As described in the motion to dismiss, Alholm drafted his complaint in this case to suggest he was first on notice of wiretapping claims against VLG in January 2020, when a colleague told him that calls made on VLG telephones were being recorded.

(Compl. ¶ 48.) But according to Alholm's pleadings in VLG's parallel state case (for which he has retained separate counsel, who was apparently not aware of his need to plead around the statute of limitations in his federal suit), Alholm was first on notice of VLG's purported wiretapping of telephones in March 2019. Alholm's answer to VLG's state court complaint "affirmatively avers that [VLG's IT consultant] stated to him in words or substance in March of 2019 that VLG was recording calls on the telephone system of the Chicago office." (Ex. A ¶ 30.)

      A.      **Alholm Was on Notice of his Purported Claims in 2019.**

In his response, Alholm tries multiple tacks to convince the Court to disregard his own pleadings in the state case, which do not, under any interpretation, moot the fact Alholm was on inquiry notice of these fallacious claims in March of 2019. Alholm summarizes his argument as follows:

> Defendant VLG asks the Court to disregard the well-pleaded allegations in the Complaint and instead find that one ambiguous statement in a state-court pleading, devoid of context, affirmatively prevents Mr. Alholm from proving his claims in this case. Indeed, VLG's entire effort to dismiss Mr. Alholm's wiretapping claims hangs by the same thin thread: extraneous evidence given a self-serving interpretation by VLG in order to manufacture a purported conflict between a statement in another proceeding and the allegations in Mr. Alholm's Complaint.

(Resp. at 7.) Nearly every clause in this excerpt is strained, misleading, or downright false. VLG does not ask the Court to disregard Alholm's allegations in this Complaint, but to contrast them with inconvenient, but blatant, contradictions he made in another pleading. Alholm's affirmative claim that he learned VLG was recording calls in March 2019 is not extraneous, taken out of context, or given any self-serving interpretation: VLG provided the Court with the entirety of Alholm's state court answer as Exhibit A to its motion. In fact, VLG implores the Court to review Alholm's state court answer in full, which not only makes clear that he is discussing the same

purported wiretapping conduct in both cases, but betrays his bad faith claim that the state court case is "unrelated". In reality, the same conduct is at the center of both cases. (Resp. at 10.)

Alholm makes three arguments why his wiretap claims accrued on January 9, 2020, instead of March 2019. First, Alholm argues that his state court answer, which now embarrassingly contradicts his federal complaint, is mere "extraneous evidence outside the Complaint" which the Court cannot consider. While Alholm cites cases standing for the unremarkable proposition that courts "typically" do not dismiss complaints based on affirmative defenses, he fails to address any of the straightforward precedent VLG cited in its motion making it clear that dismissal of time-barred complaints is appropriate. *See, e.g.*, *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017) ("[W]hen it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate.") (citations and internal quotation marks omitted). *See also Chapman v. Vill. of Hinsdale*, 2008 U.S. Dist. LEXIS 48723, at *3 (N.D. Ill. Jun. 23, 2008) ("While expiration of the statute of limitations is an affirmative defense that may be pled in an answer pursuant to Rule 8(c), it can be used as a basis for granting a 12(b)(6) motion where the case is 'obviously time-barred.'") (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)).

Second, Alholm argues that "the type of extraneous evidence VLG relies upon to prove its affirmative defense is not the type of evidence that a court can take judicial notice of to prove an affirmative defense as a matter of law, before any discovery has taken place." (Resp. at 9.) Alholm ignores this Circuit's precedent that pleadings in other suits are proper subjects of judicial notice. *Schacter v. City of Chicago*, 848 F. App'x 208, 208 (7th Cir. 2021). Alholm further tries to argue that his unambiguous statement that he learned about alleged illegal wiretapping in March 2019 is somehow "subject to reasonable dispute," despite the fact that his own brief recognizes "the dates

on which certain actions were taken" to be just the sort of facts subject to judicial notice. (Resp. at 9.)

Third, Alholm unsuccessfully attempts to distinguish the factual bases of his state and federal court pleadings, claiming that "Mr. Alholm's averment that he was told about certain recording in the downtown Chicago office by a VLG employee/contractor in March 2019 *does not contradict the allegations in his Complaint*." (Resp. at 10 (emphasis original).) In state court, VLG alleges that Alholm's 2020 statements to regulators and others that VLG was illegally wiretapping its phone lines—the same allegations he brings in this suit—were false. (Ex. A, *passim*.) As evidence of Alholm's knowledge of their falsity, VLG further alleges that "VLG's IT consultant[] has confirmed that as the individual with the most knowledge of VLG's technology, he can state with certainty that VLG made no audio recording nor has been capable of making such recordings at VLG's offices since his professional involvement began with the Firm in May of 2017." (Ex. A ¶ 30.) In answering, Alholm "affirmatively aver[red] that [the IT consultant] stated to him in words or substance in March of 2019 that VLG was recording calls on the telephone system of the Chicago office." (*Id.*) Alholm was responding directly to attacks on the truthfulness of the same allegations he brings in this suit when claiming he was told of wiretapping in March 2019.

Here in federal court, Alholm contends that before January 9, 2020 (his preferred notice inquiry date), he "had no knowledge of ongoing illegal recording other than one conversation about a previous recording practice, which was limited to one office in which Mr. Alholm *did not work*, and which Mr. Alholm believed 'had been remedied.'" (Resp. at 8.) Alholm's attempts to retroactively mischaracterize what he claims to have known in 2019 should not be countenanced, nor does it eliminate Alholm's duties under an inquiry notice analysis. Alholm's state court answer makes clear that it involves the same purported conduct alleged in this suit, and that Alholm was

on notice of this conduct no later than March 2019. Furthermore, under the federal wiretap statute, the standard of notice is not whether Alholm affirmatively knew of all the facts underlying his claim, but when he "*first ha[d] a reasonable opportunity to discover the violation.*" 18 USC § 2520 (emphasis added).

      **B.**    **Alholm's Claims Could Have Been Discovered Well Before January 2020.**

Alholm, citing no authority in the face of VLG's motion, claims that he has properly alleged the doctrines of the discovery rule and fraudulent concealment to explain his delay in filing. (Resp. at 12–13.) These arguments are belied by the clear precedent that wiretapping claims are subject to inquiry notice. Alholm only needed to have knowledge that would have led a reasonable person to investigate a claim; he did not need to know every fact underlying his complaint. Alholm alleges no action that would have made his discovery of the purported wiretapping impossible in March 2019, when he was on inquiry notice. *See Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (explaining that under "inquiry notice," a statute of limitations "begins to run when the victim of the alleged fraud became aware of facts that would have led a reasonable person to investigate whether he might have a claim"). "Under inquiry notice, the statute of limitations does not await plaintiffs' leisurely discovery of the full details of the alleged scheme." *Id.* at 720–22.

Because he did not need actual knowledge he was surreptitiously recorded, as the Wiretap Act requires "only that the claimant have had reasonable opportunity to discover it," (*Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998)), Alholm's federal wiretapping claim fails. The same is true of his state claims. *See, e.g.*, *Klumb v. Goan*, 884 F. Supp. 2d 644, 660-661 (E.D. Tenn. 2012) (interpreting Tennessee wiretapping statute under federal corollary).

### C. The Court Need Not Consider the Tolling Agreement, But It Does Not Save Alholm's Claims Regardless.

VLG correctly anticipated that Alholm would raise the parties' tolling agreement in a bid to save his wiretapping claims, and thus pre-emptively addressed the agreement. VLG argues that by raising the tolling agreement, VLG has converted its motion into one for summary judgment. (Resp. at 7 n.1.) In fact, VLG agrees that the Court need not consider the tolling agreement at all—Alholm has pled himself out of Court on the face of his state and federal pleadings.

But as Alholm raises the tolling agreement (despite his claim that it constitutes extraneous evidence), VLG will address it. Indeed, "the burden of demonstrating that the applicable statute of limitations be tolled falls on [the party asserting tolling]." *Thomas v. Ocwen Fed. Bank FSB*, 2002 U.S. Dist. LEXIS 1231, at *8–11 (N.D. Ill. Jan. 23, 2002). As an initial point, the tolling agreement came about during the course of the parties' pre-suit negotiations, during which Alholm threatened to extort VLG by filing this case (including the class claims) if it did not agree to personally pay him an exorbitant sum in lieu of him making public allegations that would injure the firm's reputation.[1]

The parties' tolling agreements only began to run in January 2022, but Alholm's statute of limitations elapsed in March 2021. (*See* First Tolling Agreement, attached to VLG's motion as Exhibit B.) Alholm argues the tolling agreement saves him because it renders his claim as filed on or before January 7, 2021, but the agreement was entered into long after the statute lapsed. The tolling agreement cannot save Alholm's claim when it was mooted long before its signing. *See Allen v. Abbott Labs.*, 2012 U.S. Dist. LEXIS 363, at *11–12 (E.D. Ky. Jan. 3, 2012)

---

[1] VLG will be filing a Motion for Sanctions that more fully sets forth the outlandish and likely illegal actions of Alholm and his counsel, wherein Alholm sought to settle class claims and forego filing completely inapposite and false allegations that would embarrass VLG and cause damage to its reputation in exchange for millions of dollars and the release book and movie rights. VLG will not address these issues further in this brief as it will only further Alholm's goal of damaging the firm's reputation.

("This agreement did not take effect until four days after the one-year statute of limitations had run, failing to toll Plaintiffs' claims of strict liability, negligence, and loss of consortium."); *Boston Sci. Corp. v. Mirowski Family Ventures, LLC*, 2012 U.S. Dist. LEXIS 116301, at *15 (S.D. Ind. Aug. 17, 2012) ("The statute of limitations expired September 27, 2008, long before the parties signed a tolling agreement related to royalties on July 24, 2009. The tolling agreement has no effect on expired claims.").[2]

### D. Alholm Cannot Retrofit His Pleadings to Allege a Continuing Tort.

Alholm now seeks to retroactively change his pleadings to allege a "continuing tort," claiming that "he alleges repeated instances of wiretapping, each of which is independently actionable under federal and state law." (Resp. at 13.) Alholm's complaint, however, does not allege any continuous tort or repeated instances of wiretapping. At most, Alholm alleges that "[u]pon information and belief, VLG is currently engaged in and will continue to engage in the above-described intentional interception, disclosure, and/or use of Plaintiff's and Class members' wire or electronic communications." (Compl. ¶ 82.) This barebone allegation is insufficient to plead a continuing tort. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (citation and internal quotation marks omitted). Alholm's response only further highlights that he has failed to meet his pleading obligation (and duty to investigate—Alholm was offered and rejected free access to VLG's systems and its IT professionals before

---

[2] Finally, even ignoring the fact that the tolling agreement cannot save Alholm's claims, the January 8, 2021 date contained within it, which Alholm repeatedly points to, is in fact a drafting error inserted by Alholm himself. The agreement itself obviously was intended to make claims filed during its term considered filed as by January 8, **2022**: the date the agreement was executed.

filing suit) by explicitly stating, "[d]iscovery will reveal what, if any, recording occurred[.]" (*Id.* at 10.) That is a patent representation that this is a fishing expedition of the worst kind.

Indeed, Alholm is reduced to misrepresenting caselaw to support his continuing tort argument; he claims that *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 U.S. Dist. LEXIS 23118 (N.D. Ill. Feb. 9, 2022) "discuss[es] continuing tort theory in the context of federal wiretap and Illinois eavesdropping claims." (Resp. at 13.) This claim is false: while wiretapping and eavesdropping claims were involved in the *Peters* case, the decision only discusses the continuing tort theory in the context of retaliation claims. *Peters*, 2022 U.S. Dist. LEXIS 23118, at *25–29.

### E. Alholm Is Not Typical of His Proposed Class.

Because Alholm is subject to a unique statute of limitations defense, which does not apply to other class members, he cannot serve as a named plaintiff. "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives, and adequacy of representation is one of the requirements for class certification." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (citing Fed. R. Civ. P. 23). Alholm does not dispute his atypicality but asks the Court to make this ruling later. (Resp. at 14 n.3.) If the Court dismisses Alholm's individual wiretapping claims, however, he de facto cannot serve as a class representative, and there is no point in delaying that determination when his unsuitability under Rule 23 is inevitable.

### II. Alholm Fails to Plead Fraud with Specificity.

Alholm alleges he has met the heightened fraud-pleading standard with three separate allegations: that VLG lied about no longer being engaged in illegal activity before hiring him; that VLG falsely represented it had settled $9 billion worth of cases; and third, that VLG falsely told

him it had adequate resources to staff and run his cases. (Resp. at 15–16.) None of Alholm's allegations sufficiently allege fraud, which requires pleading "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Cain v. Osman*, 286 F. App'x 934, 936 (7th Cir. 2008) (quoting *Wernikoff v. Health Care Serv. Corp.,* 877 N.E.2d 11, 16, (Ill. App. Ct. 2007)).

As to VLG's purported representations about illegal activities (which VLG denies in full, but recognizes must be treated as true at this stage), Alholm fails to include the sort of detailed allegations required to bring fraud claims. Rather, he alleges that during a meeting with VLG's partners before his hiring, he "expressed his concerns about VLG's reputation, particularly that the firm's founder, Edward Vrdolyak, Sr., had been disbarred and imprisoned. The Partners and Mr. Armbruster assured Mr. Alholm that VLG and its employees were not involved in any improper or illegal activity, and that any such activity was long in the past." (Compl. ¶ 14.) The Complaint thus alleges *nothing* about the illegal activity Alholm purports he was concerned with at the time he claims VLG lied to him, particularly as it involves Edward Vrdolyak, Sr. (who was never a member of the firm). Alholm's laundry list of illegal activity he claims to have witnessed after his hiring is thus not tied to any specific false statement made before his hiring. As noted in VLG's opening brief, "even assuming that Alholm's false allegations regarding VLG's wiretapping are true, Alholm fails to plead that they were occurring at the time of his interview, thus rendering VLG's purported statements false." Further, beyond a bare assertion that the alleged illegal activity harmed him, Alholm fails to plead any actual injury to himself.

Second, after VLG pointed out that his Complaint fails to state how VLG's claim of settling over $9 billion worth of cases was false, Alholm attempts in his response to backfill his allegations:

he now claims that VLG "has not 'settled' $9 billion worth of cases" and cites VLG marketing materials stating "that it has made $9 billion 'through legal representation and consulting.'" (Resp. at 15.) Simply put, these details do not appear in the Complaint and thus cannot be raised to save it now. More importantly, Alholm fails to allege how the purported difference between $9 billion of cases settled versus $9 billion recovered through representation and consulting is material or reasonably caused him to take any action.

Finally, VLG's purported statements that Alholm would have the necessary support to focus on his multidistrict tort litigation, and Alholm's belief that he was not given his desired level of support, are matters of opinion unsuitable for a fraud claim. "A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (citations and internal quotation marks omitted). Alholm argues that after he was hired "VLG could not afford the marketing campaigns it promised for his cases, VLG was not paying bills, and VLG credit cards were routinely maxed out or declines [sic]." (Resp. at 15.) But these facts, even assuming they are true, do not make false the promise Alholm actually alleges: that VLG had "the resources, qualified personnel, and finances Mr. Alholm would need to successfully litigate [his] mass tort cases." (Compl. ¶ 13.)

### III. Alholm Has Failed to Allege Diversity Jurisdiction Over His State Fraud and Likeness Claims.

After VLG convincingly demonstrated that the Court should not exercise supplemental jurisdiction over Alholm's pendent state law claims, Alholm countered that the Court has original diversity jurisdiction over them. He is wrong.

If Alholm's federal wiretapping and fraud claims are dismissed, he has not alleged the minimum amount in controversy to establish diversity on his state likeness claims, even if they were combined. Under Tennessee law, "[a]n individual is entitled to recover the actual damages suffered as a result of the knowing use or infringement of such individual's rights and any profits that are attributable to such use or infringement which are not taken into account in computing the actual damages." Tenn. Code. Ann. § 47-25-1106(d)(1). Alholm simply alleges that "[a]s a result of VLG's knowing and intentional use of Mr. Alholm's name, photograph, and likeness impermissibly for over 27 months, Mr. Alholm suffered actual damages as described herein." (Compl. ¶ 105.) Alholm does not plead how the purported appearance of his likeness on VLG's website has caused him actual damage or how VLG profited from its alleged use, less still how such a figure could approach $75,000. In Illinois, likewise, a violation of its likeness statute can result in an award of the greater of $1,000 or actual damages and profits. 765 ILCS 1075/40. Alholm's Illinois allegations are similarly devoid of any allegations of actual damages or profit, and thus cannot support a finding that he has alleged damages of greater than $75,000.

There is a previously filed and pending state law case involving the same parties and arising out of the same set of facts, namely, Alholm's employment at VLG. The only reason this case was filed was to extract an extortion settlement out of VLG to avoid the negative publicity that would inure to the firm if Alholm filed his fallacious allegations under the cloak of a litigation privilege that would protect him from defamation claims. The state court proceeding is the more appropriate venue for his claims against VLG, even were they meritorious.

## CONCLUSION

WHEREFORE, Defendant the Vrdolyak Law Group, LLC prays that the Court dismiss with prejudice Plaintiff Daniel Alholm's Complaint; enter judgment in Defendant's favor and

against Plaintiff; tax all costs to Plaintiff; and enter and award such other and further relief as it deems necessary and proper.


Dated: September 7, 2022    Respectfully submitted,

/s/ Robert D. Sweeney
Robert D. Sweeney
William H. O'Hara
SWEENEY, SCHARKEY & BLANCHARD LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 7, 2022, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

                                                /s/ William O'Hara