**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ALHOLM, individually and on behalf of those similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:22-cv-01820 |
| v. | ) ) ) | Hon. Mary M. Rowland |
| THE VRDOLYAK LAW GROUP, LLC, | ) ) ) | |
| *Defendant*. | ) | |

**DEFENDANT'S MOTION TO SANCTION PLAINTIFF AND PLAINTIFF'S COUNSEL
<u>FOR FILING AND VEXATIOUSLY PURSUING FALSE CLAIMS</u>**

Robert D. Sweeney
John J. Scharkey
William H. O'Hara
SWEENEY, SCHARKEY & BLANCHARD LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

   I.    VLG Hires Attorney Daniel Alholm............................................................................ 2

   II.   Alholm Resigns and Accuses VLG of Ethical Violations. ............................................ 2

   III.  VLG's Files Complaint in State Court—██████████████████████
██ . 7

      A.   Alleged Wiretapping........................................................................................ 8

      B.   ██████████████ .............................................................................. 9

      C.   ████████████████████ ........................................................... 10

      D.   ████████████████████ ........................................................... 10

      E.   ██████████████████████ . ...................................................... 11

      F.   ███████████████████████ . ................................................... 11

      G.   ██████████████████ . ............................................................... 12

      H.   ████████████ ........................................................................... 12

      I.    ████████████ ................................................................................ 14

ARGUMENT ................................................................................................................... 22

   I.    Alholm Failed to Conduct a Reasonable Pre-Filing Inquiry. ...................................... 25

   II.   Alholm Brought These Baseless Claims for an Improper Purpose—███████████
████████████ . ............................................................................................ 29

   III.  ██████████████████████ . ......................................................... 31

CONCLUSION.................................................................................................................. 34

## **TABLE OF AUTHORITIES**

### **Cases**

*Borowski v. De Puy, Inc., Div. of Boehringer Mannheim Co.*,
   850 F.2d 297 (7th Cir. 1988) ................................................................... 27, 30

*Brown v. Fed'n of State Med. Bds. of the United States*,
   830 F.2d 1429 (7th Cir. 1987) ................................................................. 27

*Chambers v. NASCO*,
   501 U.S. 32 (1991) ................................................................................. 24, 29

*CMG Worldwide, Inc. v. Glaser*,
   92 F. Supp. 3d 839 (S.D. Ind. 2015) ..................................................... 26

*Cooney v. Casady*,
   735 F.3d 514 (7th Cir. 2013) ................................................................. 29

*Dal Pozzo v. Basic Mach. Co.*,
   463 F.3d 609 (7th Cir. 2006) ................................................................. 28

*Flatley v. Mauro*,
   39 Cal. 4th 299 (Cal. 2006) ................................................................... 33, 34

*Goodvine v. Carr*,
   Case Nos. 17-3208, 18-1168 & 18-1398,
   2019 U.S. App. LEXIS 5840 (7th Cir. Feb. 27, 2019) .......................... 29

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*,
   9 F.3d 1263 (7th Cir. 1993) ................................................................... 26

*Jackson County Bank v. Dusablon*,
   No. 1:18-cv-01346, 2020 U.S. Dist. LEXIS 26164 (S.D. Ind. Jan. 10, 2020) .................. 24, 26

*Kapco Mfg. Co. v. C & O Enters., Inc.*,
   886 F.2d 1485 (7th Cir. 1989) ............................................................... 24, 31

*Lightspeed Media Corp. v. Smith*,
   761 F.3d 699 (7th Cir. 2014) ................................................................. 28, 31, 32

*Littler v. Martinez*,
   Case No. 2:16-cv-00472, 2020 U.S. Dist. LEXIS 1850 (S.D. Ind. Jan. 3, 2020) ............ 30, 31

*Mendoza v. Hamzeh*,
   215 Cal. App. 4th 799 (Cal. App. Ct. 2013) .......................................... 35

*Salmeron v. Enter. Recovery Sys., Inc.*,
   579 F.3d 787 (7th Cir. 2009) ................................................................. 24

*See Riddle & Assocs., P.C. v. Kelly*,
   414 F.3d 832 (7th Cir. 2005) ................................................................. 23

*Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330*,
   557 F.3d 746 (7th Cir. 2009). ................................................................ 24, 25

*Stenehjem v. Sareen*,
 226 Cal. App. 4th 1405 (Cal. App. Ct. 2014) ..................................................... 35, 36

*Szabo Food Serv. v. Canteen Corp.*,
 823 F.2d 1073 (7th Cir. 1987) .......................................................................... 30

*United Stars Indus. v. Plastech Engineered Prods.*,
 525 F.3d 605, 609 (7th Cir. 2008) .................................................................... 28

*Walter v. Fiorenzo*,
 840 F.2d 427 (7th Cir. 1988) ............................................................................ 28

## **Statutes**

28 U.S.C. § 1927 ..................................................................................................... 24, 25

Cal. Pen. Code § 519 .................................................................................................. 34

## **Rules**

Fed. R. Civ. P. 11(b). .................................................................................................. 24

## **Other Authorities**

Chinekwu Osakwe, *Chicago plaintiff's firm accused of spying on its lawyers*, Reuters (April 11, 2022), https://www.reuters.com/legal/legalindustry/chicago-plaintiffs-firm-accused-spying-its-lawyers-2022-04-11/ ................................................................................................. 22

Debra Cassens Weiss, *Law firm's managing partner had a 'fixation' with employee surveillance, wiretap suit says*, ABA Journal (April 11, 2022), https://www.abajournal.com/web/article/law-firms-managing-partner-had-a-fixation-with-employee-surveillance-wiretap-suit-says.......... 22

Defendant Vrdolyak Law Group, LLC ("VLG" or the "Firm"), through its undersigned counsel, submits the following motion under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority to sanction Plaintiff Daniel Alholm ("Plaintiff" or "Alholm") and his counsel, for their abuse of the judicial process. In support, VLG states as follows:

## INTRODUCTION

Alholm has engaged in an incredible abuse of the judicial process and attempted to extort millions of dollars from VLG through this litigation. Alholm has undertaken numerous egregious, sanctionable acts: (1) Alholm has knowingly and falsely claimed in a federal court filing that VLG recorded phone calls despite VLG providing Alholm and his counsel complete access to VLG's systems and IT professionals to investigate Alholm's claims before filing this action—which they refused to do, and which would have conclusively proved that the allegations were false; (2) Alholm has attempted to settle alleged class claims that he knows are false for millions of dollars, when he has no right (standing) to settle such claims in the first instance; and (3) ███████████
███████████████████████████████████
███████████████████████████████████
██████

## STATEMENT OF FACTS

VLG has filed a Motion to Dismiss (ECF No. 11) which generally sets forth the facts underlying the legal challenges Plaintiff faces with respect to his claims. VLG did not address in that Motion the sanctionable conduct in which Plaintiff and his counsel have engaged, as that would only further Alholm's goal to defame VLG. While the Court is likely aware of the facts underlying the claims brought by Alholm and his counsel as part of the pleadings and motion

1

practice thus far, for context, such facts are incorporated herein alongside the facts necessary for this Motion.

## I.  VLG Hires Attorney Daniel Alholm.

Daniel Alholm, an attorney, approached VLG in May 2017, and inquired about the potential of joining the firm with his "book of business." Alholm met with attorneys from VLG and described his practice, claiming: (1) he specialized in multidistrict mass tort litigation; (2) he was an experienced trial lawyer; and (3) he had a stable book of business he was bringing with him without entanglement from his prior firm—a small East Coast personal injury firm for which Alholm was the only lawyer in Illinois. VLG quickly determined that Alholm's experience, competency, and book of business were not what he portrayed, but the Firm elected to give him an opportunity with VLG by keeping him on as an associate and attempting to assist him in marketing his alleged specialty.

In or around June of 2018, Alholm approached the Firm and advised that he heard the Firm planned to open a Nashville, Tennessee office and he would like to run the new office as a senior attorney. VLG ultimately agreed to allow Alholm to lead the Tennessee office and paid substantial sums for his relocation to Tennessee as well as his Tennessee law license. The Firm also hired all personnel necessary to support the office including a law school graduate, Eric Benton, who the Firm supported financially through his bar exam studies and thereafter trained as an associate.

## II.  Alholm Resigns and Accuses VLG of Ethical Violations.

Approximately 18 months after Alholm was entrusted by VLG to set up and run the Nashville office, he sent a memorandum to VLG's management in Chicago, stating that he was resigning immediately and falsely accusing VLG of myriad ethical and legal violations:

> Numerous sources have informed me that VLG has been violating Federal Law (18 U.S.C. 2511) Illinois law (720 ILCS 5/14-1) and Tennessee law (39- 13-601) by

2

illegally recording phone conversations. Under the Rules of Professional Conduct for the States of Illinois and Tennessee, I am required to report misconduct and I have done so accordingly . . . .

The Tennessee Board of Professional Responsibility is very concerned about protecting the interests of the TN clients and told me it would be unethical for me to walk away and leave them at a firm that has no attorneys licensed in the state. They advised me to write to each client and tell them they have the choice to have me continue to represent them outside of VLG, have VLG continue to represent them even though VLG does not have any TN attorneys . . . .

The issues addressed in this document are currently the subject of multiple bar association investigations and I believe are likely to be the subject of federal and state criminal investigations.

(January 24, 2020 Correspondence attached hereto as Ex. A.)

Alholm also sent his false allegations to the Illinois Attorney Registration and Disciplinary Commission ("IARDC") and the Tennessee Board of Professional Responsibility ("TBPR"), alleging that "Vrdolyak Law Group has been illegally recording the telephone conversations of its employees and others" and that such conduct "has been knowingly going on by Edward J. Vrdolyak and others within the firm." Alholm repeated these false allegations to the associate attorney, Eric Benton, in the Nashville office, which caused Benton to submit his own notice of immediate resignation to VLG.

Alholm never expressed any concern to VLG's management that any illegal conduct, including telephone wiretapping, was occurring, nor did he take reasonable steps to determine whether such allegations were true (they were not). Alholm did, however, immediately contact a host of VLG clients and solicited them to come to his new firm, advising them that he had resigned and there were no attorneys left at the VLG Nashville office to handle their work. (State Court Complaint attached hereto as Ex. B.) The day after Alholm sent his notice of resignation, VLG's counsel wrote from Chicago requesting that Alholm immediately contact him to discuss Alholm's

3

allegations, including the "numerous sources" Alholm referenced who allegedly advised him VLG

was recording calls. The letter stated:

> Please be advised that we are counsel to Vrdolyak Law Group, (the "Firm"). This letter is sent to you, as former employees of the Firm and as former counsel to clients of the Firm, at the direction and on behalf of the Firm, to advise you that your recent memorandum and Letter of Resignation contain statements that are false, defamatory, are evidence that you have breached your fiduciary duties to the Firm, acted in violation of a host of trade secret and unfair trade practices acts, and are actionable in a host of other respects. We demand that you both immediately cease and desist from any further publication of such information and immediately cease contacting clients of the Firm.

> With respect to the allegation that the Firm has illegally recorded phone conversations, as you are abundantly aware, at no time did either of you bring any such concern regarding this allegation to the attention of the Firm. It appears based on your communications that instead of asking anyone in management at the Firm whether in fact improper recording was taking place, you first broadcast this falsehood to a host of government and professional agencies, second, took the audacious liberty of notifying clients of the firm that the Firm had no Tennessee attorneys to handle their cases in a blatant attempt to the usurp the Firm's cases, while you were still employed by the Firm, and then third, sent resignation letters to the Firm making the false allegations and threatening the Firm with criminal charges. This is truly outlandish behavior for any employees, much less attorneys charged with the best interests of the Firm and its clients.

> With respect to your allegation please see the attached correspondence from the Firm's IT resource. We immediately demand that you provide us with copies of all communications sent to any agency, individual, or client advising them of any of the facts or allegations contained in your memorandum and Letter of Resignation of today's date, and that you have your counsel contact us immediately to discuss the remedial steps that must be taken to address some of the damage you have done…

> It is imperative that we speak with you or your counsel immediately, before we are forced to take even more extraordinary steps than are currently being pursued to protect the Firm and its clients. We can be available this weekend. Acknowledging the foregoing, the Firm reserves all rights.

(January 25, 2020 Correspondence to Alholm attached hereto as Ex. C.)

The January 25, 2020 letter attached a memorandum from VLG's IT professional, Dean

Walker, of Surge Systems, which stated:

> Subject: Vrdolyak Law Group Phone System

> The Call Recording feature is not active on your phone system. The Asterisk based phone platform that you use at all your offices including but not limited to the Nashville office has this feature built in as standard. The feature requires activation in the back end of the system.
>
> To activate call recording we would require a written request on company letterhead by an authorized person/s at Vrdolyak Law Group for activation and configuration. We have had no requests from Vrdolyak Law Group to activate this feature, therefor the feature remains deactivated.

*Id.*

Alholm was provided this information immediately after accusing VLG of recording phone calls and over two years before filing his complaint with this Court alleging the same. Alholm never responded to this correspondence with any information to support his allegations. In his complaints to the Illinois and Tennessee disciplinary commissions, Alholm stated that Edward Vrdolyak, Grant Stoffle, and IT director Michael Conlee would be most knowledgeable about Alholm's allegations. VLG immediately spoke with these individuals as well as Dean Walker and others regarding Alholm's claims; all individuals VLG spoke with verified that no telephone call recordings were taking place. Alholm had never advised any of the aforementioned individuals that he had concerns about alleged illegal telephone recordings taking place at VLG.

Within days of Alholm's resignation and disclosures to the disciplinary boards, VLG was contacted by both the TBPR and IARDC seeking responses to Alholm's claims that VLG was improperly and illegally recording phone communications. VLG promptly responded regarding the results of its own investigation and the falsity of Alholm's allegations. VLG's counsel also reached out to Alholm again on February 11, 2020, stating:

> As you are aware based on our prior correspondence of January 25, 2020, we represent Vrdolyak Law Group, (the "Firm" or "VLG"). In follow up to said correspondence you have failed to contact us as you indicated you would in your resignation letter of January 24, 2020, following the very serious allegations you

made to various government and quasi-government agencies, our clients, and other third parties.

In your January 24, 2020 communication, you stated among other things:

> The issues addressed in this document are currently the subject of multiple bar association investigations and I believe are likely to be the subject of federal and state criminal investigations. Accordingly, under the advisement of my counsel [sic.], I will not be discussing this matter with any VLG employees. My counsel will contact VLG soon and all necessary communications can be conducted through my attorneys.

On January 25, 2020, due to the seriousness of the allegations you made and the fact that you provided no evidence to support those allegations, we wrote to you and asked you or your counsel to contact us immediately, even on Sunday, to determine what bases you had to make such grave claims. As stated above, neither you nor your unnamed counsel contacted us.

Since our first letter to you, we have undertaken a further investigation of your assertions. We have spoken with the three individuals you claimed would be knowledgeable of the allegedly illegal practices. None of those individuals corroborated your claims, and in fact, they each explicitly refuted the same. We also confirmed with VLG's IT consultants that no technology used by VLG is being utilized as you asserted. Further, we have confirmed that VLG does not have data storage dedicated to the enormous amount of data that would be necessary for phone recording across four separate offices as you describe. From this vantage point, it appears you have made reckless and false representations about the Firm, and now you refuse to communicate with us regarding the same.

Instead, you have sent multiple communications to the Illinois Attorney Registration and Disciplinary Commission ("IARDC") and the Tennessee Board of Professional Responsibility ("TBPR"). In fact, rather than respond to our letter, you sent a copy of the January 25 letter along with one you drafted to the IARDC claiming that the January 25 letter was "full of veiled threats" and "nothing more than an attempt to intimidate." Let me assure you, that letter was neither of those things. You have made extremely serious allegations against VLG, its attorneys, and its employees. You have reached out to clients of the firm while you were an employee of the firm, soliciting those clients away from VLG, and you have done all of this without making any attempt to confirm whether your scurrilous allegations were true.

You stated in your letter to IARDC, "[VLG's January 25] letter condemns [you] for not reporting misconduct to [VLG] instead of reporting it to the board as is my duty." [sic.] Our letter does not take issue with reporting. Our letter takes issue with you making scandalous allegations against a firm, its attorneys and employees recklessly and without a proper investigation, before reporting. This is precisely

why we have asked you to contact us multiple times. If in fact you have any evidence of your allegations, we would like to see it. Additionally, you stated in your January 21 letter to IARDC and TBPR that you "have spoken to multiple sources who have told [you] this conduct has been knowingly going on by Edward J. Vrdolyak and others within the firm." [sic.] We would like to know who those multiple sources are, so we can determine the veracity of your assertions.

*     *     *     *     *

Accordingly, we reiterate our prior demand: that you immediately provide us with copies of all communications sent to any agency, individual, or client advising them of any of the facts or allegations contained in your memorandum and Letter of Resignation of January 24, 2020, and that you or your counsel contact us immediately to discuss the remedial steps that must be taken to address the damage you have done, and that you continue to do. Acknowledging the foregoing, VLG reserves all rights.

(February 11, 2020 Correspondence to Alholm attached hereto as Ex. D.)

## III.   VLG's Files Complaint in State Court—█████████████████

On February 14, 2020, after not having heard any response from Alholm or his counsel, VLG filed a complaint in the Circuit Court of Cook County alleging five counts: (1) breach of fiduciary duty; (2) defamation per se and per quod; (3) false light; and (4) tortious interference. The gravamen of the complaint was Alholm's declarations that the Firm recorded conversations and his decision to use that excuse to solicit clients of VLG for his new firm. (*See* Ex. B.)

Alholm retained counsel, and the parties engaged in discussions regarding issues that had arisen since Alholm's resignation surrounding cases and clients of Alholm and VLG. Alholm unsuccessfully attempted to have the state court proceeding dismissed. On November 20, 2020, during briefing on Alholm's motion to dismiss, VLG received a lengthy letter from counsel for Alholm ██████████████████ from VLG (the ███████ Letter"). (A true and accurate copy of this letter is attached hereto as Ex. E.)



### A.    Alleged Wiretapping.

The first and most pervasive allegation remained the wiretapping claim, which by November of 2020 had been completely debunked by VLG. The Firm's systems were not enabled to record conversations, the Firm did not have the technology or infrastructure to store and search such a vast amount of data, and every individual that worked for or with VLG that would have knowledge of such a practice denied that it had ever occurred. Although these facts had been relayed to Alholm and his counsel, Alholm falsely stated:

> It is widely known by current and former VLG employees that VLG and its managing partner, Edward J. ("Eddie") Vrdolyak, are obsessed with employee surveillance. ███████████████████████████████████████ ███████████████████████████ Eddie Vrdolyak has installed a network of surveillance cameras throughout VLG's Chicago offices and one Nashville office and constantly monitors those cameras on a large video screen in his three-story office.

Ex. E at 3.

Alholm then falsely alleged that Edward J. Vrdolyak recorded a meeting in a Nashville conference room, which resulted in the termination of three employees who made extremely disparaging comments about Mr. Vrdolyak. In fact, Mr. Vrdolyak learned about the disparaging comments when another employee who was present at the meeting relayed the disparaging comments to him. Alholm's counsel stated:

As a result of this situation, Mr. Alholm learned that not only was VLG surreptitiously recording conversations in conference rooms and other spaces-it was recording all telephone calls, too, using the then-new SIPCOM telephone system expressly marketed for "call recording." These facts were contemporaneously confirmed by a VLG contractor and another VLG employee, who called Mr. Alholm to warn him to be careful what he said on the phone, because calls were bring recorded. These facts have been verified and documented through our investigation and contacts with other current and former VLG employees, including attorneys, as well as contractors with intimate knowledge of Eddie Vrdolyak's obsession with surveillance. We are aware that VLG has subsequently denied activating the recording feature on its SIPCOM phone system, but that story will be disproven by available metadata and the accounts of multiple former employees and contractors.

Ex. E at 3.

Alholm still did not identify "the multiple former employees and contractors" who would verify that recordings were taking place, nor did he explain where the "metadata" would come from if this enormous amount of data was being collected and stored by VLG. The letter did however state, "This evidence will be developed in our federal class action lawsuit . . . filed on behalf of current and former employees of VLG, former clients of VLG, and . . . opposing counsel of VLG, all of whose calls were surreptitiously recorded without their knowledge or consent[.]" To this day, Alholm has provided no support for these outlandish allegations.

**B.** ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ He also raised an entirely new assertion: that VLG directed its clients to health care providers who would perform excessive and unnecessary procedures in order to increase the damages available in a lawsuit. Ex. E, at 5-6. Alholm named a number of physicians he believed were involved in this process and then accused VLG of "shak[ing] down" the physicians by forcing them to underwrite parties for non-profits and "sham" charitable organizations. *Id.* Alholm had never voiced any concern like this while handling

cases for VLG clients, in his own referrals to VLG, or at any time whatsoever during his employment at VLG. Alholm also did not explain what claims could be brought as a result of these allegations by opposing counsel and their clients or by VLG's clients for this alleged behavior.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

**C.**   ████████████████████████████

In his letter, Alholm also alleged, as a separate category of claims, that VLG "steers its clients to its preferred litigation lender" owned by a "lifelong friend of Eddie Vrdolyak" and then charges clients 25% of any amount it can obtain in reducing the loan with the lender. Ex. E, at 6-7. Alholm stated, "VLG pockets 25% of the reduction-which routinely totals tens of thousands of dollars-claiming it has delivered value to its clients, ██████████████████████████ ████████████████████████████████████████████████████████ Ex. E, at 5-6. Once again, Alholm provided no client names, files, complaints or any other evidence to support these allegations, nor did he explain how payment to him and his counsel would be appropriate to address the alleged wrong.

**D.**   ████████████████████████████.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



**E.**

**F.**

11

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

**G.** ██████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

**H.** ████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████



- ▪ [REDACTED]

- ▪ [REDACTED]

- ▪ [REDACTED] Mr. U[REDACTED] was a regular presence at VLG's offices and frequent guest at VLG functions due to his close friendship with Eddie Vrdolyak. Our investigation has revealed that VLG employees, [REDACTED] were engaged in Mr. U[REDACTED]'s [REDACTED] gambling operation, placing bets through Mr. U[REDACTED] and [REDACTED] and recruiting other VLG employees to participate in the gambling ring."

- ▪ "The men who run VLG-[REDACTED] are also racists. Mr. Alholm and other current and former employees have personally witnessed Eddie Vrdolyak, Pete Vrdolyak, and Steve Armbruster tell crude, racist jokes [REDACTED]

- ▪ [REDACTED]

- ▪ [REDACTED]

Ex. E, at 14-15.

Neither Alholm nor his counsel explain how any of these assertions relate to the defense of the claims VLG brought against Alholm in the state court proceeding, [REDACTED]

[REDACTED]

13



## I.     The "Settlement" Offer.

Alholm concluded the 17-page ████████ Letter with the following:



Ex. E, at 16.

As attorneys, Alholm and his counsel knew that they could not settle claims for unnamed employees, clients, opposing counsel, opposing counsels' clients, ████████████████, or the states of Illinois and Tennessee. █████████████████████

14



(December 18, 2020, Correspondence to Alholm attached hereto as Ex. F.)

VLG proceeded to refute every single one of Alholm's baseless allegations. It concluded:



(Ex. F, at 8.) VLG reviewed every allegation and found that in every single instance the allegations lacked merit. In its response, VLG made its beliefs clear that: ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████. Ex. F, at 8. VLG further indicated that "the accusations made by Mr. Alholm are patently untrue" and on those grounds, reaffirmed that VLG "will prevail in the current Illinois litigation and any other litigation Mr. Alholm may bring." *Id.*

Over the course of the next year, VLG and Alholm engaged in discussions surrounding the handling of cases that were formerly VLG cases that Alholm had taken and cases that Alholm had brought to VLG for which the Firm could owe Alholm referral fees. To be clear, there were no discussions in which VLG ever offered to pay Alholm or his counsel any amount of money for his meritless allegations. The discussions solely pertained to the handling of cases following Alholm's separation. By the end of 2021, those discussions had broken down, and Alholm was again

16

threatening to file a case in federal court making the same defamatory and false allegations laid out in his ▬▬▬▬ Letter. VLG sent a letter on January 4, 2022, reiterating its belief that Alholm was engaging in unethical, if not criminal, demands. The letter stated:



(January 4, 2022, Correspondence to Alholm attached hereto as Ex. G, at 2.)

VLG again addressed Alholm's allegations of wiretapping and recording; in turn, VLG again offered to permit Alholm and his counsel access to the relevant systems and individuals to disprove Alholm's belief that VLG was engaging in improper recordings. The letter stated:

> We have previously outlined for you all facts surrounding your claim sounding in wiretapping and ▬▬▬▬ and we stand behind those facts. As you and Mr. Alholm are well aware, the Illinois Attorney Registration and Disciplinary Commision (ARDC) and the Tennessee Board of Professional Responsibility both dismissed Mr. Alholm's complaints regarding improper recordings or wiretapping. This alone should provide you with great pause before proceeding into litigation without a good faith basis. In the interest of further dispelling your belief that there is a viable claim under either theory, we are willing to provide a viewing of affidavits from the relevant parties and from outside IT personnel to verify that VLG never recorded conversations or violated any wiretapping statute as has been suggested. To file a claim under either theory while VLG is making this information

available is a clear violation of your duty to make a reasonable investigation under Fed. R. Civ. P. 11.

*Id.* at 2-3.



*Id.* at 3-4.

Over the next several months, the parties again engaged in discussions surrounding the handling of VLG cases taken by Alholm and any referral fees potentially owed by VLG to Alholm. Those discussions were not fruitful and by April 2022, Alholm was again threatening to file a federal lawsuit containing the baseless and scurrilous allegations set forth in the ▮▮▮▮ Letter. On April 6, 2022, counsel for VLG sent Alholm's counsel a final warning not to file baseless allegations. The email stated:



████████████████████████████████████████████

(April 6, 2022 Email, attached hereto as Ex. H.)

Once again, Alholm and his counsel declined the opportunity to access, interview or investigate any of VLG's IT systems or personnel and ████████████████████████

████████████████████████████████████████████

████████████████████ Alholm and his counsel filed their federal complaint the following day on April 7, 2022. (ECF No. 1.)

The federal complaint repeats the baseless allegations of improper recording, as well as a host of allegations intended to embarrass VLG and damage its reputation in the community, such as:

24. Mr. Alholm eventually became aware of inappropriate and illegal directives and conduct of VLG managers and partners, at odds with the ethical obligations of attorneys licensed to practice law in Illinois and Tennessee.

25. Mr. Alholm learned that VLG utilized client agreements that unethically took advantage of the firm's clients, as described more fully below.

26. Specifically, VLG collected contingency fees from its clients based on Med-Pay coverage, a type of liability insurance that covers a policyholder regardless of fault. Upon information and belief, collecting a contingency fee on Med-Pay is unethical.

27. Additionally, in addition to collecting contingency fees based on Med-Pay coverage, VLG charged its clients a "Med-Pay processing charge" – a flat fee for handling Med-Pay.

28. VLG steered its clients to litigation lenders such as Miles Lustig (d/b/a Client Funding Solutions ("CFS")) ("CFS/Lustig"), a litigation lender whom VLG and its principals had a close, confidential relationship. VLG principals socialized and traveled with Mr. Lustig, and Mr. Lustig effectively represented himself as an alter ego and agent of VLG. When VLG clients asked for loan referrals, VLG did not refer its clients to litigation lenders other than CFS/Lustig, upon information and belief. After making these non-arms-length referrals, VLG collected contingency fees (25%) for reductions in litigation loans, based on purportedly negotiated reductions in loan repayment amounts to CFS/Lustig.

20

29. VLG charged other fees to clients that were unrelated to work actually performed. These fees included "processing maintenance charges" for postage, copies, etc., "docket management fees," and fees for handling multiple cases—all fees it "accelerated" and deducted from its clients' settlements at the first possible opportunity.

30. VLG, in order to increase recoverable economic damages in litigation (and thus, its own fees), routinely inflated clients' medical bills by directing them to receive excessive and unnecessary medical care—including from specific physicians who VLG knew would perform excessive and unnecessary medical tests and procedures—often telling the physicians the amount of the defendant's insurance that was available to pay for such care. In exchange for increasing the value of the case by providing this care, these physicians are paid via inflated medical liens, entitling them to payments many times higher than they would receive treating insured or self-pay patients.

31. Physicians involved in this scheme include, upon information and belief, Dr. E., Dr. H., Dr. M., and Dr. B., at least one of whom has been convicted on Medicare fraud charges involving a similar kickback scheme.

32. To maintain their lucrative positions in the scheme, these physicians "donated" funds to VLG-sponsored charity events—elaborate parties thrown by VLG with ostensible charitable purposes. In reality, Edward J. Vrdolyak ("Eddie Vrdolyak" or "Mr. Vrdolyak"), Pete Vrdolyak, and Steve Armbruster announced plans to "shake down" the doctors to underwrite the parties, sham charitable contributions made to VLG in recognition of the windfall the physicians
continue to reap by participation in the patient and insurance fraud scheme.

33. Mr. Alholm routinely observed Eddie Vrdolyak, Peter Vrdolyak, and Steve Armbruster make antisemitic and racist jokes and use racial slurs, including in reference to VLG employees.

34. Mr. Alholm became aware of an offshore sports gambling operation involving a close friend and associate ("Mr. U") of VLG leadership. Mr. U attended VLG firm events and recruited firm employees to wager on sports through his offshore gambling operation.

(ECF No. 1 ¶¶ 24-34.)

█████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

21

███████████████████████████████████████

███████████████████████████

Alholm filed his complaint in federal court instead of bringing counterclaims in VLG's state court proceeding, presumably to avoid Judge Myerson and the unfavorable rulings Alholm had already received and to ensure the greater publicity of a newly filed complaint. The strategy worked. Alholm's Complaint was picked up by several news outlets and cited precisely for the inflammatory, damaging, and irrelevant allegations discussed above. *See*, Chinekwu Osakwe, *Chicago plaintiff's firm accused of spying on its lawyers*, Reuters (April 11, 2022), https://www.reuters.com/legal/legalindustry/chicago-plaintiffs-firm-accused-spying-its-lawyers-2022-04-11/; Debra Cassens Weiss, *Law firm's managing partner had a 'fixation' with employee surveillance, wiretap suit says*, ABA Journal (April 11, 2022), https://www.abajournal.com/web/article/law-firms-managing-partner-had-a-fixation-with-employee-surveillance-wiretap-suit-says.

## ARGUMENT

Alholm's inclusion of, and continued reliance on, the false allegations of recording and wiretapping in his complaint warrant sanctions against him and his counsel as the allegations are a blatant and baseless attempt to damage VLG's reputation in the community and cost it clients. VLG gave Alholm and his counsel unlimited access to its IT systems and personnel to prove to Alholm and his counsel that there was no merit to Alholm's claim that VLG recorded phone calls (or video recordings), but Alholm and his counsel refused that offer multiple times. The exhibits attached to this Motion conclusively establish that there is not and never was any evidentiary support for the allegations concerning the alleged recording of conversations. Had Alholm and his counsel conducted a proper investigation—or any investigation—it would have conclusively

established there never were any recordings. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ VLG has been forced to respond to

Alholm's baseless Complaint, draft this motion, and suffer the negative publicity that the

complaint created. Alholm and his counsel should bear the unnecessary costs of their abusive

litigation practices. *See Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) ("The

purpose of § 1927 'is to deter frivolous litigation and abusive practices by attorneys and to ensure

that those who create unnecessary costs also bear them.'" (quoting *Kapco Mfg. Co. v. C & O

Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)); *Shales v. Gen. Chauffeurs, Sales Drivers &

Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009). Only sanctions will deter Alholm

and his counsel from pursuing a similar strategy against others in the future. *See Salmeron v. Enter.

Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (upholding sanction of dismissal and

explaining that the court's inherent power is "permissibly exercised not merely to remedy

prejudice to a party, but also to reprimand the offender and to deter future parties from trampling

upon the integrity of the court.")

This Court has broad authority to impose sanctions for bad faith litigation from three

sources: its own inherent power, 28 U.S.C. § 1927, and Rule 11. Most broadly, the Court's inherent

power allows it to "fashion an appropriate sanction" against any party or attorney "for conduct

which abuses the judicial process," even if "neither [a] statute nor the Rules are up to the task."

*Chambers v. NASCO*, 501 U.S. 32, 44-45, 50-51 (1991); *Jackson County Bank v. Dusablon*, No.

1:18-cv-01346, 2020 U.S. Dist. LEXIS 26164, at *8 (S.D. Ind. Jan. 10, 2020). Section 1927

23

provides for sanctions against any attorney who has necessitated excess fees by "multiply[ing] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. It serves as a fee-shifting statute and imposes the excess fees on the attorney whose bad faith conduct incurred the need for them. *Shales*, 557 F.3d at 749. Finally, Rule 11 provides for sanctions against any party or attorney that fails to conduct a reasonable pre-complaint inquiry, bring claims without any evidentiary support, or litigates for an improper purpose:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>          *      *      *      *
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). Alholm has violated Rule 11 and vexatiously multiplied the litigation in three ways: (1) he failed to conduct a reasonable inquiry; (2) he not only lacked evidentiary support but also buried his head in the sand when given the opportunity to confirm the allegations were false; and (3) he filed his complaint specifically with the intent of harassing VLG, causing it to incur needless expense and hoping to bring bad publicity to the Firm (which is exactly what Alholm threatened in his ███████ Letter).

In addition to the multiple warnings VLG provided to Alholm and his counsel regarding their duty to properly investigate and the improper nature of their allegations and settlement demand, VLG sent a safe-harbor letter to Alholm. (May 25, 2022, Correspondence to Alholm attached hereto as Ex. H). The correspondence put Alholm and his counsel formally on notice that

VLG intended to move forward with a Motion for Sanctions if Alholm did not withdraw his Complaint. Alholm has not withdrawn his Complaint, and the matter is ripe for decision.

## I.     Alholm Failed to Conduct a Reasonable Pre-Filing Inquiry.

Alholm and his counsel bore the responsibility to conduct a reasonable inquiry into Alholm's allegations and claims before filing them. *See Jackson County Bank*, 2020 U.S. Dist. LEXIS 26164, at *8 ("An attorney is required to reasonably investigate the truthfulness of statements presented to the court."); *CMG Worldwide, Inc. v. Glaser*, 92 F. Supp. 3d 839, 845 (S.D. Ind. 2015) (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) ("[I]t is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law.") The reasonableness of the inquiry is based on, as relevant here, "whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper" and "the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts." *Brown v. Fed'n of State Med. Bds. of the United States*, 830 F.2d 1429, 1435 (7th Cir. 1987). Here, (1) Alholm had an abundance of time and a host of offers from VLG to investigate his belief about recordings and unethical conduct, given that VLG responded to Alholm's ███████ letter in December of 2020 and the Complaint was not filed until April of 2022, (2) because VLG offered Alholm unlimited access to its systems and personnel, Alholm could have easily determined that VLG did not have the capability to record conversations over hundreds of phone lines and systems nor the capacity to store and search those materials, (3) Alholm's counsel had no need to rely entirely on his client

and could have conducted his own investigation, given that VLG also offered counsel unlimited access to its systems and personnel for such purpose, and (4) the facts here are not complex and any basis for the claims could have been easily verified or refuted. VLG repeatedly offered Alholm and his counsel unlimited access to its systems in order to avoid the filing of a baseless lawsuit, even though it had no duty to do so. *See Borowski v. De Puy, Inc., Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 305 (7th Cir. 1988) (a plaintiff "should not be permitted to rely on the defendants to do the research either to make his case or expose its fallacies")..

The drastic difference between the facts as alleged and reality not only shows that no such reasonable inquiry was conducted, but also leads one to the undeniable conclusion that the investigation was intentionally avoided so that the allegations of the Complaint were not definitively disproven before Alholm attempted to ███ VLG. Alholm, an attorney, and his counsel's conduct in pursuing a path that they knew or should have known to be legally unsound is objectively unreasonable and vexatious under the law. The lack of justification for their actions and their serious disregard for the process of justice warrants sanctions here. *See Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) ("Sanctions are proper [under § 1927] if the attorney 'has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . or where a claim [is] without a plausible legal or factual basis and lacking in justification."); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotations omitted) (holding that, for sanctions under 28 U.S.C. § 1927, "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.").

26

Alholm's cries of wrongdoing and his obstinate assertions that VLG engaged in wiretapping have softened since VLG informed him that it would seek sanctions if Alholm filed his Complaint. In his most recent filing with this Court, Alholm stated: "Discovery will reveal what, if any, recording occurred, and where it occurred, between March 2019 and January 2020." (ECF No. 16 at 10.) Not only does this show a clear walk-back of the claims Alholm made to the IARDC and TBPR, in his ██████ Letter, and in his Complaint, but Alholm admits that he must undertake a fishing expedition to uncover any basis for his claims despite his previous strong assertions that he had undeniable evidence thereof. *See United Stars Indus. v. Plastech Engineered Prods.*, 525 F.3d 605, 609 (7th Cir. 2008) (awarding sanctions when defendant advanced a counterclaim without any legitimate basis and used it to advance discovery requests to fish for supporting evidence).

In addition to failing to conduct a proper investigation, submitting false claims or failing to remediate upon learning of a claim's falsity also warrants sanctions. "An attempt to perpetrate a fraud on the court," such as by submission of false allegations, warrants an award of sanctions under the court's inherent powers. *Chambers*, 501 U.S. at 50-51 (sanctions are appropriate when the litigant's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court"); *Goodvine v. Carr*, Case Nos. 17-3208, 18-1168 & 18-1398, 2019 U.S. App. LEXIS 5840, *10 (7th Cir. Feb. 27, 2019) (sanctions are the appropriate remedy for submission of false affidavit). Indeed, the Seventh Circuit has made clear that allowing a party to withdraw a false affidavit under Rule 11's safe-harbor provisions would be inappropriate. Rule 11 is intended to "deter baseless filings"— "[i]t does not principally target manufactured evidence or lies under oath; this is litigation misconduct of a different degree." *Id.* (citing *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013)).

In this case, Alholm knew his claims were false. Alholm made nearly identical claims to the attorney disciplinary bodies in both Tennessee and Illinois about VLG acting unethically. And both bodies closed the investigations—*before* Alholm's lawsuit was filed—with no action taken, precisely because the allegations are false. Thus, Alholm knew before filing his Complaint that he had no factual or legal basis to file this lawsuit. But he filed the lawsuit anyway. This willful ignorance approach amounts to a fraud on the Court under Seventh Circuit case law, and Alholm should be sanctioned.

Alholm's counsel should also be sanctioned. Even viewing Alholm's counsel's behavior in the most charitable light, it at best demonstrates the "'ostrich-like tactic of pretending that potentially dispositive authority [evidence] against [its client's] contention does not exist,'" which the Seventh Circuit has found to be "precisely the type of behavior that would justify imposing Rule 11 sanctions." *Borowski*, 850 F.2d at 304-305 (quoting *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987)). An attorney cannot simply "rely on her client's word, especially when, as here, many other sources of information contradict her client. Rule 11 does not allow attorneys to turn a blind eye to evidence contradicting their clients' version of events simply because their clients stick to their story." *Littler v. Martinez*, Case No. 2:16-cv-00472, 2020 U.S. Dist. LEXIS 1850, *85 (S.D. Ind. Jan. 3, 2020). Rather, the attorney is obligated to "ensure that she has reasonably investigated the factual contentions presented to the Court, and after such an investigation reveals she has made a false assertion of fact, it is her obligation to fully and frankly correct these false assertions *before* the Court points them out." *Id.* at *88 (emphasis in original). Alholm's counsel did not reasonably investigate, made false assertions to this Court, and apparently has no intention of correcting those false assertions.

## II.   Alholm Brought These Baseless Claims for an Improper Purpose— ███████

███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ Letter. (*See* Ex.

E, at 16). The Seventh Circuit has expressly condemned such practice. *See Lightspeed Media Corp.,* 761 F.3d at 709; *see also Kapco*, 886 F.2d at 1492-93 (holding that sanctions were appropriate where plaintiff's actions "unnecessarily prolonged the litigation for purposes of harassment" and "constituted a war upon the defendants which [plaintiff and his counsel] sought to expand to as many fronts as possible"). In *Lightspeed*, the court affirmed the district court's award of attorneys' fees from the inception of the suit because "[plaintiff] raised baseless claims and pressed for a meritless 'emergency' discovery hearing," and plaintiff was engaged in "abusive litigation . . . [by] simply filing a lawsuit to do discovery to find out if [it] can sue somebody." *Lightspeed*, 761 F.3d at 709. As the Seventh Circuit put it, the litigation "smacked of bullying pretense." *Id.* at 704.

Alholm's purpose is to bully and embarrass VLG, which is evident from the complete lack of facts to support Alholm's claim, and Alholm—and his counsel's—failure to perform even a perfunctory investigation despite VLG's offers to make its information and personnel available. This complaint was never about receiving damages for injuries suffered at the hands of Alholm's former employer, but rather about wreaking havoc on VLG publicly through fallacious claims, as well as through discovery as was promised in the ██████ Letter. This attempt to use the legal system to bully and ████ VLG is particularly egregious here, where there are no predicate facts to support the core allegations upon which the claims are based.

As this Court is aware, Alholm has consistently refused to provide any information regarding his alleged sources to support the assertion that he had a good faith basis to believe that wiretapping took place. As set forth above, in January of 2020, Alholm advised both state disciplinary bodies that Edward Vrdolyak, Grant Stoffle and Michael Conlee would have information regarding the recordings. All three individuals have completely denied Alholm's allegations and will do so under oath. Recently in the state court proceeding, Alholm stated in discovery that another former employee of VLG, ███████, advised Alholm that VLG was recording phone calls and that Mr. G███ had been able to access previous calls. (Alholm Answer to Interrogatory No. 2 attached hereto as Ex. I). Upon learning this, VLG immediately contacted Mr. G███ to verify the truth of Alholm's assertion. In direct contravention of Alholm's discovery response, Mr. G███ provided VLG with an email he sent to Alholm and his counsel in February of 2020 (more than two years before filing the Complaint in this case), which stated:

> Dan, I was contacted last week by somebody who claimed to be representing you regarding a lawsuit with VLG. He claimed that you needed my help.
>
> I told him I wasn't feeling well and to call you next week. [sic.] However the end of the conversation he asked me to confirm that phone calls were recorded by VLG. It made me feel very uncomfortable when he continued to ask me questions after I told him I wasn't feeling well. Let me be clear, at no time during my employment at VLG was I ever aware of phone calls being recorded. In fact I don't believe in any way that allegation is true. If the person that called me last week was acting at your direction please instruct him not to contact me any further.

(February 24, 2020 Email attached hereto as Ex. J.)

Indeed, every single source Alholm has referenced as being knowledgeable of VLG improperly recording conversations has denied any such knowledge and, in fact, refuted that such recordings ever occurred. Alholm and his counsel's filing of this Complaint, in the face of so much contradictory evidence of their claims is precisely the type of circumstance that warrants an imposition of sanctions.

**III.** ███████████████████████████████

Alholm and his counsel have sought to ████ VLG from November 20, 2020—the date of the ████████ Letter—through the filing of this lawsuit. One of the leading jurisdictions to examine the line between ████████ and legitimate settlement demands is California. The seminal California case is *Flatley v. Mauro*, 39 Cal. 4th 299 (Cal. 2006). In that case, Michael Flatley, famous from the "Lord of the Dance" productions, received a demand letter from attorney D. Dean Mauro on behalf of a woman who claimed that Flatley had raped her in a Las Vegas hotel room. In the demand letter, Mauro threatened that "all pertinent information and documentation, if in violation of a U.S. Federal, Immigration, I.R.S., S.S. Admin., U.S. State, Local, Commonwealth U.K., or International Laws, shall immediately be turned over to any and all appropriate authorities" if Flatley did not immediately settle the case. *Id*. at 308-09. The letter also threatened to send press releases to a laundry list of media outlets if Flatley declined to settle. *Id.* at 309. In subsequent phone calls with Flatley's attorneys, Mauro said it would take "seven figures" to settle the matter and prevent him from "going public." *Id*. at 311.

After declining to pay Mauro, Flatley sued Mauro ████████████████████████████. *Id*. at 305. Mauro filed an anti-SLAPP motion to strike Flatley's complaint, arguing that his demand letter, upon which Flatley's complaint was premised, was subject to the litigation privilege. *Id*. at 311. Flatley argued that Mauro's letter constituted extortion and was therefore illegal conduct unprotected by the litigation privilege. *Id.* The trial court agreed with Flatley and denied Mauro's anti-SLAPP motion. *Id.* The California Appellate Courts affirmed. *Id.* The California Supreme Court also affirmed and held that, because Mauro's letter and subsequent phone calls constituted extortion, they were illegal as a matter of law and thus unprotected by the litigation privilege. *Id.* at 333. The court held that Mauro's threats to accuse Flatley of rape squarely met the definition of

extortion in that he "threatened to 'accuse' Flatley of, or 'impute to him,' 'crimes' and 'disgrace.'" *Id.* at 330 (*citing* Cal. Pen. Code § 519). The court also reasoned that Mauro's vaguer threats to report Flatley for unspecified violations of immigration and tax law established extortion because they put Flatley in fear of being accused, and were placed even more firmly within the realm of extortion, because these alleged violations were unrelated to Mauro's client's claim against Flatley. *Id.* at 330-31.

Following *Flatley*, an attorney's demand letter in *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799 (Cal. App. Ct. 2013) was threatening enough for the Court of Appeals to affirm the trial court's holding that it constituted extortion. In that letter, attorney Reed Hamzeh told plaintiff Miguel Mendoza, a former employee of Hamzeh's client, that Hamzeh demanded a payment of at least $75,000, or he would "be forced" to report Mendoza to "the California Attorney General, the Los Angeles District Attorney, the Internal Revenue Service regarding tax fraud, the Better Business Bureau, as well as to customers and vendors with whom he may be perpetrating the same fraud upon." *Id.* at 802. The California Appellate Court held that "Hamzeh's threat to report criminal conduct to enforcement agencies and to Mendoza's customers and vendors, coupled with a demand for money, constitutes 'criminal extortion as a matter of law.'" *Id.* at 806. Importantly, the court also noted that although Hamzeh's threats were not as egregious as those in *Flatley*, they still constituted extortion as a matter of law, concluding that "[t]he rule must be a bright line rule." *Id.* at 807.

The courts further refined the *Flatley* rule in *Stenehjem v. Sareen*, 226 Cal. App. 4th 1405 (Cal. App. Ct. 2014), when the California Appellate Court confirmed that veiled threats can constitute extortion as a matter of law. Jerome Stenehjem sued his former employer, AKON, and his boss, for wrongful termination after he was terminated for misconduct. *Id.* at 1410-11.

Stenehjem sent an email to Sareen's counsel demanding a settlement payment and vaguely invoking a potential *qui tam* case based on AKON's allegedly fraudulent billing practices. *Id.* at 1421-22. In particular, Stenehjem wrote that he did not want to "involve the United States Attorney General, the Department of Justice or the DOD," nor did he "wish to make a Federal case out of this," nor was it his "first choice to procede [sic] with the Qui Tam option." *Id.* at 1422. Despite that Stenehjem's threats were more veiled and circumspect than those in *Flatley* and *Mendoza*, the court concluded that Stenehjem's email constituted extortion as a matter of law because "[i]t threatened to expose Sareen to federal authorities for alleged violations of the False Claims Act unless he negotiated a settlement of Stenehjem's private claims." *Id.* at 1423. The court reasoned that just because Stenehjem's threats were "less than explicit" did not render them legally permissible—"that Stenehjem's threats may have been 'veiled' . . . or 'half-couched in legalese does not disguise their essential character as extortion.'" *Id.* at 1425 (citations omitted). Additionally, the court noted that the conduct threatened to be exposed by Stenehjem was unrelated to his claim for wrongful termination. *Id.* at 1423.



and alleging statements were made by partners that were racist and antisemitic—have nothing to do with Alholm or VLG's former employees' or clients' potential claims.

███████████████████████████████████████████████████

████████████████████ Alholm and his counsel must be sanctioned for this behavior.

## CONCLUSION

WHEREFORE, Defendant VLG respectfully requests that this Court order Alholm and his counsel to reimburse the attorney's fees VLG has incurred to defend against Alholm's false and baseless claims, award punitive sanctions as a means of deterrence, set a briefing schedule for an attorneys' fee petition, and award any further relief in favor of VLG it deems just and equitable under the circumstances.

Dated: October 13, 2022

Respectfully submitted,

/s/ Robert D. Sweeney

Robert D. Sweeney
John J. Scharkey
William H. O'Hara
SWEENEY, SCHARKEY & BLANCHARD LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant VLG*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system which will automatically send all necessary notifications of this filing to all counsel of record.

/s/ Robert D. Sweeney

Dated: October 13, 2022