**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DANIEL ALHOLM,** | ) | |
| **individually and on** | ) | |
| **behalf of those similarly situated,** | ) | |
| | ) | **No. 1:22-cv-01820** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Mary M. Rowland** |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **THE VRDOLYAK LAW GROUP, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
SANCTION PLAINTIFF AND PLAINTIFF'S COUNSEL FOR FILING AND
VEXATIOUSLY PURSUING FALSE CLAIMS**

---

## INTRODUCTION

Defendant The Vrdolyak Law Group, LLC's ("VLG") entire motion for sanctions is premised upon the supposed fact—confidently and repeatedly asserted to the Court by its counsel—that Plaintiff Daniel Alholm's allegation that VLG engaged in illicit recording of telephone calls and other unethical practices is "false." VLG, through counsel, repeatedly characterizes Alholm's allegations as "conclusively proved … false," "non-actionable," "reckless and false," "wild and unsubstantiated," "completely debunked," "lack[ing] merit," "patently untrue," "baseless," "definitively disproven," "objectively unreasonable," "vexatious," and a "fraud on the court."

Based on these and other unsworn assertions, VLG seeks sanctions against Alholm and his counsel for failing to conduct an adequate pre-suit investigation, filing suit for an improper purpose, and attempting to "extort" VLG by agreeing to waive millions of dollars in future referral fees VLG is contractually obligated to pay Alholm and release numerous claims against VLG in

exchange for a settlement payment resolving VLG's claims against Alholm, Alholm's claims against VLG, and Alholm's contractually obligated future fees.

However, it is VLG and its counsel's breathless denials that will be proven false in litigation, as demonstrated by evidence known to Plaintiff, which Plaintiff will produce and/or seek to obtain in discovery. Among that evidence:

- Dozens of recordings of telephone calls provided to Plaintiff's counsel by former VLG employees, illegally recorded by VLG using its telephone system, including inbound calls from clients, outbound calls from employees, and internal calls between employees;

- Expected testimony from an eyewitness present at a meeting in which Edward J. ("Eddie") Vrdolyak discussed his intention to use the VLG phone system to record phone calls;

- Expected testimony from at least four eyewitnesses, including current VLG employees, who personally saw and accessed call recordings;

- Written communications from a former IT vendor calling into questions VLG's assertions about call recording, stating that VLG pressured him to sign something but he declined to do so, and casting into doubt the authenticity of the IT vendor letter VLG provided Plaintiff and filed in support of its motion;

- Multiple witnesses who are expected to testify that VLG principals were specifically reprimanded by Cook County Circuit Court Supervising Judge Kathy M. Flanagan for charging excessive, unfair, and unethical fees; and

- Current and former VLG employees who are expected to testify that VLG maintained two sets of cost reports, one that it submitted to clients in which it paid itself certain fees from those clients' settlements, and one that it submitted to courts, in which VLG principals directed that those fees be removed to prevent judicial scrutiny.

Plaintiff obtained this evidence after conducting a detailed factual investigation, speaking with over a dozen current and former employees before filing suit and being contacted by several more afterward.

Plaintiff's allegations can and should be tested in discovery, which is why the Advisory Committee stated that Rule 11 sanctions based on pleadings "normally will be determined at the

end of litigation." Likewise, the Court retains the power to sanction counsel under 28 U.S.C. § 1927 and the parties or their counsel under its inherent authority. In other words, the Court has no shortage of tools to sanction bad-faith or insufficiently prepared litigants and their attorneys; what it is not permitted to do is accept VLG's invitation to prejudge the merits of the case after receiving detailed allegations from one party and unsworn representations from the other.

At base, then, VLG's motion for sanctions amounts to a thinly disguised effort to avoid discovery and fact-finding based on nothing more than VLG's say-so in self-serving, unsworn communications—which will soon be demonstrated false—and upon which VLG's counsel has chosen to base its representations to the Court. Discovery and sworn testimony, however, will reveal a different story. And if any party or attorney has failed to conduct a diligent investigation before filing pleadings—or signing motions—before the Court, the evidence will speak for itself. At that time, Plaintiff believes the Court should certainly consider sanctioning the offending party, including any counsel who makes representations to the Court and fails to correct them after receiving notice that their representations were false or based upon insufficient investigation.

Until then, VLG's intemperate, untruthful motion should be denied if not withdrawn by VLG's counsel and Plaintiff awarded costs and attorneys' fees for defending against it. Fed. R. Civ. P. 11(c)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   VLG's Financial Shortfalls and Fraudulent Practices

Mr. Alholm was a successful Chicago plaintiffs' attorney considering potential employment opportunities with at least three firms when he was approached by a representative of VLG on April 25, 2017. (Compl., ¶¶ 10-11.) Mr. Alholm expressed concerns to VLG hiring partners Edward J. "Eddie" Vrdolyak and Peter Vrdolyak (the "Partners") and Steve Armbruster

about VLG's reputation, and specifically the firm's founder's prior disbarment and imprisonment. *Id.*, ¶ 14. The Partners and Mr. Armbruster made specific representations to Mr. Alholm claiming that VLG was no longer involved in any improper or illegal activity, and they promised Mr. Alholm that he would be hired to focus on specific multidistrict mass tort litigation and that VLG had and would use the resources, personnel, and finances to successfully litigate Mr. Alholm's mass tort cases, as the firm had previously done when recovering $9 billion for its clients. *Id.*, ¶¶ 13-14. Believing these representations and assurances, Mr. Alholm began working at VLG on May 15, 2017. *Id.*, ¶ 15. In August 2017, VLG asked Mr. Alholm to relocate with his family to Nashville, where he would manage a new VLG office. *Id.*, ¶ 19.

After coming to work at VLG, Mr. Alholm discovered that VLG lacked the resources to advertise, prosecute Mr. Alholm's cases, pay credit card bills, or, at times, fund ongoing operations. *Id.*, ¶¶ 21-22. Mr. Alholm was forced to spend nearly $20,000 of his own money to fund filing fees, office costs, and other work-related expenses after VLG credit cards were unavailable or declined. *Id.*, ¶ 23. VLG's inability to pay its bills caused professional embarrassment and reputational harm to Mr. Alholm. *Id.*, ¶ 22.

Eventually, Mr. Alholm became aware of a host of other inappropriate, unethical, and, in some cases, illegal activities occurring at VLG. VLG:

- collected contingency fees based upon Med-Pay coverage while also charging clients a "Med-Pay processing charge";

- steered clients to a preferred litigation lender with whom VLG's principals had a close, confidential relationship, and then collected contingency fees for securing purportedly negotiated reductions in litigation loan repayment amounts;

- charged clients fees (e.g., "processing maintenance charges," "docket management fees," and fees for handling multiple cases for the same client) unrelated to the work it performed, and then accelerated those fees and deducted them from clients' settlements at the first available opportunity;

- steered clients to specific physicians who would provide excessive and unnecessary medical care up to the defendant's insurance policy limits, in exchange for which the physicians donated to VLG-sponsored charity events;

- tolerated a culture in which VLG principals made antisemitic and racist comments, including in reference to VLG employees; and

- allowed the (subsequently indicted and then pardoned) agent of an illegal offshore gambling ring to recruit firm employees to wager on sports through his illegal offshore gambling operation.

*Id.*, ¶¶ 24-34. These schemes injured both Mr. Alholm—who relied on VLG principals' representations that the firm had settled $9,000,000,000 in cases, would adequately staff, fund, and prosecute his clients' cases, and was no longer engaged in illegal activity—and his clients. *Id.*, ¶¶ 35, 71, 74, 75.

## II.   VLG's Illegal Wiretapping Activities

Eddie Vrdolyak, managing partner of VLG, has a fixation with audio and video surveillance, monitoring an extensive network of video cameras from large screens in his Chicago office. *Id.*, ¶¶ 36-37. Mr. Vrdolyak routinely instructed subordinates to monitor other employees' conversations and listen to their voicemail messages. *Id.*, ¶ 39. In February 2019, the Partners informed Mr. Alholm that they had heard a recording of derogatory remarks about Eddie Vrdolyak that were recorded through the Nashville office's video surveillance system. *Id.*, ¶ 42. Later, Eddie Vrdolyak maintained that he had not actually heard such a recording but had instead learned about the remarks from a VLG employee who witnessed them. *Id.*, ¶ 44. He said he lied about the existence of the recording (and, presumably, directed others to lie about it) in an effort to protect the reporting employee from retaliation. *Id.*, ¶ 45.

In January 2020, VLG's office telecommunications software was upgraded to a new SIPCOM telephone system, which, in addition to customary business communication services, was expressly marketed for its "call recording" functionality. *Id.*, ¶ 46. On January 9, 2020, Mr.

Alholm received a telephone call from VLG employee "Mr. G" in which Mr. G cautioned Mr. Alholm that his calls were being recorded through the new SIPCOM system. *Id.*, ¶ 48. A VLG IT employee/consultant also told Mr. Alholm that all phone calls at one specific VLG office had been recorded prior to January 2020, though at the time of the conversation, Mr. Alholm believed the recording was an innocent mistake that had been remedied. *Id.*, ¶ 50.

Upon learning in January 2020 about the ongoing call recording in Nashville and other Chicago-area VLG offices, Mr. Alholm consulted with the Illinois Attorney Registration Disciplinary Committee and Tennessee Board of Professional Responsibility. *Id.*, ¶ 49. As a result of the advice he received from these disciplinary officials, Mr. Alholm resigned from VLG on January 24, 2020. *Id.*

### III. VLG Sues Mr. Alholm Regarding His Resignation and Continued Representation of Certain Clients

On February 14, 2020, VLG sued Mr. Alholm in Cook County Circuit Court alleging breach of fiduciary duty, tortious interference, and defamation. That case remains pending today after Mr. Alholm's multiple successful motions to dismiss. *See The Vrdolyak Law Group, LLC v. Daniel Alholm*, No. 2020CH01852 (Cook County Circuit Court, Chancery Division). Mr. Alholm denies all allegations of wrongdoing related to his departure from VLG.

### IV. Alholm and His Counsel Investigate Claims Against VLG While Engaging in Negotiations, Before Eventually Filing Litigation

Alholm and his counsel began investigating Alholm's and the Class's potential claims against VLG in early 2020. Ex. 1 (Declaration of John Spragens ("Spragens Decl.")), ¶ 2. In parallel, Alholm through counsel began a protracted period of negotiations with VLG's counsel (occasionally including VLG principals) about claims Alholm was considering bringing against VLG, millions of dollars in future referral fees VLG was contractually obligated to pay Alholm, and evidence Alholm would use in defense of VLG's state-court defamation, fiduciary duty, and

tortious interference claims.  *Id.*

Meanwhile, Alholm and his counsel continued their investigation into Alholm's claims, uncovering information that further informed or corroborated Alholm's allegations against VLG and cast VLG's representations in negotiations in extreme doubt.  *Id.*, ¶ 3.  Before filing the Complaint, Alholm and/or his counsel spoke with more than a dozen current and former VLG employees/contractors.  *Id.*, ¶ 4.  They have continued to gather evidence, including interviewing additional former employees, since the filing of the Complaint.  *Id.*  Despite not publicizing the Complaint, Alholm and his counsel were contacted by multiple former employees with additional information after the Complaint was filed.  *Id.*, ¶ 5.

To date, Alholm and his counsel's investigation has uncovered significant evidence corroborating Alholm's allegations.  *Id.*, ¶ 6.  Alholm expects to produce or seek, as appropriate, this evidence imminently in discovery.  *Id.*  Among the evidence unearthed to date:

- Dozens of recordings of telephone calls provided to Plaintiff's counsel by former VLG employees, illegally recorded by VLG using its telephone system, including inbound calls from clients, outbound calls from employees, and internal calls between employees;

- Expected testimony from an eyewitness present at a meeting in which Edward J. ("Eddie") Vrdolyak discussed his intention to use the VLG phone system to record phone calls;

- Expected testimony from at least four eyewitnesses, including current VLG employees, who personally saw and accessed call recordings;

- Written communications from a former IT vendor calling into questions VLG's assertions about call recording, stating that VLG pressured him to sign something but he declined to do so, and casting into doubt the authenticity of the IT vendor letter VLG provided Plaintiff and filed in support of its motion;

- Multiple witnesses who are expected to testify that VLG principals were specifically reprimanded by Cook County Circuit Court Supervising Judge Kathy M. Flanagan for charging excessive, unfair, and unethical fees; and

- Current and former VLG employees who are expected to testify that VLG

maintained two sets of cost reports, one that it submitted to clients in which it paid itself certain fees from those clients' settlements, and one that it submitted to courts, in which VLG principals directed that those fees be removed to prevent judicial scrutiny. *Id.*

On November 30, 2022, Alholm disclosed the existence of the VLG call recordings and a list of 49 potential witnesses to VLG in his Initial Disclosures. *Id.*, ¶ 7. To date, VLG has not sought further information from Alholm or served discovery on him. *Id.*

## ARGUMENT

### I. Sanctions Against Plaintiff or his Counsel Are Unwarranted and Inappropriate

Rule 11 allows a court to impose sanctions if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Diamond v. Nicholls*, 483 F. Supp. 3d 577, 596–98 (N.D. Ill. 2020) (Rowland, J.) (quoting *Cuna Mut. Ins. Soc'y v. Office and Prof'l Employee Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). "Rule 11 requires only 'that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention.'" *LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-CV-6133, 2021 WL 4963610, at *14 (N.D. Ill. Oct. 26, 2021) (Rowland, J.), *appeal dismissed*, No. 21-3202, 2022 WL 1656604 (7th Cir. Apr. 27, 2022) (citations omitted).

Sanctions "are to be imposed sparingly." *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003). A party seeking sanctions must satisfy the "high burden of showing that Rule 11 sanctions are warranted." *Lundeen v. Minemyer,* 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010) (citing *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co., Inc.,* 847 F.2d 440, 444 (7th Cir. 1988)).

**A. VLG's motion, based on factual allegations that have not been tested in discovery, is premature.**

As the Advisory Committee on Rules has recognized, Rule 11 sanctions motions directed at pleadings cannot be evaluated until the pleading party has the opportunity to obtain discovery. Fed. R. Civ. P. 11 Advisory Committee's Notes (observing that while the timing of sanctions is left to the discretion of the trial judge, "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of litigation"). The Seventh Circuit has likewise held that "the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof." *Kaplan v. Zenner,* 956 F.2d 149, 152 (7th Cir. 1992); *see also In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 858 (N.D. Ill. 2015) (quoting 5A Wright & Miller, Federal Practice & Procedure Civ. § 1337.1 ("If the challenged conduct is the institution of the action itself * * *, the question whether there has been a Rule 11 violation generally is not decided until after the litigation is completed, in order to avoid delaying the disposition of the merits of the case.") (ellipsis in original)).

For that reason, trial courts routinely decline to adjudicate sanctions motions based on the factual sufficiency of pleadings until summary judgment or trial. *See, e.g.*, *In re Dairy Farmers*, 80 F. Supp. 3d at 858-59 (considering, and denying on the merits, sanctions motion directed at sufficiency of pleadings filed two-and-a-half years after complaint was filed and 37 days after summary judgment was granted to movant); *Birch v. Kim*, 977 F. Supp. 926, 938 (S.D. Ind. 1997) (declining to adjudicate sanctions motion after denying movant's summary judgment motion because "Plaintiff has advanced factual allegations that may only be finally evaluated at trial").

Here, VLG's motion challenges the factual sufficiency of Plaintiff's Complaint based only on VLG's repeated assertions to Plaintiff before litigation was filed—and now, to the Court—that

"there is not and never was any evidentiary support for the allegations concerning the alleged recording of conversations." Mot. at 22. Even if these statements were not demonstrably false based upon evidence in Plaintiff's possession, it is both premature and inappropriate to measure the factual sufficiency of Plaintiff's Complaint before a single document has been disclosed in discovery. Plaintiff's allegations should be tested against evidence, not the self-serving, unsworn—and untrue—representations of VLG and its counsel. VLG's motion should be denied for that reason alone.

> **B. Plaintiff Alholm conducted an extensive investigation before filing his claims and uncovered evidence that conclusively disproves the representations in VLG's motion.**

When "assess[ing] the reasonableness of a party's inquiry into the factual basis of its claims, the test is whether 'competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint.'" *In re Dairy Farmers*, 80 F. Supp. 3d at 860 (citation omitted). Other factors courts consider include: "whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts." *Id.* (quoting *Brown v. Fed'n of State Med. Bds.,* 830 F.2d 1429, 1435 (7th Cir. 1987)).

Here, Plaintiff Alholm and his counsel conducted an extensive investigation over the course of two years, while simultaneously attempting to avoid litigation through negotiations with VLG, before filing the Complaint in April 2022. Ex. 1 (Spragens Decl.), ¶ 2. The investigation included calls or meetings with over a dozen current and former VLG employees or contractors

and was remarkably thorough—particularly in light of the fact that important electronic evidence was held exclusively by VLG, whose principals were actively warning employees not to communicate with Alholm or his counsel. *Id.*, ¶ 4. Numerous witnesses corroborated Alhom's allegations, provided information consistent with his allegations, or contradicted representations made by VLG. *Id.*, ¶ 3. (And, in at least one instance, VLG contradicted its own representations.) Eventually, Alholm and his counsel discovered copies of call recordings made by VLG's phone system and multiple former VLG employees with direct, personal knowledge of VLG's call recording. *Id.*, ¶ 6. Plaintiff's allegations are not only well grounded in fact; they will be amply supported by evidence and testimony.

### C. Plaintiff brought this lawsuit for the proper purpose of remedying VLG's tortious conduct that injured him and the proposed Class.

VLG's contention that Alholm brought "baseless" claims "solely to embarrass VLG, damage its reputation in the community, and undertake a fishing expedition" for embarrassing materials fails for two reasons.

*First*, it is entirely premised upon the notion that Alholm's claims are false and fallacious—when, in fact, Alholm is prepared to support them with call recordings, eyewitness testimony, and documentation. *See supra* Sec. I.B.

*Second*, VLG cannot show that Alholm has subjectively acted with an improper purpose in bringing these claims because tarnishing a defendant's reputation by bringing nonfrivolous claims is not a basis for sanctions under Rule 11. Sanctions can be imposed against a party for bringing nonfrivolous claims if the party demonstrates "subjective bad faith or malice." *Diamond*, 483 F. Supp. 3d at 597 (citing *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1436 (7th Cir. 1987)). Nonetheless, "[w]hen a [paper] is well grounded in fact and warranted by existing law, 'only under unusual circumstances ... should the filing of [the paper] constitute sanctionable

conduct.' " *F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1300 (5th Cir. 1994) (quoting *Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 538 (5th Cir. 1990)). "It is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir.1995).

Speaking to the press about a lawsuit, even with the subjective hope that the lawsuit will embarrass or upset a defendant, is not grounds for a Rule 11 sanction, "so long as there is evidence that a plaintiff's central purpose in filing a complaint was to vindicate rights through the judicial process." *In re Kunstler,* 914 F.2d 505, 520 (4th Cir. 1990); *see also Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 80 (2d Cir. 2000) ("Similarly, the court's concern that [plaintiff] had in fact tarnished [defendant's] reputation by speaking with a news reporter was not a proper basis for sanctions" under Rule 11). Nor, this Court has held, is filing a lawsuit with the hope that it will precipitate the settlement of another lawsuit. *Diamond*, 483 F. Supp. 3d at 598.

VLG presents no evidence that Alholm or his counsel spoke to the media or took any actions to publicize Alholm's claims against VLG in an effort to embarrass the firm—and indeed, neither Alholm nor his counsel did. Ex. 1 (Spragens Decl.), ¶ 5. VLG merely alleges that Alholm filed baseless claims after an inadequate investigation and sent a negotiation letter VLG viewed as extortionate. Mot. at 29. Both contentions are false for the reasons respectively described *supra* in Section I.B. and *infra* in Section III. Indeed, discovery will show that Alholm filed this litigation only to vindicate his rights and those of other VLG employees whose communications were surreptitiously recorded without their consent. Absent any objective or subjective evidence of an improper purpose in filing—and given the nonfrivolous nature of Alholm's claims—VLG's motion fails on this basis as well.

### D. VLG failed to comply with Rule 11's procedural requirements.

Finally, VLG's request for Rule 11 sanctions should be denied for the independent reason that it failed to comply with the "procedural hurdles that a moving party must clear before a court may consider a Rule 11 motion." *See Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 837–38 (N.D. Ill. 2015) (citing Fed. R. Civ. Pro. 11(c) and *Divane v. Krull Elec. Co.,* 200 F.3d 1020, 1025 (7th Cir. 1999) ("When sanctions are requested by a party's motion, Rule 11(c) ... requires that two procedures be followed.").

### i. VLG failed to comply, substantially or otherwise, with Rule 11's safe harbor requirement.

The plain text of Rule 11 states that before filing a Rule 11 motion, "the moving party must serve the proposed motion on the other party and may file it only after 21 days have passed." *Knapp v. Evgeros, Inc.*, No. 15 C 754, 2017 WL 3668165, at *2 (N.D. Ill. Aug. 24, 2017). The Seventh Circuit is an outlier in holding, contrary to the text of the Rule, that "substantial compliance" with Rule 11(c)(2), including "a letter informing the opposing party of the intent to seek sanctions and the basis for the imposition of sanctions ... is sufficient for Rule 11 purposes." *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011); *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 808 (7th Cir. 2003).

It is an "unpopular" theory, "even among judges of this Circuit," *Novoselsky v. Zvunca*, 324 F.R.D. 197, 203 (E.D. Wis. 2017), grounded in a precedent that "is on life support." *Knapp*, 2017 WL 3668165, at *2 (citing a near-overruling in *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883-89 (7th Cir. 2017)). Given the Seventh Circuit's "clearly expressed reluctance to stray any further from the formal requirements of Rule 11," the precedent requiring substantial compliance should be construed "as narrowly as possible." *Traffix USA, Inc. v. Bay*, No. 21 CV 02093, 2021 WL 5179908, at *2 (N.D. Ill. Nov. 8, 2021).

13

On May 25, 2022, counsel for VLG sent Plaintiff's counsel a Rule 11 letter accompanied by an 11-page draft motion for sanctions. Ex. 2 (Sweeney May 25, 2022 Rule 11 letter and draft Motion).[1] On October 28, 2022—five months later, and soon after the case was reassigned to this Court—VLG filed a ***34-page*** motion for sanctions including the new argument that Alholm and his counsel engaged in "extortion" and should be sanctioned for this behavior. (Doc. No. 30.) Because the safe-harbor letter and draft brief were not "'materially identical' to the later-filed motion for sanctions," they fail to satisfy Rule 11(c)(2), even under the narrowly construed "substantial compliance" theory. *Knapp*, 2017 WL 3668165, at *2. The Rule 11 motion should be denied on that independent basis.

### ii. VLG failed to comply with Rule 11's "made separately" requirement

Rule 11 also requires that a "motion for sanctions ... be made separately from any other motion." Circuits are split over whether a party is permitted to bring a Rule 11 sanctions request in the same motion as a request for sanctions under § 1927 or the Court's inherent authority, and district courts in the Seventh Circuit have ruled both ways. *See Intellect Wireless*, 87 F. Supp. 3d at 38 n.10 (documenting circuit split). Because the plain text of the rule requires a Rule 11 motion to be "made separately from any other motion," the Court should find that VLG's motion fails to comply with Rule 11 and decline to consider it for that reason as well.

## II. Sanctions Against Counsel Under § 1927 or the Court's Inherent Authority Are Likewise Unwarranted

28 U.S.C. § 1927 allows the Court to sanction counsel—not parties—for "misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket." *Bender v. Freed*, 436 F.3d 747, 751 (7th

---

[1] VLG omits mention of the letter and draft brief it sent to Plaintiff's counsel in May 2022, instead citing an email its counsel sent in April 2022. (Mot., Ex. H.)

Cir. 2006); *see also Flip Side Prods., Inc. v. Jam Prods., Ltd.*, 843 F.2d 1024, 1035 n.12 (7th Cir. 1988). "To be liable under section 1927, counsel must have engaged in 'serious and studied disregard for the orderly process of justice.'" *Bender*, 436 F.3d at 751 (multiple citations omitted).

The Court also has the inherent authority "to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T & H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "In order to impose sanctions, a federal court must find by a preponderance of the evidence that 'the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith.'" *Brooks v. SAC Wireless, LLC*, No. 18 C 03472, 2019 WL 3996594, at *1 (N.D. Ill. Aug. 23, 2019) (quoting *Ramirez*, 845 F.3d at 776-79). A court should not use its inherent power when Rule 11 is adequate to serve its purpose. *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015).

VLG's attempt to obtain sanctions under § 1927 or the Court's inherent authority fails for the same reasons VLG's Rule 11 motion fails: it has made no showing that Plaintiff failed to investigate his claims, brought his case in bad faith, or (in the case of Plaintiff's counsel) unreasonably and vexatiously abused the judicial process. *See Bender*, 436 F.3d at 751. VLG's motion should be denied on these bases as well.

**III.  VLG's Baseless Claims of "Extortion" Are Unsupported by Law or Fact and Do Not Merit Sanctions**

VLG repeatedly—and baselessly—accuses Alholm and his counsel of "extorting" it by sending a negotiation letter accusing VLG of fraud and racketeering violations subjecting it to civil RICO liability. (Mot., Ex. E [Plaintiff's Negotiation Letter] at 4-7.) VLG's motion does not faithfully restate the possible predicate offenses for a civil RICO claim articulated by Alholm, which included:

- An excessive medical treatment kickback scheme in which clients are steered to preferred "lien doctor" physicians (one of whom was criminally convicted of violating the False Claims Act for similar reasons) who perform medically unnecessary procedures based on liability insurance policy limits—which VLG discloses to the physicians—in order to maximize attorneys' fees, in return for which the doctors donate to VLG charitable causes;

- A litigation lending scheme in which clients are steered to a litigation lender who is close friends with VLG principals and will readily agree to reduce inflated loan balances, enabling VLG to charge its clients an unethical second contingency fee for "loan reductions" based on inflated loan balances and preferential relationships;

- False affidavits of service in which a former Chicago police sergeant with close ties to the Vrdolyak family provided a sham affidavit to prevent VLG from missing a service deadline; and

- Small Business Association (SBA) Cares Act Paycheck Protection Act (PPP) loan fraud, in which VLG accepted more than $1 million in forgivable government loans based upon the representation that it had retained its 102 employees during the early stages of the COVID-19 pandemic, when in fact it laid many workers off.

VLG also groups in the "extortion" bucket negotiation letter allegations regarding VLG's BP Gulf Oil Spill MDL fraud, offshore gambling operations, fraudulent certification of compliance with continuing legal education requirements to defraud the Illinois Supreme Court, fake online reviews of the firm, and statements made by partners that were racist and antisemitic. VLG characterizes these allegations as "extortion as a matter of law." (Mot. at 34.)

VLG's extortion allegations fail for at least four reasons.

*First*, VLG neglects to mention that Mr. Alholm's allegations regarding VLG principals' BP Oil Spill settlement fraud, involvement in an illegal offshore gambling operation, fraudulent certification of compliance with continuing legal education requirements, fake online reviews of the firm, and racist and antisemitic statements were all made ***in response to defamation claims brought by VLG against Alholm***. Indeed, Plaintiff's counsel stated in the relevant portion of the negotiation letter that Alholm would "defend himself in the Cook County litigation, where VLG has put its 'ethical and legal conduct' and 'professional reputation' as one of 'Illinois's premier

personal injury law firms' at issue." (Mot., Ex. E, at 11.) The letter stated that contrary to VLG's representations about its conduct, character, and reputation in the lawsuit it filed against Alholm, "[t]he evidence will show that VLG is unethical, engages in illegal conduct, and is regarded by current and former clients, current and former employees, and, increasingly, courts as a dishonest, unethical legal business that takes advantage of clients and defrauds defendants and courts." *Id.*

It is axiomatic that a plaintiff "may put its character at issue by filing a claim for defamation, 'where injury to reputation must be proven.'" *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740, at *8 (N.D. Ill. Oct. 15, 2004) (quoting *Johnson v. Pistelli*, No. 95 C 6424, 1996 WL 587554, at *3, n. 5 (N.D. Ill. Oct. 8, 1996). When a plaintiff "puts its character at issue, evidence of reputation or specific instances of conduct may be admitted to prove character." *Id.* (citing Fed. R. Evid. 405(a) and (b)). VLG squarely invited Alholm to prove its poor character and reputation for dishonesty when it filed a lawsuit alleging that Alholm injured its sterling reputation; its belated effort to recharacterize negotiations over those allegations as "extortion" is hollow and misleading.

*Second*, VLG's excited references to "extortion as a matter of law" neglect to mention that Illinois does not recognize a crime of extortion. *Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 788 (N.D. Ill. 2015). "Instead, conduct that would be described as 'extortion' under the laws of most other jurisdictions is prohibited in Illinois under the heading of 'intimidation.'" *Id.* (quoting *United States v. Unthank*, 109 F.3d 1205, 1210 (7th Cir. 1997). It is well settled under Illinois' intimidation law that taking a "hard bargaining position" in pre-suit negotiations "certainly does not rise to the level of intimidation, extortion, or blackmail," provided the threat is not made "in bad faith or without an honest belief that a cause of action against [the other party] exists." *Becker v. Zellner*, 684 N.E.2d 1378, 1389 (Ill. App. 2d 1997) (citations omitted). For that matter, "threats

17

to sue or file legal papers, even if made in bad faith, do not constitute criminal extortion." *In re Trans Union Corp. Priv. Litig.*, No. 00 C 4729, 2009 WL 4799954, at *38–42 (N.D. Ill. Dec. 9, 2009) (Order adopting Report and Recommendation) (citing *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002) (collecting cases)), *modified and remanded on other grounds*, 629 F.3d 741 (7th Cir. 2011). VLG has not demonstrated, and cannot demonstrate, that Alholm's threatened civil RICO claims and his defenses to VLG's defamation claims were anything other good-faith bargaining over VLG's and Alholm's potential causes of action.

*Third*, federal courts recognize that pre-litigation threats of civil litigation involving allegations of criminal misconduct do *not* constitute threats of criminal prosecution. *See Revson*, 221 F.3d at 81 ("Although Burstein's draft letter mentioned that use of the mails to perpetrate billing frauds had led to the criminal conviction of other attorneys, every viable RICO claim, whether civil or criminal, by definition involves some allegation of criminal conduct, *see* 18 U.S.C. §§ 1961-1964. If the district court's view were correct, no attorney could ever threaten to bring a civil RICO suit without violating the ethical rules."); *Harmoni Int'l Spice, Inc. v. Bai*, No. CV1600614BROASX, 2016 WL 6542731, at *15 (C.D. Cal. May 24, 2016) (noting that allegations of criminal misconduct had "a direct relationship to the alleged anticompetitive conduct" that would be the basis of the threatened civil suit).

In this district, even a Plaintiff who *actually files*, but fails to prove, RICO violations based on alleged violations of Illinois law that "are not RICO predicate acts" does not warrant sanctions, much less accusations of extortion. *See Michalowski*, 82 F. Supp. 3d at 797 (declining to sanction counsel who failed to allege RICO claims adequately) (citing *LaSalle Nat'l Bank of Chi. v. Cnty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir.1993) ("Because Rule 11 'is not intended to chill an

18

attorney's enthusiasm or creativity in pursuing factual or legal theories,' an attorney need not advance a winning argument to avoid Rule 11 sanctions." (citation omitted))).

VLG musters only one line of California state-court cases (*Flatley v. Mauro*, 39 Cal. 4th 299 (2006) and its progeny) that, VLG claims, stands for the proposition that threatening to file a federal False Claims Act constitutes "extortion" as a matter of law. (Mot. at 31-33.) Even then, VLG neglects to mention that "[t]he court in *Flatley* limited its holding to the specific and extreme circumstances of the case, cautioning that 'our opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion.'" *Baker v. FirstCom Music*, No. LACV168931 VAPJPRX, 2017 WL 9510144, at \*6 (C.D. Cal. July 27, 2017) (quoting *Flatley*, 39 Cal. 4th at 333 n.16). Central to the Flatley line of cases is the party's threat "to report the individual's allegedly wrongful conduct to prosecuting authorities." *Harmoni Int'l Spice*, 2016 WL 6542731, at \*15 (citation omitted). Alholm's pre-suit negotiations *never* involved threats to report VLG's conduct to any law enforcement authorities, merely to file civil claims based on VLG's conduct that violated the law.

Nor does Alholm's offer—in the context of a detailed, 17-page demand letter—to settle confidentially and release publicity rights, along with "any and all claims he holds against VLG and its principals" and "any present or future entitlement to attorneys' fees or contractually required payments from VLG," among other things, constitute an inappropriate or extortionate demand. *See In re Trans Union Corp. Priv. Litig.*, No. 00 C 4729, 2009 WL 4799954, at \*38–42 (N.D. Ill. Dec. 9, 2009) (Order adopting Report and Recommendation) (citing *In re Finkelstein,* 901 F.2d 1560 (11th Cir.1990) (reversing suspension of civil rights lawyer for writing

a letter threatening his opponent in a race discrimination case with a product boycott and embarrassing publicity campaign if a settlement were not reached)), *modified and remanded on other grounds*, 629 F.3d 741 (7th Cir. 2011); *Revson*, 221 F.3d at 80 (warning a party about the prospect of adverse publicity if claims come to public attention is not sanctionable).[2]

*Finally*, VLG did not include this argument in the Rule 11 letter it sent Plaintiff's counsel in May 2022. Ex. 2 (Sweeney May 25, 2022 Rule 11 letter and draft Motion). It therefore waived this "extortion" argument for purposes of the sanctions motion by failing to provide Alholm notice of this argument. *Novoselsky*, 324 F.R.D. at 204.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that VLG's motion for sanctions be denied if not withdrawn, Plaintiff be awarded his costs of defending against it, and at the appropriate time the Court consider whether the representations in the motion itself warrant sanctions under Rule 11(b), § 1927, and/or the Court's inherent authority.


Dated: December 16, 2022          Respectfully submitted,

                                  John Spragens (TN Bar No. 31445) (N.D. Ill. General Bar)
                                  SPRAGENS LAW PLC
                                  311 22nd Ave. N.
                                  Nashville, TN 37203
                                  T: (615) 983-8900
                                  F: (615) 682-8533
                                  john@spragenslaw.com

---

[2] In addition to not threatening criminal penalties and following the law on discussing adverse publicity, Plaintiff's counsel was so concerned about following ethical rules that he offered only to "provide a representation from counsel that the undersigned firm has no intention of representing other clients against VLG, to the maximum extent allowable under applicable ethics rules"—an important limitation on representations that can be made by attorneys handling individual settlements of potential class action litigation.

Mark Hammervold, IL #6320744 (N.D. Ill. Trial Bar)
Hammervold Law, LLC
155 S. Lawndale Ave.
Elmhurst, IL 60126
(405) 509-0372
mark@hammervoldlaw.com

*Attorneys for the Plaintiff and the Proposed Class*