IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daniel Alholm, individually and on behalf of those similarly situated, | |
| Plaintiff, | Case No. 22-cv-01820 |
| v. | Judge Mary M. Rowland |
| The Vrdolyak Law Group LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Alholm filed this putative class action against Defendant, Vrdolyak Law Group LLC, (VLG) bringing claims under the Federal Wiretap Act, 18 U.S.C. § 2511 and related state laws, as well as claims of fraud and misappropriation of likeness under Illinois and Tennessee state law. Defendant moves to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons stated herein, Defendant's Motion to Dismiss [11] is granted in part and denied in part.

**I. Background**

The following factual allegations taken from the operative complaint (Dkt. 1) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). In 2017, Daniel Alholm (Alholm), a Chicago plaintiffs' attorney, was considering potential employment opportunities with at least three firms when VLG approached him. Dkt. 1 at ¶¶ 10–11. Alholm expressed concerns to VLG's hiring partners and Steve Armbruster, another attorney at the

1

firm, about VLG's reputation, and specifically the disbarment and imprisonment of firm founder Edward Vrdolyak Sr. *Id.* at ¶ 14. The hiring partners and Armbruster assured Alholm that VLG was not involved in any improper or illegal activity. *Id.* at ¶ 13. They also assured Alholm that VLG had the resources, personnel, and finances to successfully litigate Alholm's mass tort cases. *Id.* Based on these reassurances, Alholm began working at the firm in May 2017. *Id.* at ¶ 15. In August 2017, VLG asked Alholm to relocate to Nashville to manage its new Tennessee office. *Id.* at ¶ 19.

After relocating, Alholm learned that VLG lacked the resources to advertise for business, support Alholm's cases, pay credit card bills or, at times, even fund ongoing operations. *Id.* at ¶¶ 21–22. Alholm was forced to spend nearly $20,000 of his money to fund filing fees, office costs and other work-related expenses after VLG's credit cards were unavailable or declined. *Id.* at ¶ 23.

Subsequently, Alholm also became aware of unethical and/or illegal activities including that VLG: (a) collected contingency fees based upon Med-Pay coverage while also charging clients a "Med-Pay processing charge"; (b) steered clients to a preferred litigation lender and *also* collected contingency fees for securing litigation loan repayment amounts; (c) charged clients fees unrelated to the work it performed; (d) directed clients to specific physicians who provided unnecessary medical care in exchange for which the physicians donated to VLG-sponsored charity events; (e) tolerated a culture in which VLG principals made antisemitic and racist comments, including in reference to VLG employees; and, (f) allowed an agent (subsequently indicted and then pardoned) of an illegal offshore gambling ring to recruit firm

2

employees to wager on sports through his illegal offshore gambling operation. *Id*. at ¶¶ 24–34.

**Defendant's Alleged Wiretapping**

Alholm alleges, upon information and belief, that VLG's Chicago and Nashville offices are equipped with a network of audio and video surveillance cameras, which Eddie Vrdolyak (Vrdolyak), monitored from his office. *Id*. at ¶¶ 36, 37. In February 2019, Vrdolyak instructed a VLG employee to "pull the tape" of a February 7, 2019, conference call so Vrdolyak could determine if VLG employees were making disparaging remarks about him. Dkt. 1 at ¶ 40. Plaintiff alleges, on information and belief, that these employees were unaware that their meeting was audio-visually recorded. *Id*. at ¶ 41. Vrdolyak told Alholm and other VLG employees that he had a recording from a conversation in the Nashville conference room during which employees made derogatory comments about Vrdolyak. *Id*. at ¶ 42. Later that day Peter Vrdolyak, another partner at VLG, also told Alholm that he had heard the recording. *Id*. at ¶ 43. Later, Eddie Vrdolyak said that he had not actually heard such a recording but learned about the remarks from a VLG employee who heard them. *Id*. at ¶ 44. He said he lied about the recording in an effort to protect the reporting employee from retaliation. *Id*. at ¶ 45.

In March 2019, a VLG IT employee/consultant told Plaintiff that all phone calls at the downtown Chicago VLG office were recorded. *Id*. at ¶ 50.[1] At the time, Plaintiff believed the recording was an innocent mistake. *Id*. In January 2020, VLG's office

---

[1] Although the complaint does not provide a date of this conversation, in his response brief Plaintiff states it was March 2019. (Dkt. 16 at 10).

3

telecommunications software was upgraded to a new SIPCOM telephone system, which, in addition to customary business communication services, was expressly marketed for its "call recording" functionality. *Id*. at ¶ 46. On January 9, 2020, Alholm received a call from VLG employee, "Mr. G." *Id*. at ¶ 48. Mr. G cautioned Alholm that his calls were being recorded through the new SIPCOM system. *Id*. Upon learning about VLG's ongoing call recording, Plaintiff consulted with the Illinois Attorney Registration Disciplinary Committee and Tennessee Board of Professional Responsibility, and thereafter resigned from the firm on January 24, 2020. *Id*. at ¶ 49.

**State Court Case and this Lawsuit**

On February 14, 2020, VLG sued Alholm in Cook County Circuit Court alleging breach of fiduciary duty, tortious interference, and defamation. That case is pending. *See The Vrdolyak Law Group, LLC v. Daniel Alholm*, No. 2020CH01852. On April 7, 2022, Plaintiff filed this lawsuit seeking to represent a class of "All persons in the United States whose wire, oral or electronic communications were intercepted by Defendant VLG [Vrdolyak Law Group] from January 9, 2018 through the present." *Id*. at ¶ 59.

## II.  Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank*

4

*Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Claims of fraud are subject to a heightened pleading standard. *See United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021). Federal Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

5

"[T]he statute of limitations is an affirmative defense and need not be addressed in the complaint." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (internal citation omitted). That said, "the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). For example, a court may grant a dismissal motion if "the relevant dates are set forth unambiguously in the complaint." *Id.* When determining whether to grant such a motion, the question is not whether the plaintiff "allege[d] facts that tend to defeat affirmative defenses"; instead, the "right question is whether it is possible to imagine proof of the critical facts consistent with the allegations actually in the complaint." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 628 (7th Cir. 2003) (internal quotation marks omitted).

### III. Analysis

VLG moves to dismiss Plaintiff's state and federal wiretapping claims as untimely. Defendant also argues that should Plaintiff's federal wiretapping claim be dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. The Court begins with the wiretapping claims (Counts II, III, and IV), and then proceeds to the fraud claim (Count I).[2]

#### A. Wiretapping Claims

---

[2] Defendant does not raise any arguments concerning Plaintiff's state law misappropriation of likeness claims (Counts V and VI) other than arguing that the Court should not exercise supplemental jurisdiction over them.

Defendant argues that all of Plaintiff's wiretapping claims are untimely. The parties agree that the Federal Wiretap Act claim, 18 U.S.C. § 2511, and the Tennessee wiretapping claim, T.C.A. § 39-13-601, each have a two-year statute of limitations. As for the claim brought under the Illinois Eavesdropping Act, 720 ILCS 5/14-6, the parties disagree about the applicable statute of limitations.

Under the Federal Wiretap Act, it is unlawful to "intentionally intercept[ ] [or] endeavor[ ] to intercept ... any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Act also prohibits the intentional disclosing or using the contents of an unlawfully intercepted electronic communication. *Id*. § 2511(1)(c), (d). The Federal Wiretap Act provides that "A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

The parties dispute when the limitations period began. Alholm argues that he first learned VLG was recording phone calls, including his own, on January 9, 2020. VLG does not dispute that if this is the operative date, Plaintiff's claim was tolled until the filing of the complaint by the parties' first tolling agreement. (Dkt. 11 at 7-8).[3] VLG contends, however, that Alholm's answer in the state court case shows he first knew of Defendant's alleged wiretapping in March 2019. In that answer, Plaintiff

---

[3] In his complaint, Plaintiff references the parties' tolling agreements. (Dkt. 1 ¶ 57). The First Tolling Agreement, dated January 8, 2022, is attached as Exhibit B to Defendant's motion to dismiss (Dkt. 11); the Second Tolling Agreement, dated March 4, 2022, is attached as Exhibit 1 to Plaintiff's Response (Dkt. 16-1). As discussed, Defendant concedes that if January 9, 2020 is that date Plaintiff discovered the recording of calls, this would mean Plaintiff's claim was tolled until filing of the federal complaint by the parties' first tolling agreement. Defendant's argument in its reply brief about a "drafting error" in the agreement (Dkt. 17 at 7) is unsupported and does not require resolution at this time.

7

"affirmatively avers that [Defendant's IT consultant] stated to him in words or substance in March of 2019 that [Defendant] was recording calls on the telephone system of the Chicago office." Dkt. 11 at 28.

The Court agrees with VLG that generally it can take judicial notice of a state court pleading. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). However, in order to take judicial notice of a fact, the fact must be "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012).

In his complaint in this Court, Alholm asserts that at the time of the March 2019 conversation, he believed the recording was an innocent mistake that had been remedied. Dkt. 1 at ¶ 50. He then alleges that "January 9, 2020 [is] the date upon which Mr. Alholm learned of the illegal recording at issue in this case." (Dkt. 1 at ¶ 55). At this stage, the Court cannot find that the March 2019 date is "not subject to reasonable dispute." Accepting the well-pleaded facts and drawing reasonable inferences in Plaintiff's favor leads to the conclusion that Plaintiff learned of the alleged illegal recording on January 9, 2020 and brought this action, pursuant to the tolling agreement, in a timely manner on April 7, 2022. Factual development will reveal when Plaintiff had a reasonable opportunity to discover the violation for purposes of the Wiretap Act. Defendant is free to raise the timeliness argument again at a later date. But "[a]s long as the Court can imagine a scenario in which the claim

8

is timely, it is improper to dismiss it on the pleadings." *Nasrabadi v. Kameli*, No. 18 C 8514, 2019 WL 2173791, at *4 (N.D. Ill. May 20, 2019) (cleaned up).

To argue that the Court should take judicial notice of the March 2019 date, Defendant relies on *Watkins v. United States*, 854 F.3d 947 (7th Cir. 2017). In that case, the court took judicial notice of a state court medical malpractice claim filed in August 2010 by plaintiff. That filing (an undisputed fact) established that plaintiff was aware defendants caused her injuries in August 2010. Here, by contrast, there is no undisputed filing in March 2019 demonstrating Plaintiff's knowledge. Instead, there is an averment in a state court pleading and an allegation in a federal pleading that clarifies Plaintiff's belief that the conversation referenced in his state court pleading referenced recordings that were innocent mistakes. This scenario does not allow the court taking judicial notice. Plaintiff's claims are not barred as a matter of law based on the pleadings. *Parungao,* 858 F.3d at 457. Therefore, dismissal of the federal and Tennessee wiretap claims on statute of limitations grounds is not warranted at this stage.

Finally, the Illinois Eavesdropping Act does not contain a specified statute of limitations. Defendant argues that the limitations period in Illinois' defamation law should apply. (Dkt. 11, n.2). Defendant does not cite authority, other than the defamation statute itself, to support this. *See Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."). In fact in *McDonald's Corp. v. Levine*, 439 N.E.2d 475 (2d Dist. 1982), the Illinois appellate court found a five-year

limitations period applied. Accordingly the Court finds Plaintiff's Illinois eavesdropping claim survives as well.

### B. Fraud Claim

In alleging fraud, Plaintiff claims (on behalf of himself individually) that Defendant made several misrepresentations of material fact. Under Illinois law, fraud requires: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Bd. of Educ. of City of Chi. v. A C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). Under the heightened pleading requirement, a plaintiff claiming fraud "must do more pre-complaint investigation," *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999)*,* and the complaint must provide "the who, what, when, where, and how" of the fraud. *See U.S. ex rel. Gross v. AIDS Research Alliance–Chi.,* 415 F.3d 601, 605 (7th Cir. 2005); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "Each instance of fraud must be alleged with precision and some measure of substantiation." *Serv. Corp. Int'l v. Stericycle, Inc.*, No. 20 C 838, 2021 WL 5232731, at *2 (N.D. Ill. Nov. 10, 2021) (cleaned up). In addition, as the Seventh Circuit has explained:

> To establish fraud under Illinois law, the [plaintiff] must prove a misrepresentation of fact. A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law.

*Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (cleaned up).

Here, Plaintiff alleges that Defendant (1) falsely represented to him that it had settled $9,000,000,000 in cases; (2) falsely represented to him that it would adequately staff, fund, and prosecute his clients' cases; and (3) falsely represented to him that it was no longer engaged in improper or illegal activity. Dkt. 1 at ¶ 71; Dkt. 16 at 14. The Court also notes initially that Plaintiff's response failed to cite any controlling case authority to support his position that these statements are actionable as fraud under Illinois law. *See Shipley*, 947 F.3d at 1063 ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").[4]

First, as to the statement that VLG "had recovered over $9 Billion for its clients" (Dkt. 1 ¶ 13), Alholm does not allege that at the time this statement was made, Defendant knew it to be false. This dooms the claim as to this statement. *See Lesaint Logistics, LLC v. Electra Bicycle Co., LLC*, 146 F. Supp. 3d 972, 980 (N.D. Ill. 2015) (plaintiff did not allege that, at the time the statement was made by defendant's representative, the representative knew it was false).

Second is the statement that the VLG would provide resources and funding "to successfully litigate the mass tort cases" (Dkt. 1 ¶ 13). The Court agrees with Defendant that this falls in the category of future intent. Statements about future intent or conduct are not actionable as fraud. *Illinois Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr of S. Metro-E.*, 378 Ill. App. 3d 713, 723 (2008); *see also Cont'l Bank*, 10 F.3d at 1299 (statement was an opinion and "not a representation of a pre-existent

---

[4] The sole case Plaintiff cites is *Grove Holding Corp. v. First Wisconsin Nat. Bank of Sheboygan*, 12 F. Supp. 2d 885 (E.D. Wis. 1998), which was decided on post-trial motions and applied Wisconsin law.

11

or present fact."). "Mere predictions are not actionable; 'assurances as to future events are generally not considered misrepresentations of fact.'" *Madonis v. Sterling Bay Cos.,* 2020 IL App (1st) 191657-U, ¶ 44. Thus this statement is not an actionable misrepresentation of fact.

Finally, Alholm alleges that in April 2017, VLG assured him that "[Defendant] and its employees were not involved in any improper or illegal activity, and that any such activity was long in the past." (Dkt. 1 ¶ 14). Plaintiff alleges that this was in response to his concern about the firm founder being disbarred and imprisoned. He does not allege that Vrdolyak was involved in illegal activity in 2017 when Plaintiff had this conversation, such that Defendant's representation was false. As VLG argues, the host of alleged illegal activity by VLG Alholm claims to later have observed is not tied to any specific false statement made during the relevant conversation before he was hired. And Alholm does not provide any dates for the alleged improper conduct (Dkt. 1 ¶¶ 24-35).

It is well-settled that heightened pleading for fraud is a response to the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *See Payton,* 184 F.3d at 627 (internal quotations omitted). The Court finds that Plaintiff's allegations do not meet the standard under Rule 9(b) or Illinois law.

### C. Misappropriation of Likeness Claims

The final two claims, Counts V and VI, are claims of misappropriation of likeness under Illinois and Tennessee law. VLG argues the Court should decline to exercise

supplemental jurisdiction if it dismisses the federal wiretapping claim. The Court has not done so. Counts V and VI survive.

## IV. Conclusion

For the stated reasons, Defendant's Motion to Dismiss [11] is granted in part and denied in part. Plaintiff's fraud claim is dismissed; the remaining claims survive the dismissal motion. Defendant shall answer the counts remaining by February 10, 2023.

E N T E R:

Dated: January 17, 2023

MARY M. ROWLAND
United States District Judge