**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ALHOLM, JEANNETTE ALICEA, LUCERO DEL REAL, DANIEL GALLAGHER, PENNY JACKSON, RODNEY SMITH, and ERICA VILLAGOMEZ, individually and on behalf of those similarly situated | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 1:22-cv-01820 |
| v. | ) ) ) | Hon. Georgia N. Alexakis |
| THE VRDOLYAK LAW GROUP, LLC, | ) ) | |
| *Defendant*. | ) | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Robert D. Sweeney
Erin I. Wenger
SWEENEY SCHARKEY LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

## TABLE OF CONTENTS

I.     BACKGROUND ..................................................................................................2

II.    LEGAL STANDARD ........................................................................................6

III.    ARGUMENT ......................................................................................................6

    A.  Plaintiffs' Claims Are Time Barred .............................................................7

        1.  Daniel Alholm..........................................................................................8

        2.  Lucero Del Real and Jeanette Alicea ..................................................11

        3.  Daniel Gallagher ...................................................................................12

        4.  Penny Jackson .......................................................................................13

        5.  Rodney Smith........................................................................................14

        6.  Erica Villagomez ..................................................................................15

    B.  Plaintiffs Cannot Establish any of the Elements Necessary to Bring a Wiretap Claim Under the Relevant Statutes ...........................................................................15

        1.  The Federal Wiretap Act and Tennessee Wiretap Act....................................15

            a.  Plaintiffs Cannot Establish What Device was Used to Make the Purported Recordings...............................................................17

            b.  Plaintiffs Cannot Establish That VLG Intentionally Made Any Recordings ...............................................................................18

    C.  Plaintiffs have No Admissible Testimony or Evidence to Support a Claim of Wiretapping..................................................................................................20

        1.  Five of the Plaintiffs in this Case Are Unaware of a Single Call of theirs that was Recorded, and Not One of the Seven Plaintiffs Can Identify when Recordings may have been Made ...................................................................20

Defendant Vrdolyak Law Group ("VLG" or the "Firm"), through its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits the following Motion for Summary Judgment ("Motion"), and in support thereof, states as follows:

## INTRODUCTION

Plaintiffs must finally bring forward their proof. Gossip, rumors and other hearsay are no longer sufficient. This is not the context in which we weigh the likelihood of whether VLG was engaged in far-blown recording theories, or whether Lucero Del Real mistakenly or intentionally utilized a third-party website to record her calls, or recorded them through some other means. At this stage, Plaintiffs must show that VLG used a device, surreptitiously designed to intercept phone calls, intentionally, and recorded employee and client phone calls. Plaintiffs must present some admissible evidence of the elements of their claims. They cannot. Summary judgment should be granted here because the statutes of limitation have run on Plaintiffs claims. They cannot support a single element under the relevant statutes, and any circumstantial evidence they attempt to rely upon is inadmissible. Summary Judgment should be granted as to Counts II, III, and IV, and the matter referred to state court to address the remaining state law claims.

## I.      BACKGROUND

Defendant has detailed the duplicitous nature of Plaintiff Daniel Alholm's ("Alholm") actions in filing his federal lawsuit, with no evidence whatsoever of wiretapping, in multiple motions it has filed with this Court, most notably Defendant's Motion for Sanctions. (Dkt. No. 30.) For purposes of this Motion we will not restate much of that here, although it explains why someone would file a case with such a dearth of evidence. Discovery has only highlighted the fact that Alholm, and now the additional Plaintiffs, have no proof, much less admissible proof, that

VLG was recording calls in any office in Illinois and Tennessee. Summary Judgment should be granted as to Counts II-IV.

Alholm, a lawyer, filed his baseless Complaint in this Court on April 7, 2022, more than three to four years after he claims he had information that VLG was recording calls. (In one place Alholm says he learned about recordings in 2018 and other places he refers to March 2019.(VLG Rule 56 Statement of Facts ("SOF") ¶9).) In his Complaint, Alholm alleges the following: Count I (common law fraud), claiming that VLG fraudulently induced him to enter its employ; Count II (federal wiretapping violations under 18 U.S.C. §§ 2511 et seq.), bringing individual and class claims that VLG illegally recorded telephone calls at its offices; Count III (Tennessee wiretapping violations under Tenn. Code. Ann. § 39-13-601 et seq.) individually and as a class; Count IV (violations of the Illinois Eavesdropping Act, 720 ILCS § 5/14-1 et seq.) individually and as a class; Count V (misappropriation of personal rights under Tennessee law, Tenn. Code. Ann. § 47-25-1101) individually; and Count VI (violation of Illinois' Rights of Publicity Act, 765 ILCS § 1075/1 et seq.) individually. (Dkt. No. 53.)

Critical to this Motion are facts surrounding the creation of VLG's phone system, its maintenance, and its ability to make recordings. Those facts, along with the origins of the 39 digital files produced by Plaintiff, Lucero Del Real, are determinative. The VLG phone system in place during the relevant time-period was created and maintained entirely by a third-party telephone vendor, Surge IT. (SOF ¶¶2-3.) The undisputed testimony establishes that VLG elected to utilize Surge IT after having problems with quality from the Firm's prior phone service provider. (SOF ¶1.) Surge IT was chosen based on a recommendation from Michael Conlee, another third-party contractor of VLG. (SOF ¶2.) Surge IT was never asked by VLG to provide a phone system that permitted call recording, VLG was never told call recording was enabled or trained on how to use

it, and VLG was never charged financially for such a significant function by Surge IT. (SOF ¶4.) Until Daniel Alholm made his allegations of call recording in January of 2020, the management of the Firm had never heard any allegations of call recording and did not even know whether its system was capable of such activity. (SOF ¶11.)

It is undisputed that the Surge IT representatives confirmed almost immediately in January of 2020 that the system was not recording any calls, much less all calls in every office. (SOF ¶20.) Michael Conlee and Dean Walker both confirmed that the recording feature was not enabled on the system and that before they would enable such a function, they would need written direction from management at VLG. (SOF ¶20.) There is no evidence of any such directions. Additionally, Conlee testified that in order to provide such a service on such a large scale, the system would have required larger servers, higher bandwidth and additional hardware. (SOF ¶21.) All servers that would hold recordings of any kind were maintained offsite by Surge IT and were not owned or maintained by VLG. (SOF ¶22.)

As this Court is aware, during the course of this litigation, while Alholm was facing a Motion for Sanctions for seeking to extort $3 million from the Firm, 39 digital files were produced by a former employee who claims she downloaded the calls while employed at VLG in January of 2020. (SOF ¶¶ 34-36, 42, 81.) Up to that point in time, VLG had asked Alholm for any recording or proof of recordings for three years. Recordings were only produced in the course of responding to VLG's Motion for Sanctions, and once produced, it became evident that all 39 recordings involved Del Real and appeared to originate from her extension at VLG. (Dkt. Nos. 30, 44; SOF ¶81.)] The alleged recordings have *never* been authenticated. (SOF ¶82-83.)

At her deposition, Plaintiff Del Real described the process by which she allegedly downloaded the 39 files. According to Del Real, she wanted to see if she could access her

voicemails on her desktop. (SOF ¶¶27-33.) Del Real allegedly "found" recordings on a portal where she created a user account approximately one week earlier. (SOF ¶33.) By Del Real's account, she cannot recall the name of the portal, but she testified that she searched the manufacturer of her desktop phone. (SOF ¶28.) It is undisputed that the phone on her desk was a Grandstream phone, that VLG does not have any agreement with Grandstream to administer any part of its phone system, and VLG did not create or maintain a portal with Grandstream. (SOF ¶¶29-30.) If Del Real created an account with Grandstream, it was without VLG's knowledge or consent. (SOF ¶32.) Del Real admits that she did not enlist anyone from the Firm to provide assistance. (SOF ¶32.) Her unrefuted testimony is that when she first accessed the portal, after creating an account and associating it with her phone line, she "played around" with the settings and pages in the portal, but never saw that any recordings were present. (SOF ¶34.) The next time she accessed this non-VLG portal, approximately one week later, she saw recordings of phone calls, and she was a participant on all of them. (SOF ¶33.) She alleges that she told Alicea to come see what she found and downloaded the files to her desktop, and later, to a thumb drive that day or within several days thereafter. (SOF ¶¶35-36.) Del Real stated that she took the thumb drive home and did not access it again for almost three years, until she sought to become part of this lawsuit. (SOF ¶44.) Del Real testified that she was saving the thumb drive at Alicea's suggestion until it "became a thing," and that she never advised VLG management of what she found nor her belief that recordings were being made. (SOF ¶35, 39.)

After years of extensive discovery and countless depositions between both the state and federal cases, it is clear that Plaintiffs' claims about VLG recording calls are baseless. Plaintiffs cannot establish facts sufficient to support their claims and, as such, summary judgment should be granted in favor of VLG.

## II.    LEGAL STANDARD

The Court should grant summary judgment where admissible evidence, considered as a whole, demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]" *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1027 (N.D. Ill. 2012) (citing Fed. R. Civ. P. 56(a)). This includes consideration of cited materials in the record, including pleadings, depositions, documents, stipulations, admissions, or other materials. Fed. R. Civ. P. 56(c).

"To successfully oppose a motion for summary judgment, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed." *Id.* at 1027; *id.* at 1037 (granting plaintiffs' motion for summary judgment as to liability). "The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. In other words, the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anheuser-Busch, Inc. v. Schnorf*, 738 F. Supp. 2d 793, 799 (N.D. Ill. 2010) (citations and internal quotation marks omitted). Here, there is simply no evidence to support Alholm's and the Plaintiffs' claims of purportedly recording phone calls.

## III.    ARGUMENT

For years, Plaintiffs have been able to drag VLG through this litigation with no substantive proof of any wiretapping by the Firm. Now at the summary judgment stage, they must come forward with actual proof that VLG was intentionally intercepting and recording phone calls. As this Court pointed out in the hearing on the Motion to Bar Plaintiffs' Experts, now is that time. (Dkt. No. 112.) It is not enough to say the recordings came from a phone system. Plaintiffs must

bring forth some evidence that VLG used a device, designed with a surreptitious purpose, to intercept and record phone calls. There is no evidence to this effect and summary judgment should be granted.

As this case is currently postured, there are seven plaintiffs bringing individual claims. All of them should have judgment entered against them for the following reasons: 1) Plaintiffs failed to bring their actions within the relevant statutes of limitation; 2) Plaintiffs have no evidence to prove the elements required under the wiretapping laws – namely use of a device, interference, or intent; 3) there is no admissible evidence to support a wiretapping claim; and 4) Daniel Alholm, Daniel Gallagher, Penny Jackson, and Rodney Smith have no evidence or knowledge—none—of whether they were in fact involved in a recorded call at VLG and thus have no proof any call of theirs was recorded.

### A. Plaintiffs' Claims Are Time Barred.

Count II of the Amended Complaint alleges "violations of the federal wiretap act, 18 U.S.C. §§ 2510, *et seq.*" (Compl. at 15) ("FWA"), Count III alleges violations of the Tennessee Wiretapping Act ("TWA") and Count IV alleges violations of the Illinois Wiretapping Act ("IWA"). The FWA contains a two-year statute of limitations. "A civil action under this section may not be commenced later than two years after the date upon which the **claimant first has a reasonable opportunity to discover the violation**." 18 U.S.C. § 2520(e) (emphasis added). The TWA mirrors the federal limitations period, providing for a two-year statute of limitations. Tenn. Code. Ann. § 39-13-603(d). Finally, the IWA provides for a one-year statute of limitations with regard to allegations involving publication and use of recorded calls. 735 ILCS § 5/13-201 ("Actions for . . . publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.").

Actual knowledge of a claim or cause of action is not necessary to trigger the statute of limitations. The crucial inquiry is whether the plaintiff had enough information to investigate whether he or she has a claim. *See, e.g., Russell v. Honeywell International, Inc.,* 2024 WL 1113905 *2-4 (S.D. Ill.  Mar. 14, 2024) (Granting summary judgment to defendant based on statute of limitations and plaintiff's knowledge of facts under the discovery rule); *Whirlpool Fin. Corp., v. GN Holdings,* 67 F. 3d 605, 609 (7th Cir. 1995); *Carlson v. Michael Best & Friedrich,* 2021 IL App (1st) 1919614. Plaintiff's knowledge of facts which triggers the statute of limitations can be determined as a matter of law when the facts are not disputed. *Butler v. Mayer Brown & Platt,* 301 Ill. App. 919, 922-23 (1st Dist. 1998) (determining that when plaintiff had sufficient knowledge of facts to trigger the statute of limitations was a question of law because the facts were not disputed).

### 1.  Daniel Alholm

Alholm stated in a filed pleading in VLG's parallel state case that he was first on notice of VLG's purported wiretapping of telephones in March of 2019. In his Answer to VLG's complaint in the state case, he "affirmatively avers that [VLG's IT consultant] stated to him in words or substance in March of 2019 that VLG was recording calls." (SOF ¶9.) This Court may take judicial notice of court filings, including those filed in other suits. *See Schacter v. City of Chicago*, 848 F. App'x 208, 208 (7th Cir. 2021); *Parungao v. Community Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017). Alholm's statements in his Answer to the state law claims, including that he was aware of the alleged illegal recordings in 2019, are admissions—they are clear, knowing, deliberate statements made while represented by counsel. *See Chmielewski v. Kahlfeldt,* 237 Ill. App. 3d 129, 133 (2d Dist. 1992). Additionally, at his deposition in this case, Alholm testified that he learned of the alleged recordings in 2018 from third party IT person, Michael Conlee. (SOF ¶9.) According to Alholm's own admissions, when he purportedly learned of the alleged recordings, he was immediately aware that any such recordings could be illegal because he advised Conlee that recording calls was illegal. (SOF ¶10.) Assuming that VLG was illegally recording telephone calls (which it was not), Alholm by his own admission was on notice of the purported recordings in

2018, but no later than March of 2019, and was thus obligated to assert his wiretapping claims no later than March of 2021. Alholm did not do that, and thus any claim by him is time-barred.

Alholm may attempt to avoid this death nell to his claims by suggesting that he told the IT consultant to stop recording calls because it was illegal in March of 2019 and that the statute did not begin to run until he was allegedly told again in January of 2020, that recording was taking place by another individual, Chinau Gipson. (SOF ¶13). Alholm testified that he "...came to believe that they had either started doing it again or had never ceased doing it after [he] had a conversation with Chinua Gipson on January 9, 2020." (SOF ¶15.) Any effort to avoid the limitations period fails because Mr. Gipson directly refuted Alholm's contention, testifying at his deposition that he never said anything of the sort to Alholm and that he had no knowledge of any call recording. (SOF ¶16.) This again establishes by Alholm's own words that he believed there was recording taking place back in March of 2019 or even 2018. (SOF ¶9.) Gipson also produced an email in which he told Alholm that no recording was occurring in January 2020. (SOF ¶76.) Thus, Gipson cannot be a basis to extend the limitations period. Moreover, even assuming Gipson said this to Alholm, it would not restart the clock for Alholm's claims. Alholm, a lawyer of more than 15 years at the time, learned within the limitations period that the alleged wrong was still occurring and therefore the obligation remained on Alholm to investigate and file by March of 2020 for the Illinois claim and March of 2021 for the FWA and Tennessee claims. The plain language of the federal statute says the statute is triggered when the plaintiff *first* has an opportunity to discover a violation. By that standard, Alholm's admissions negate an effort to prevent application of the statute of limitations.

The discovery rule does not save Alholm's claims either. The discovery rule does not require the plaintiff to know the full extent of his injury or to have complete information about the

10

circumstances surrounding the injury. Nor does it require knowledge that the wrongful conduct is legally actionable. Instead, the limitations period begins when the plaintiff has enough information to suspect wrongdoing and to investigate further. *Abramson v. Abramson,* 772 F. Supp. 395, 398 (1991). *Whirlpool,* 67 F.3d at 609 (Inquiry notice means the plaintiff has discovered sufficient facts to create reasonable suspicion and for the plaintiff to investigate further.)

For example, in *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981), the Illinois Supreme Court held that the statute of limitations starts to run when the injured person has sufficient information to inquire further into whether actionable conduct is involved. *See also Blankenship v. Pushpin Holdings*, LLC, 157 F. Supp. 3d 788,793 (2016) (Court addressed that inquiry under the "discovery rule" begins after a party knows or reasonably should know both that an injury occurred and that it was wrongfully caused.) Alholm did no investigation. (SOF ¶¶18-19, 23.) He did not ask anyone in management at the Firm whether calls were being recorded, and he also never inquired of the IT consultant whether he turned off any recording feature. (SOF ¶¶18, 23.) The consultant, Michael Conlee, denies ever saying the Firm was recording calls in the first place. (SOF ¶¶20, 75.) This conduct is not only an unreasonable investigation on the part of Alholm, it is no investigation at all, despite Alholm testifying in his depositions that he was aware of alleged recordings in 2018 or 2019. (SOF ¶9.) Moreover, Alholm was offered the opportunity to inspect VLG's servers—twice—during the limitations period but still failed to conduct any investigation even upon invitation. (SOF ¶23.) Alholm's likely assertion that the limitations period did not start to run until he was allegedly told in January 2020 by Gipson that the Firm was recording calls, lacks any basis in law and common sense. (SOF ¶13-16.) By that logic, every plaintiff who had notice of possible wrongful conduct and an injury could reset a limitations clock

by saying they spoke to someone else later who also said there was potential wrongful conduct and injury.

### 2. Lucero Del Real and Jeanette Alicea

Similar to Alholm, Plaintiffs Lucero Del Real and Jeanette Alicea cannot bring claims under Counts II, III, and IV because they are also time barred under all applicable statutes. Both Del Real and Alicea claim that they learned of VLG's alleged recording when Del Real found a recording of a telephone call on the Grandstream website where she had created an account a week earlier. (SOF ¶¶30-33.) VLG does not utilize the Grandstream website for any part of its phone system other than the hardware on office desks. (SOF ¶29.) Del Real could not recall if she downloaded that call and some others on that day or within a few days. (SOF ¶36.) In her deposition, Del Real stated that she was aware of the alleged recorded calls in 2019 or 2020. (SOF ¶¶27, 34-37, 40, 42.) The last allegedly recorded call Del Real produced was from January 24, 2020. (SOF ¶43.) Del Real testified that she told Alicea about the alleged recordings at that time. (SOF ¶41.) Both Del Real and Alicea therefore knew of the alleged recordings no later than 2020, which is not disputed. (SOF ¶¶32-33, 39, 46-47.) Yet Del Real and Alicea did not bring clams until August of 2023. (Dkt. No. 53.) All of their claims are therefore barred by the applicable limitations periods and are appropriate for summary judgment. *Butler*, 301 Ill. App. 3d at 922-23. To meet the statute of limitations, Del Real would have needed to file her claim by 2021. She did not file her claims until August 2023, and again, they are time barred.

Alicea's claims are even more stale. Alicea testified in her deposition that she believed her calls were being recorded as early as 2017. (SOF ¶37.) In response to questions regarding the genesis of her belief she was being recorded, she stated at her deposition:

> Q. Did you believe at any point during 2019 that your calls were being recorded at VLG?

A. Yes.
Q. Okay. When?
A. My entire time I was there.
Q. How about 2018?
A. My entire time I was there.
Q. All right. So pretty much the entire time you were working at VLG you thought --
A. Yeah.
Q. -- your calls were recorded?
A. Yes

(SOF ¶26; *see also,* Exhibit 18 to SOF. at 149:2-19 ("Q. So you believed from three months after you started working there that pretty much everything you did was being record[ed] audiowise and visually? A. Yes.").] To have met the statute of limitations, Alicea would have had to file her claim by 2019. Even assuming *arguendo* that she was unaware until Del Real told her about the recordings—which her testimony clearly demonstrates is not the case—Alicea would have had to file her claim by 2021. She did not file her claim until August 2023, and is therefore time barred.

### 3. Daniel Gallagher

Plaintiff Daniel Gallagher testified he believed VLG employees were being recorded based on an event that took place when he first started working at VLG. At his deposition he testified:

> Q: I want to know when you first believed or suspected that audio recordings were being made of your phone calls or that people were listening in on your phone calls at VLG.
> A: Within months of working there – beginning to work there, yeah.
>
>         *     *     *     *
>
> Q: So do you believe that calls were being recorded during the entire time that you were at VLG?
> A: I was suspicious of that.

(SOF ¶51; *see also,* Exhibit 22 to SOF at 109, 278.) Gallagher, an attorney, began working at VLG on or around March 2018. (SOF ¶47.)

His suspicions of call recording at VLG were based on having in person conversations with his secretary—not over the phone—after which he would receive a call from someone inquiring

about the same matter, which suggested to him that others were eavesdropping on his conversations in the office. (SOF ¶49.) Gallagher himself had no evidence of recorded calls but claimed that his stapler or other office equipment could have been bugged and believed the phone "was picking up the conversations." (SOF ¶50.)

Despite having suspicions shortly after he began working with VLG, Gallagher never investigated those suspicions nor asked Firm management if calls were being recorded. (SOF ¶51.) At one point in 2018 or 2019, when Conlee was installing the new phone system in the office, Gallagher asked Conlee if it was possible for the new system to record phone calls. (SOF ¶52.) Conlee confirmed it was possible with the system, but the feature was not being enabled or "hooked up." (SOF ¶52.)Gallagher, however, is unaware of any recordings of his own phone calls. (SOF ¶52-53.)

The statute of limitations for any FWA claim Gallagher could have brought would have run, by his own testimony, within months of March of 2020—two years after he began working at VLG when he said he first suspected possible recordings. Gallagher did not file his claims until August 2023. (Dkt. No. 53.) Summary judgment should be entered against him.

### 4. Penny Jackson

Plaintiff Penny Jackson testified that she became aware of allegations of calls being recorded in 2020. At her deposition, she testified:

> Q. Okay. So from after this -- I guess I don't know if I got a clear answer here. Was the first time you found out that there was an allegation of phone calls being recorded from Stephanie Grubisic?
> A. Yes, and that happened sometime in 2020, I'm guessing.
> Q. So she reached out to you after she left to tell you this?
> A. Oh, yes.
> Q. And you didn't tell anybody for two years?
> MR. SPRAGENS: Object to the form.
> BY THE WITNESS:
> A. For two years, I talked to Eddie.

> Q. You didn't inquire as to whether or not there were calls being recorded?
> A. Oh, no.

(SOF ¶¶56-57; *see also*, Exhibit 23 to SOF at 156-157.) Jackson became aware of allegations about VLG recording calls within a few days of Alholm's resignation on January 24, 2020. (SOF ¶¶56-57.) Jackson would have needed to file any wiretapping claims by the end of 2022 at the latest. She did not file claims until August of 2023. (Dkt. No. 53.) Her claims are therefore time barred, and summary judgment should be entered against her.

### 5. Rodney Smith

Plaintiff Rodney Smith testified that he heard from Erica Villagomez that she believed VLG was recording calls in the fall of 2022 or early 2023. (SOF ¶63.) However, Mr. Smith testified that he believed VLG was recording calls prior to that conversation with Villagomez because he was reprimanded for something he said over the phone in 2019 or 2020. (SOF ¶64.) Smith testified at his deposition:

> Q As best you recall, what did you explain to her?
> A Steve would call me in and reprimand me for what I was saying to clients on the phone. There was one day I was talking with two other employees. We were changing payroll companies, and there was a big controversy with it. And I said to call Grant because he would give an honest answer. And the following morning, I was called in to Steve's office and yelled at and berated for 15, 20 minutes because I told her to do that.
> Q So you explained this stuff to Erica?
> A Mm-hmm.
> Q That's a "yes"?
> A Yes, sorry.
> Q Anything else you explained to her as to why you believed there was recording at VLG?
> A I believe that's all.

(SOF ¶64; *see also,* Exhibit 25 to SOF at 80.) He later testified that he believed recording of calls had been going on the entire time he worked for VLG, *i.e.* since January 2019. (SOF ¶¶61, 65.) Like the other Plaintiffs in this case, Smith's sworn testimony regarding his belief that calls were

15

being recorded in 2019-2020 bar his claims. His filing in 2023 (Dkt. No. 53) is beyond the limitations period, and summary judgment should be entered against him.

### 6. Erica Villagomez

Villagomez testified that she believed that VLG was recording calls at the time she worked there in 2019 and 2020. (SOF ¶67, 71, 74.) She believed this because she observed that others "just didn't feel comfortable" conversing over the phone, and as a result, she too "simply didn't use the phone for personal use or private conversations. (SOF ¶71.) In addition, she heard other employees talking about calls being recorded around when Alholm accused the firm of recording calls, in early 2020. (SOF ¶71.) This is certainly enough information to investigate whether she had a claim. Yet she did not file suit until 2023 (Dkt. No. 53), well beyond the limitations period, and summary judgment should be entered against her.

This case is not a class action. Plaintiffs have had the opportunity to conduct all discovery they deemed necessary to prosecute their claims. No Plaintiff has filed a claim within the applicable statute of limitations and no Plaintiff has or can claim that they were prevented from filing their claims within the applicable periods. Summary judgment should be granted against all Plaintiffs.

### B. Plaintiffs Cannot Establish any of the Elements Necessary to Bring a Wiretap Claim Under the Relevant Statutes.

#### 1. The Federal Wiretap Act and Tennessee Wiretap Act

To prove a violation of the Federal Wiretap Act, "[a] plaintiff must show that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *3 (N.D. Ill. 2025), citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). However, it

has been determined that the FWA no longer provides civil remedies for "'procurement' of another to intercept [a] plaintiff's communications." *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 774-775 (C.D. Ill. 2013) (observing that the Fifth Circuit, Tenth Circuit, and District Court for the District of Columbia have all interpreted the 1986 amendment to the FWA to remove civil liability for a defendant who "procures" another party to intercept communications); *see also Peters v. Mundelein Consolidated H.S. Dist. No. 120*, 2022 WL 393572 *11 (N.D. Ill.), citing *Shefts v. Petrakis*, 954 F. Supp. 2d at 777. That is relevant in this case because VLG does not maintain its own phone system. The entirety of the operation and maintenance of the VLG phone system was conducted by its outside vendor, Surge IT. If calls were being recorded, no witness establishes that VLG authorized nor instructed Surge IT to record calls. (SOF ¶¶4, 75-79.) There is no nexus between VLG and any real or imagined recordings.

The Tennessee Wiretapping and Electronic Surveillance Act requires proof of essentially the same elements as the FWA. In relevant part, the TWA "prohibits intentionally intercepting or endeavoring to intercept any wire, oral or electronic communication. It also prohibits intentionally disclosing or endeavoring to disclose to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception in violation of the statute." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 470 (M.D. Tenn. 2018) (citing Tenn. Code Ann. §§39-13-601(a)(1)(A) and 601(a)(1)(B)). Courts have recognized that the TWA can be analyzed using the same criteria as the FWA, and that FWA case law can be used in that analysis given the limited case law available interpreting the TWA. *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008). The Plaintiffs here have failed to establish the necessary elements to substantiate a claim under the FWA and, accordingly, under the TWA.

### a. Plaintiffs Cannot Establish What Device was Used to Make the Purported Recordings.

In addition to being unable to provide any recordings for five of the Plaintiffs and not being able to establish a date range during which any of the alleged recordings were made (addressed *supra*), Plaintiffs cannot satisfy several other elements necessary to prove a claim under the FWA. Specifically, there is no evidence of any kind identifying what device was used to make any of the alleged recordings. Defendant is not asking the Court to weigh the likely theories behind how the recordings came into existence, but it is asking, as should the Court, what proof Plaintiff has that it was an actual VLG device that made them. Absent that fundamental proof (and that means more than Plaintiffs throwing theories at the wall) there can be no case.

Further, not only must Plaintiffs identify the device that was used, they also must show that the device was designed for surreptitious purposes. Section 18 U.S.C.A. § 2510 provides the definitions of the relevant terms used in the Act. Paragraph (4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." The Act then defines "electronic, mechanical, or other device" as:

> (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—
>
> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
>
> (b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal.  18 U.S.C.A. § 2510(5)

This definition ensures that the Act targets devices primarily designed for surreptitious interception rather than those with legitimate, non-invasive uses. The legislative history of the FWA emphasizes that the statute focuses on devices whose principal use is likely to be for wiretapping or eavesdropping. The Senate Report clarifies that the Act does not prohibit devices merely because they *can* be adapted for interception; rather, it targets devices designed *primarily* for such purposes. *United States v. Pritchard*, 745 F.2d 1112, 1114 (7th Cir. 1984), see also *U.S. v. Wynn*, 633 F. Supp. 595, 602 (C.D. Ill. 1986).

Courts have consistently interpreted the definition of "device" under the FWA to focus on its design and primary use. For example, in *Wynn*, the court noted that the statute targets devices whose design renders them primarily useful for surreptitious interception, even if they have innocent uses. In *United States v. Szymuszkiewicz*, the Seventh Circuit reiterated that while the Act defines "device" broadly as any apparatus capable of intercepting communications, it excludes devices used in the ordinary course of business or for legitimate purposes, such as hearing aids. *United States v. Szymuszkiewicz*, 622 F.3d 701, 706-07 (7th Cir. 2010). As this definition and guidance are applied to the instant case, it is clear Plaintiffs must identify the "device" that was allegedly used to make the alleged recordings as a fundamental step in proving their case, and they must further establish the device was designed with a surreptitious purpose. There is no testimony or evidence of any sort regarding the device that was allegedly used to make the recordings, much less whether it was one designed for a surreptitious purpose. (SOF ¶82; Exhibit 31 to SOF at 3 ("[I]t is not determined from where the audio files have originated.").)

### b. Plaintiffs Cannot Establish That VLG Intentionally Made Any Recordings.

The intent required to establish a violation of the FWA is defined narrowly—the result must have been the person's conscious objective. *United States v. Townsend,* 987 F.2d 927, 930

(2nd Dist. 1993). Intent cannot be based on inference but, rather, requires proof that in making a recording, the party's actions were beyond negligence or gross negligence. *In re HIPAA Subpoena (Patient Servs.)*, 961 F. 3d 59, 66, 67 (1st Cir. 2020). Plaintiffs have no evidence to support a claim that VLG intentionally intercepted a phone call much less every phone call made to or from every line in all of their offices. One could imagine intent being a fact question in this case if it was established that VLG actually made recordings of phone calls; however, because there is no evidence that VLG made recordings and that its telephone system was installed and managed by a third party independent contractor, there clearly can be no evidence that VLG intentionally made recordings. "Intent of the parties … may become a question of law if the [relevant, material] facts are undisputed and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Tindall Corp. v. Mondelez Int'l, Inc.*, 248 F. Supp. 3d 895, 905 (N.D. Ill. 2017), *citing Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.*, 114 Ill. 2d 133, 500 N.E.2d 1, 4 (1986); *see also Tru–Grind, Inc. v. Swiss–Tech, LLC*, 2012 WL 4093158, at *2 (N.D. Ill. Sept. 17, 2012).

As set forth above, Surge IT, built a phone system for VLG that was not physically capable of making recordings, and if call recording had been enabled it would have crashed the system. (SOF ¶¶6, 21.) Surge IT representatives testified that they have never built a system that uses the recording feature, nor were they requested to do so by VLG. (SOF ¶4, 7.) If VLG (or any other customer) had requested to enable the recording feature, it would have required activation by an IT professional after additional coding and programming. (SOF ¶5.) At no time did VLG request this feature, and it was not enabled by Surge IT personnel. (SOF ¶4, 7, 20.) But there was no one employed by VLG with the technical skills to enable or maintain a recording system to do what is

alleged by Plaintiffs, and no one outside of Surge IT personnel administered the phone system. (SOF ¶5.)

It is also undisputed that once Alholm made his allegations known to the Firm on the day he resigned, both Conlee and Dean Walker, logged onto VLG's system to check if recording had somehow been inadvertently enabled on VLG's system, and they determined that it had not. (SOF ¶20, 75, 77-78.)Conlee confirmed that no recordings were being made. (SOF ¶11, 20) [Conlee even offered Alholm the opportunity to investigate the servers himself with Alholm's own technician, but Alholm rejected that offer and a subsequent one made by the Firm prior to Alholm filing his lawsuit. (SOF ¶23.) At the outset of Alholm's charges, VLG requested all of the alleged recordings. (SOF ¶81.) None were provided. These facts are undisputed and show conclusively that, even if the recordings were made on the VLG system (and the undisputed evidence shows they were not), there is not a scintilla of evidence showing that VLG intended to record any calls. Plaintiffs cannot satisfy the elements of their claims, and summary judgment should be granted in favor of VLG.

### C. Plaintiffs have No Admissible Testimony or Evidence to Support a Claim of Wiretapping.

Plaintiffs have no admissible evidence to even suggest VLG engaged in illegal recording of phone calls to and from all of its offices as Plaintiffs have alleged. Plaintiffs must come forward with admissible evidence that demonstrates there are genuine issues of material fact. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010). When this case was filed, Plaintiff Alholm had no admissible evidence of wiretapping at all. He presented no recordings but premised his

allegations on the alleged statements of two people—Chinau Gipson and Michael Conlee.[1] The alleged "statements" by Conlee and Gipson are patent hearsay.

Fed. R. Evid. 801(c) bars statements made out of court to prove the matter asserted. The Rule States: "Hearsay" means a statement that: 1) the declarant does not make while testifying at the current trial or hearing; and 2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(1-2). Alholm cannot prove or even support his claim with statements allegedly made by Michael Conlee and Chinau Gipson out of court to prove that the Firm was allegedly recording phone calls. Neither Gipson nor Conlee were employees of VLG at the time the alleged statements were made, and Alholm is offering them for the truth of the matter asserted. Even if the statements were made, they cannot be used to defeat summary judgment because they are hearsay. Courts have consistently held that hearsay statements that would not be admissible at trial cannot be used to defeat a motion for summary judgment. *System Development Integration, LLC v. Computer Sciences Corp.*, 739 F. Supp. 2d 1063,1068 (N.D. Ill. 2010); *Alter v. SCM Office Supplies, Inc.*, 906 F. Supp. 1243, 1249 (N.D. Ind. 1995). Thus, there are no statements that can support claims under Counts II-IV.

While there are no statements that support the allegation that the Firm was recording phone calls, there are multiple statements by the outside telecom consultants running the phone system that the system was not set up to record calls, it was not recording calls, and that VLG never requested nor authorized calls being recorded. (SOF ¶¶20, 77-79.) That testimony is unrebutted. In addition, Firm management confirmed that they never authorized the recording of calls and were unaware of any suggestion that calls were being recorded.

---

[1] Both men deny making any statement to Alholm about recordings and Gipson produced an email from 2020 where he advised Alholm he was unaware of any recordings and requested Alholm stop attempting to contact him. (SOF ¶¶11, 16, 76.) Alholm never produced that email in discovery.

Conlee testified in his deposition:

Q. How is that feature activated on the back end?

A. To be honest with you, I don't know, because we never activated it. There might be programming required. There might be a set of pros – I don't know. But it would require back end.
[Conlee Tr. 51: 8-22]

Norris testified in his deposition:

Q. … I just want to confirm that no one ever asked you to – or said it was a priority that they wanted to be able to record calls?

A. Correct. There was no discussion ever with anyone at Vrdolyak about call recording whatsoever.
[Norris Tr. 26:22-27:4].

In addition, Firm management confirmed that they never authorized the recording of calls and were unaware of any suggestion that calls were being recorded. (SOF ¶18.) Peter Vrdolyak testified:

Q. Was there any conversation about what the firm would do to investigate the claims that Mr. Alholm was making in his resignation memorandum?

A. Eddie and Steve I think took the lead with respect to that investigation. Yeah, they reached out to the people involved with our phone system and/or IT system to find out if anything that was in Dan's letter was even possible because we knew nothing about it. That was the first that we had learned that – the allegations about recording of phone calls. (SOF ¶8; *see* Exhibit 11 to SOF at 11:13-24.]

Q. Mr. Vrdolyak, counsel asked you some questions earlier about why you believe Mr. Alholm sent the various letters that he did to regulators, clients, and his resignation. And you said it didn't make sense. Can you -- can you explain why you believe that it didn't make sense?

A. Well, yeah. The allegations don't make sense. I mean let's just go back. If he had any issues or questions about VLG, you know, allegedly recording phone calls this could have easily been cleared up with a phone call to Steve or any -- myself and we could explain why it never happened. Why it doesn't make sense. Why we have nothing to gain by doing that. How much money it would cost to store all of those calls.... And I think if we had a conversation with him we could have explained to him why those allegations make no sense, but he never reached out to anybody. Never did.
(*Id*. at 65:2-66:6.)

23

More problematic for Plaintiffs than the inadmissible nature of the hearsay statements from Conlee and Gipson is the fact the only other "proof" they have to support their claims are the 39 digital files which fail virtually every criterion this Court must consider to allow a party to admit recordings into evidence. There is no dispute that Lucero Del Real found the recordings using a Grandstream web portal, and that VLG and Surge IT never used Grandstream to maintain their phone system. (SOF ¶¶29-33.) Rather, VLG used Grandstream handsets, and used an Asterisk-based phone system set up by Conlee. (SOF ¶¶2-5, 30.) Del Real testified that she downloaded the files to her desktop and then to a thumb drive. (SOF ¶35.) Del Real stated that she took the thumb drive home at Alicea's suggestion until it "became a thing." (SOF ¶35.) Also, for some period of time, the whereabouts of the thumb drive were unknown to Del Real, as once she learned of Alholm's lawsuit, she enlisted Alicea to help her "find" the thumb drive somewhere in her home. (SOF ¶44-45.) The testimony and evidence about the possession of the thumb drive is inconsistent and varies from it being in the possession of Alicea, to Alholm, to Alholm's attorney. (SOF ¶46.)

From an evidentiary standpoint, the 39 files are not admissible. All experts agree there is no way to determine how the files that are now being used to avoid dismissal or summary judgment were deleted or changed, but it is undisputed that one of those two things occurred. (SOF ¶82-83.) There is no way to authenticate the recordings that Plaintiffs produced years after the allegations against VLG. In fact, no one has testified that these recordings were created by VLG's phone system in the first instance, including Plaintiffs lone expert. (SOF ¶82-83; *see also* Exhibit 32 to the SOF at 71:18-22; 67:2-17 ("I had no opinion as to what software or what anything had created the file, specifically.").) This is a damning failure of proof, not a question of fact.

The foundational requirements for admitting wiretap recordings involve demonstrating their authenticity and accuracy. In *United States v. Millan*, which is instructive, the court used a

seven-factor test originally articulated in *United States v. McKeever. U.S. v. Millan*, 817 F. Supp. 1072, 1080 (S.D.N.Y. 1993), (citing *United States v. McKeever*, 169 F. Supp. 426, 430 (S.D.N.Y.1958)). These factors include: (1) the recording device's capability to record the conversation; (2) the operator's competence; (3) the authenticity and correctness of the recording; (4) the absence of changes, additions, or deletions; (5) proper preservation of the recording; (6) identification of the speakers; and (7) the voluntary and good faith nature of the conversation. *U.S. v. Millan*, 817 F. Supp. 1072, 1080 (1993). Courts within the Second Circuit, for example, have adopted a general standard requiring "clear and convincing evidence of authenticity and accuracy" to admit wiretap recordings. *U.S. v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1997); *U.S. v. Bosch*, 399 F. Supp. 2d 521, 522 (S.D.N.Y. 2005).

While it has not yet required a formalistic approach like the Second Circuit, the Seventh Circuit has recognized that the proponent of admission of tape recordings in civil cases bears the same burden as is required in criminal cases. *Stringel v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 415, 420 (7th Cir. 1996) ("We shall assume without deciding that the proponent of a tape recording bears the same burden in a civil case.") That is, Plaintiffs "must prove by clear and convincing evidence that the tape is a true, accurate, and authentic recording of the conversation, at the given time, between the parties involved." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001). Furthermore, the Seventh Circuit has looked to the factors set forth in *McKeever*, including "the competency of the operator, the fidelity of the recording equipment, the absence of material alterations in the relevant portions of the recording, and the identity of the speakers" when evaluating the admissibility of tape recordings. *Stringel* 89 F.3d at 420. Plaintiffs here cannot establish that the recordings are of true, accurate, and authentic conversations, nor can they establish when the recordings were made. Typically, proving trustworthiness of recordings would

require evidence showing the "absence of material deletions, additions, or alterations in the relevant portions of the recordings." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). This is typically done through the presentation of an expert witness. *Buren v. Crawford Cnty.,* 13-CV-14565, 2016 WL 5369597, at *2 (E.D. Mich. Sept. 26, 2016) (Expert hired to analyze whether audio recording was tampered with or other misconduct occurred); see also *United States v. Wardlow*, 977 F. Supp. 1481, 1483 (N.D. Ga. 1997).

Applying this guidance to the instant case and the digital files produced by Del Real, it is evident that the recordings fail at least four of the criteria identified. First, there is no evidence of what device actually made the recordings. *Rush v. Cent. R.R. Co.,* 399 F. 3d 705, 722 (6th Cir. 2005) (Requiring someone familiar with recordings and the specifics of how and when the recordings were made in order to authenticate recordings.) Plaintiffs' own retained expert definitively testified that he cannot determine the origin of the files, nor how they were created. (SOF ¶82; *see also*, Exhibit 31 to the SOF at 3 ("[I]t is not determined from where the audio files have originated."); Exhibit 32 to SOF at67:14-21 ("So can you say, to a reasonable degree of certainty in your field, as to what the origin of these WAV files is? A. Not based off of what was given to me, no. Q. To a reasonable degree of professional certainty in your field, do you know what software program created the files? A. I do not.")] [2] Second, the requirement of the "operator's competence" also highlights an absence of evidence, as Plaintiffs cannot point to an operator

---

[2] Niklinski also testified that he was not a phone expert and that he was not offering an opinion as to what created the 39 files.

Q. And I think I heard you testify during this redirect examination that you are not a telephone expert. Is that what you said?

A: That is correct.

Q. So when you are offering, let's call them observations that phone systems sometimes record with a bit depth and sample rate like what you saw in these audio files, you're not saying that as an expert, are you?

A. I'm not sure I understand your question.

Q. You're not testifying to a reasonable degree of telephony -- how do they say it -- telephony certainty or expertise in telephone systems that these WAV files came from a telephone system, are you?

A. No.Exhibit 32 to the SOF at 89-90.

within VLG. If the operator is in fact Del Real, she is not a competent IT person, or telephonic expert. On the third criteria, Plaintiffs do not meet the requirement that the recordings be authentic. Plaintiffs' own expert testified that the files were not copied to the current thumb drive until June of 2020 after Del Real was no longer employed by VLG, meaning either the story about the contemporaneous download is not true, or the files on the thumb drive are not the ones that were originally downloaded. (SOF ¶82-83.) Moreover, it is undisputed that the files were modified, because there are duplicate digital files that should be on the thumb drive that are not (e.g. when a user downloads a file more than once, Microsoft Office places a numbered parenthetical after the file name) [Walker Tr. Federal, 47:15-48:1.] What is certain is that the digital files that are on the thumb drive are not the ones that were originally downloaded from a portal or a computer. Walker testified:

> Q Yeah. So the person that says they downloaded it, says this is what they downloaded, these 39 files, but this would tell you that that's not true, right?
> A No. That is. They literally just downloaded it twice and then removed it… There's no way that they would put a "2" at the end from the system.
> Q But that means that someone has deleted things here?
>
> A Yes. Yeah. Whoever downloaded it.
> (SOF ¶83, Exhibit 27 to SOF at 47:15-48:1.)

This also undermines the fourth criteria, the absence of changes or deletions. Here, it is undisputed that there were changes to the digital files. (SOF ¶83.) Fifth, the digital files were not properly preserved. Del Real testified that the files were in a desk drawer at her house and she had to enlist Alicea to come to her home and search through moving boxes to find the thumb drive with the files. (SOF ¶35, 44-45.) We also know there were personal files Del Real downloaded to the thumb drive that were unrelated to the phone calls. (SOF ¶45.) This is a far cry from proper preservation. Sixth, with respect to the identity of the speakers, Del Real is a speaker on every file, Alicea is a speaker on one file and the remainder of the speakers are unknown. (SOF ¶42.) In fact, no witness

for the Plaintiffs, including the Plaintiffs themselves and their expert, has listened to all of the recordings. (SOF ¶¶37, 43, 53, 59, 66, 73, 82-83.) Plaintiff has provided zero evidence as to whom those speakers might be.

In short, the digital recordings upon which Plaintiffs rely do not meet a single authenticity requirement, are inadmissible and cannot be used to defeat summary judgment.

> **1. Five of the Plaintiffs in this Case Are Unaware of a Single Call of theirs that was Recorded, and Not One of the Seven Plaintiffs Can Identify when Recordings may have been Made.**

We have reached the point in this case where Plaintiffs can no longer simply make audacious statements about the Firm recording every call in every office for some unknown period of time without any evidence to support them. The statute requires that there be an actual electronic communication that VLG intercepted or attempted to intercept, 18 U.S. Code § 2511(a)(1), and the penalty for that can be based on each occurrence. 18 U.S. Code § 2511(5)(b). Five of the seven Plaintiffs, Daniel Alholm, Daniel Gallagher, Penny Jackson, Rodney Smith and Ericka Villagomez, have no evidence that any electronic communication of theirs was ever intercepted by the Firm or that the Firm ever attempted to intercept a communication. Gallagher, Jackson, Smith and Villagomez all testify that they filed their claims because they heard from someone else that there was proof of recordings. That is the basis for their claim – hearsay. Gallagher testified that he did not know whether he was on any of the recordings. (SOF ¶53.) Jackson testified that she never heard her own voice on any of the calls. (SOF ¶59.)] Villagomez testified that she "know[s]" Lucy Del Real discovered recordings, but Villagomez had never seen the screen with the recordings on it nor listened to the recordings herself. (SOF ¶60.) And Smith testified that "somebody told me that someone actually had recordings," but could not remember who told him that. (SOF ¶67.)

Equally as damning, none of the seven Plaintiffs can point to a timeframe when the Firm was allegedly making these recordings. If this case were to go to trial, Plaintiffs would be asking the Court and/or jury to find that electronic communications were intercepted (a necessary element of the claim) without ever hearing the communications or knowing how many were recorded (a necessary element for awarding damages per occurrence), when they were recorded (a necessary element for awarding damages per occurrence), or who recorded them (a necessary element for the interception element). The statute requires specific instances of wrongful conduct to trigger both liability and damages. Plaintiffs can identify no specific instances here and the trier of fact would be guessing as to when and how this was occurring.

As it stands, there are 39 files, which appear to have been made on four separate days. However, even these dates cannot be certain because no one can testify that the numbers appearing in the file names are actual dates, nor that those numbers were not modified, due to the lack of chain of custody and preservation as discussed above. (SOF ¶¶82-83.) All of the calls involve Lucero Del Real, one of them also involves Jeanette Alicea, and the rest do not involve any of the Plaintiffs. All of the calls emanate from one extension at one office, not all offices as alleged. None of the Plaintiffs have offered any testimony that they actually used a VLG phone on the four dates that may or may not be the dates the calls were made, and none of them can identify any specific call they made on those days. Additionally, if a recording feature was activated on a VLG phone system, there is no testimony as to when it began or when it ended. There is a complete absence of proof on the foundational element of when the wrongdoing allegedly occurred. This is not a matter of weight – these files are inadmissible.

**CONCLUSION**

At the summary judgment stage, Plaintiffs must come forward with facts, admissible facts, to support their claim. It is no longer sufficient to present theories without evidence. There are 39 recordings of unknown origin. It is not the burden of the Defendant to show how Del Real created or obtained them. It is the burden of Plaintiffs to put forth some evidence that there is a nexus between VLG and the recordings. They have failed to do so. At this stage Plaintiffs must show they have a viable case. They do not. They failed to bring their claims within the limitations period. They cannot prove that a VLG device was used to make the recordings, much less a surreptitious device designed to listen in on calls. They cannot show that VLG intercepted calls intentionally, nor can they establish who was recorded, nor when. The 39 files they do have are so lacking in reliable indicia that this Court, as the gatekeeper of the evidence, could not introduce them at trial. Five of the seven Plaintiffs do not even know whether any call of theirs was ever recorded. They simply joined the lawsuit because someone told them VLG was recording phone calls. Enough. Summary Judgment should be granted on Counts II, III, and IV, and this Court should send any remaining state law claims back to state court where the claims should have been brought originally.

WHEREFORE, Defendant VLG respectfully requests that this Court grant its Motion for Summary Judgment, and award any further relief the Court deems just and equitable.


Dated: September 2, 2024                    Respectfully submitted,

                                           /s/ Robert D. Sweeney
                                           Robert D. Sweeney
                                           Erin I. Wenger
                                           SWEENEY SCHARKEY LLC
                                           230 West Monroe Street
                                           Suite 1500

Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

Dated: September 2, 2025

s/ Robert D. Sweeney