**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ALHOLM, JEANNETTE ALICEA, LUCERO DEL REAL, DANIEL GALLAGHER, PENNY JACKSON, RODNEY SMITH, and ERICA VILLAGOMEZ, individually and on behalf of those similarly situated, | ) ) ) ) ) ) | Case No. 1:22-cv-01820 |
| | ) | Hon. Georgia N. Alexakis |
| *Plaintiffs*, | ) ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| THE VRDOLYAK LAW GROUP, LLC, | ) ) | |
| *Defendant*. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR CLASS CERTIFICATION</u>**

Robert D. Sweeney
Erin I. Wenger
Tristan F. Lynch
SWEENEY SCHARKEY LLC
230 W. Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for the Vrdolyak Law Group, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

    I.      VLG's Telephone System. ................................................................................... 2

    II.    Limited Tangible Evidence of Telephone Recording. ..................................... 2

    III.   Alholm's Unsupported Allegations of Audio Recording are Insufficient to Support Class Certification. ............................................................................................ 4

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT ....................................................................................................................... 6

    I.      Plaintiffs Do Not Satisfy the Numerosity Prerequisite of Rule 23(a)(1). ....... 6

    II.    Plaintiffs Fail to Satisfy the Commonality Prerequisite of Rule 23(a)(2). ...... 8

       A.   Plaintiffs Have Not Established Proof of a Common Practice of Recording Phone Calls. ............................................................................................................. 9

       B.   Del Real's Recordings Do Not Establish Commonality. .......................................... 10

       C.   Security Video Does Not Support Class Certification. .............................................. 11

    III.   Because Plaintiffs Fail to Establish Commonality, Typicality Must Fail. .................... 11

    IV.   Plaintiffs do not Adequately Protect the Interests of the Proposed Class. .................... 13

       A.   The Tennessee Subclass Fails. .................................................................................. 14

       B.   The Illinois Subclass Fails. ........................................................................................ 14

       C.   The Class as a Whole Fails. ....................................................................................... 15

    V.    Plaintiffs Fail to Meet One of the Requirements in Rule 23(b). ................................. 17

       A.   Plaintiffs' Claims Require Individualized Proof, Defeating Predominance. ............ 18

       B.   Class Action is Not a Superior Method of Adjudication for These Claims. ............. 22

**TABLE OF AUTHORITIES**

Cases

*Abbott v. Village of Winthrop Harbor*, 1994 WL 66127, *2 (N.D. Ill. 1994) ........................... 7, 8

*Al Haj v. Pfizer, Inc.*, 347 F.R.D. 212, 217 (N.D. Ill. 2020) ........................................................ 17

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) ................................................... 18

*American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813 (7th Cir. 2010) ................................... 21

*CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 726 (7th Cir. 2011)... 13, 14, 17

*Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015) ......................................................................................................................... 18

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) ................................................................. 5

*Cook Au Vin*, 2023 IL App (1st) 220601 ..................................................................................... 19

*Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 308 (N.D. Ill. 2010) ("Driver 1") .................... 8, 10

*Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1027 (N.D. Ill. 2012) ("Driver 2") ............ 17

*Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011) ........................................ 13

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022) ................. 18, 21

*Holmes v. Progressive Universal Ins. Co.*, 2026 WL 1026165, at * 2 (N.D. Ill. Apr. 15, 2026)... 5

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). .............................................................................................................................................. 18

*J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ........... 13, 17

*Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 578 (N.D. Ill. Oct. 30, 2014) ............. 5

*Lipton v. Chattem, Inc.,* 289 F.R.D. 456, 461 (N.D. Ill. 2013) ................................................... 17

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) ............................................. 6, 7

*McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800-01 (7th Cir. 2017) ............................. 8

*McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020) ................................................................. 12

*McKnight v. United Airlines, Inc.*, 2026 WL 879727, at *6 (N.D. Ill. Mar. 30, 2026) .......... 11, 13

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) .................. 18, 22

*Parkis v. Arrow Financial Services, LLS*, 2008 WL 94798, at *4 (N.D. Ill.)............................. 8, 9

*Peters v. Mundelein Consol. High School Dist. No. 120*, 2022 WL 39572, at *11 ...................... 19

*Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017)......................................... 5

*Radmanovich v. Combined Ins. Co. of America*, 216 F.R.D. 424, 439 (N.D. Ill. 2003) ............... 22

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)........... 6, 12, 14

*Smith-Brown v. Ulta Beauty, Inc.*, 335 F.R.D. 521, 529 (N.D. Ill. 2020)...................................... 8

*Spano v. Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011)......................................................... 11, 13

*Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *3 (N.D. Ill.) ....................................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).............................................. 5, 8, 11

*Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000) ........................................ 22

*Williams v. Matteson Sports Bar,* 724 F. Supp. 3d 713, 718 (N.D. Ill. 2024) ............................... 6

Statutes

18 U.S.C. 2520(e) ....................................................................................................................... 16

720 ILCS 5/14-2(a)(1) ............................................................................................................... 19

735 ILCS 5/13-2021 ................................................................................................................... 16

Fed. R. Civ. Pro. 23(a) .......................................................................................................... 5, 6, 11, 13

Tenn. Code. Ann. 39-13-603(d).................................................................................................. 16

NOW COMES Defendant, the VRDOLYAK LAW GROUP, LLC ("VLG"), by and through its undersigned counsel, and submits its Brief in Opposition to Plaintiffs' Motion for Class Certification, and states the following in support:

**INTRODUCTION**

Plaintiffs move for class certification and for appointment of Jeanette Alicea, Lucero Del Real, Erica Villagomez, Rodney Smith, Daniel Alholm, and Penny Jackson as the representatives of the proposed class (collectively, "Plaintiffs").[1] The proposed class consists of "[a]ll employees, clients, and potential clients of the Vrdolyak Law Group who had a telephone conversation between November 1, 2019, and January 28, 2020, [("the Relevant Period")] with a person using VLG's telephone system." (ECF 160 at 11). Plaintiffs seek designation of two subclasses: (1) "All employees, clients, and potential clients of the Vrdolyak Law Group ("VLG") who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system in Illinois" and (2) "All employees, clients, and potential clients of the Vrdolyak Law Group ("VLG") who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system in Tennessee." (ECF 160 at 11.)

To succeed on their motion for class certification, Plaintiffs must meet each of the four requirements set forth in Rule 23(a). Fed. R. Civ. Pro. 23(a). A failure to meet any *one* of those requirements is fatal to their motion. Even if Rule 23(a) is satisfied, Plaintiffs must still meet at least one of the requirements of Rule 23(b) to maintain a class action. Fed. R. Civ. Pro. 23(b). Additionally, Plaintiffs need to establish that each subclass independently meets all of the Rule 23 requirements. Plaintiff has made no effort to analyze each subclass independently or demonstrate that each subclass is homogenous, thus their motion must be denied. However, even looking at the

---

[1] Plaintiffs are not seeking to appoint Daniel Gallagher as a class representatives. For the purposes of this brief, "Plaintiffs" will refer to the proposed class representatives.

overarching class, Plaintiffs cannot affirmatively demonstrate the elements necessary to continue this suit on behalf of the purported class.

## FACTUAL BACKGROUND

### I. VLG's Telephone System.

In 2019, Mike Conlee ("Conlee") assisted with transferring VLG to a new telephone system to address increased call volume. VLG contracted with Surge IT, which Conlee owned, and Conlee recommended that VLG install the Asterisk system with a FreePBX graphical user interface on top (the "FreePBX System"). (Ex. 1 at 35:10-36:18.) The system was implemented at VLG's various offices on a rolling basis, and per Plaintiffs' motion, the system was not installed at all offices until January 24, 2020. (ECF 160 at 3.)

VLG never asked Conlee to install a system that could record calls and never contracted for such a feature. Notably, no one at VLG was informed that FreePBX had the capability to record calls, nor was VLG invoiced for a recording feature or the storage or bandwidth that would have been required to support a global recording feature. (Ex. 1 at 43:23-46:20; Ex. 2 at 43:20-44:1; Ex. 3 at 39:14-41:24, 43:16-19; Ex. 14 at 34:10-36:5.) Even if VLG's system could have supported the massive amount of data that would be required to record the voluminous telephone traffic at a firm such as VLG, activating a firm-wide recording feature would have required third-party IT personnel to obtain written permission from VLG to "turn on" the recording capability. VLG never gave instructions or permission to Surge IT, nor other staff or contractors, to turn on a recording feature. (Ex. 1 at 53:12-55:23, 86:7-16; Ex. 2 at 36:1-37:2; Ex. 4 at 184:14-185:24.) VLG also never gave permission to any individual users to enable recording on their own lines.

### II. Limited Tangible Evidence of Telephone Recording.

The 39 audio recordings were "discovered" by Plaintiffs well after this litigation began and are sourced from just one person—Lucero Del Real ("Del Real"). Del Real was an employee at

2

VLG from 2016 through 2020. She testified that in late 2019 and early 2020, on her own initiative, she went to the website for the manufacturer of the physical phones at staff desks—Grandstream—and created an account on a third-party, non-VLG affiliated portal so she could route her voicemails to email. (Ex. 5 at 35:19-37:12; 42:14-44:2.) She testified that the Grandstream account she created allowed her to listen to her voicemails on the Grandstream portal. (Ex. 5 at 35:19-36:21, 38:4-39:15, 42:23-43:5, 43:50:11-24.) VLG did not have any agreement with Grandstream to manage or house its telecommunications data or for employees to use Grandstream's online portal. (Ex. 6 at 87:24-88:13.)

Del Real testified that she did not find any recordings of phone calls when she created her account. It was only a week later, after "playing around" with the portal, that she came across alleged audio recordings of telephone calls. (Ex. 5 at 41:16-22, 46:2-9, 51:6-16, 54:24-56:6.) All 39 recordings emanate from Del Real's actions on a third-party website, and all are recordings in which Del Real was a participant on her own phone line. (Ex. 5 at 109:3-5.)

Jeanette Alicea ("Alicea") is the only other Plaintiff who has testified that she heard her own voice on Del Real's audio files. Alicea attempted to access similar files through the actual VLG phone portal, she found no recorded calls. (Ex. 7 at 68:5-69:21; 73:2-75:20.) The remaining plaintiffs—Alholm, Jackson, Smith, and Villagomez—have no independent evidence of any recorded audio of themselves and had not even listened to Del Real's 39 recordings at the time of their depositions. (Ex. 8 at 171:13-14; Ex. 9 at 61:22-62:8; Ex. 10 at 146:11-19). Now, Plaintiffs must establish each element required for class certification by a preponderance of evidence and such limited, contested evidence is not sufficient to support class certification. Rather than evincing a nefarious plot to record all VLG telephone calls, the evidence points to one individual who, whether accidentally or intentionally, triggered recordings of her own phone calls via a third-

3

party website and inexplicably came forward with the recordings for the first time more than three years after first "discovering" them.

### III. Alholm's Unsupported Allegations of Audio Recording are Insufficient to Support Class Certification.

The other "evidence" concerning alleged telephone call recordings arises largely from conjecture and Alholm's own self-serving statements. Plaintiffs try to establish evidence for *telephone call recording* through allegations about *security cameras*. Alholm was confronted with accusations that other employees made derogatory comments about Eddie Vrdolyak during a staff meeting in February 2019 at the Nashville office. Vrdolyak called Alholm about the staff incident, but he did not want to disclose who confided in him about the comments. Instead, when Alholm denied knowledge of the comments, Vrdolyak told him that the conference room cameras recorded audio so denying it would be futile. (Ex. 4 at 139:11-21, 142:5-143:11; Ex. 11 at 43:11-47:5; ECF 160 at 4.). This, of course, was not true. There was no recording, and Vrdolyak testified that the Nashville office's cameras were not capable of recording sound. (Ex. 4 at 142:5-143:11, 150:24-151:2.) Alholm even testified that he was told by Conlee that the cameras were not recording sound, and he admitted he was not sure it was happening. (Ex. 11 at 43:12-16; 47:6-12.) In any event, audio recording on security cameras is not evidence of a systemic practice of recording telephone calls in the Nashville office, let alone in other offices, and is irrelevant for class certification. (Ex. 4 at 143:24-144:19.)

Alholm alleges that he was told by Conlee in 2019 that VLG's Chicago Boeing office was recording telephone calls. (ECF 160 at 4-5.) Conlee denied under oath that he ever made any such statement to Alholm. (Ex. 1 at 70:19-22.) Alholm also testified that during a phone call in 2020, former employee Chinua Gipson told him that VLG was recording telephone calls. (ECF 160 at 5; Ex. 11 at 44:5-8; 65:22-66:7.) This, too, was fully denied by Gipson and is unsupported beyond

Alholm's statement. (Ex. 12 at 27:11-28:4; 29:14-20; 32:7-33:10.) Gipson also sent an email to Alholm before litigation was initiated and after Gipson stopped working for VLG telling Alholm to stop contacting him and reiterating that he never said VLG was recording calls and had no knowledge of any such assertions. Alholm also made his allegations to the Tennessee Board of Professional Responsibility and the Illinois ARDC, and both regulatory bodies determined the claims of recording lacked evidentiary support.

### LEGAL STANDARD

To maintain a class action, the party seeking certification must first demonstrate that it meets each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequate representation. Fed. R. Civ. Pro. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Rule 23 "does not set forth a mere pleading standard." *Id.* Rather, the movant must prove through evidence that each requirement of Rule 23 is satisfied, and certification is only proper if, after "rigorous analysis," the Court finds that each of the prerequisites have been met. *Wal-Mart*, 564 U.S. at 352; *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 578 (N.D. Ill. Oct. 30, 2014). The "rigorous analysis" used by the Court to assess each prerequisite of Rule 23 often overlaps with the merits of the underlying claims. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *Wal-Mart*, 564 U.S. at 351. This is necessary to resolve the class certification motion as a court may not simply accept a movant's allegations as true at this stage—the Court must evaluate the evidence that is relevant to certification and resolve factual and legal disputes. And the Court may grant certification only if the movant establishes each of the four requirements in Rule 23(a) and one condition in Rule 23(b) ***by a preponderance of the evidence***. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017); *See Holmes v. Progressive Universal Ins. Co.*, 2026 WL 1026165, at * 2 (N.D. Ill. Apr. 15, 2026). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class."

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Further, Plaintiffs have identified two subclasses that they propose to form—one for Illinois and one for Tennessee. When subclasses are identified in an attempt to certify a matter as a class action, each of the subclasses must independently satisfy the criteria in Rule 23 before a class action can be certified. *Id.* at 599. Plaintiffs have failed to evaluate each of the subclasses separately, and ultimately they fail meet their burden to establish each element by a preponderance of evidence. Class certification should be denied.

## ARGUMENT

### I. Plaintiffs Do Not Satisfy the Numerosity Prerequisite of Rule 23(a)(1).

A plaintiff seeking class certification must also demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). However, numerosity is not necessarily met simply on the basis of the number of potential class members. The practicability of joinder must be considered, which "requires an evaluation of the nature of the action, the size of the individual claims, and the location of the class or the property that is the subject matter of the dispute." *Williams v. Matteson Sports Bar,* 724 F. Supp. 3d 713, 718 (N.D. Ill. 2024), quoting *Anderson v. Weinert Enters. Inc.,* 986 F.3d 773, 777 (7th Cir. 2021). In meeting this burden, Plaintiffs "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989), quoting *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir. 1976).

In *Marcial v. Coronet Ins. Co.*, the plaintiffs sought class certification for allegations that the defendant insurance company exploited polygraph tests to deny insurance claims. *Id.* The proposed class consisted of all policyholders for whom the defendant had either denied indemnity or claims over a four-year time span. *Id.* Because the Court could not "tell from the record whether those assumptions [were] correct…plaintiffs [had] speculated as to the number of persons who

6

may have legitimate claims," and numerosity could not be satisfied. *Id.*

Similarly, Plaintiffs make assumptions about the number of potential class members here. Their proposed class requires several assumptions, including, but not limited to, that VLG activated a standardized global call recording system across all offices for all telephone lines; that a recording feature could not be activated by or for any individual user;[2] that this global recording was activated at each office and during the entire Relevant Period in every office (two in Chicago, one in Tinley Park, and one in Nashville, Tennessee). Like *Marcial*, the evidence set forth by Plaintiffs does not establish these assumptions. Moreover, the purported recordings of Del Real— if determined to be authentic and reliable, which is contested—capture select calls from only one telephone line, in one Chicago office, on two dates in November 2019 and two dates in January 2020—it cannot be assumed from this evidence that all lines were recorded on all dates during the Relevant Period. Extrapolating from these unsupported assumptions that the purported class size is "far more than 100 current and former employee plaintiffs and thousands of the 'tons' of daily callers over the 89-day class period" is nothing more than speculation. Plaintiffs have not affirmatively established the calls were being recorded at any of the VLG offices during the Relevant Period. Their motion merely asserts that the system was capable of recording by January 24, 2020—leaving four days in the proposed class period, which include a weekend.

The defined class is problematic as Plaintiffs attempt "to mix divergent groups of individuals together in order to comprise their class." *Abbott v. Village of Winthrop Harbor*, 1994 WL 66127, *2 (N.D. Ill. 1994). In *Abbott*, numerosity was not met when the class included Village

---

[2] Plaintiffs misstate this Court's ruling on summary judgment. This Court determined that Conlee, Norris, and Walker testified that "*for calls to be recorded systemwide*, a system administrator would have to activate the feature 'on the back end'." (ECF 155 at 10) (emphasis added). The Court did not conclude that VLG's system had this feature activated, let alone systemwide, contrary to Plaintiffs' argument. (ECF 160 at 14-15.)

employees, police officers, family members of employees, and attorneys—*i.e.*, anyone who used a private phone line at the police station during a time when a device had been placed on that line to intercept communications. *Id.* The Court determined that whether an individual had knowledge of a policy of recording on that line was crucial to class certification because they may not have had any expectation of privacy when using that phone line, which is a required element for the FWA and IWA. *Id.* As in *Abbott*, only those who had a reasonable expectation of privacy can be included in the class. Plaintiffs have not established how many individuals had an expectation of privacy when using VLG's phones and, as in *Abbott*, it is their burden to demonstrate that in addition to showing that the number of those with such an expectation would make joinder is impractical. *Id.* at *3. The numerosity prong of Rule 23(a) is therefore not satisfied.

## II. Plaintiffs Fail to Satisfy the Commonality Prerequisite of Rule 23(a)(2).

Plaintiffs must affirmatively demonstrate that there are questions of law or fact common to the proposed class. *Wal-Mart*, 564 U.S. at 350. The putative class members (and subclass members) must have suffered the same injury, but it is not sufficient to merely allege that all class members "have suffered a violation of the same provision of law." *Id*; *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800-01 (7th Cir. 2017). Plaintiffs must establish that there has been "standardized conduct" towards all proposed class members. *Parkis v. Arrow Financial Services, LLS*, 2008 WL 94798, at *4 (N.D. Ill.) (determining that individual analysis of each plaintiff's payment history to assess if statute of limitations was met for each claim of unlawful debt collection practices.). If the court is required to perform individualized factual inquiries for each class member rather than proof of common practice, commonality is lacking and certification should be denied. *Id.; see also, Smith-Brown v. Ulta Beauty, Inc.*, 335 F.R.D. 521, 529 (N.D. Ill. 2020); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 308 (N.D. Ill. 2010) ("Driver 1").

8

**A. Plaintiffs Have Not Established Proof of a Common Practice of Recording Phone Calls.**

Here, Plaintiffs rely on individualized evidence rather than proof of a common practice or policy. The purported common question of "whether VLG intentionally activated a call recording feature on its telephone system," does not resolve the commonality issue. (ECF 160 at 14.) Plaintiffs admit that each of VLG's offices had the FreePBX System installed at different times during the Relevant Period and Plaintiffs offer no evidence of when this happened for each office. Instead, they appear to have based the "Relevant Period" on the bookend dates of Del Real's recordings, which even if authentic, were all from one office and one device. Plaintiffs claim that FreePBX was installed by January 24, 2020 in all offices, but have no evidence to support this, and this cannot be evidence to support a policy of recording at *all* VLG offices in a uniform manner starting on ***November 1, 2019***.

Further, the common question Plaintiffs proposed has a plethora of essential subparts that destroy commonality (*i.e.*, which phone lines were used and when; whether and when VLG's phone system had the capability of recording at a particular office; whether the feature could be activated for individual lines or by individual users at that office; whether the feature was activated for any individual users; whether any recordings of the individual were made and stored on VLG servers; whether each individual had an expectation of privacy and when or if each putative class member had inquiry notice of the alleged call recording.) It cannot be determined that the purported class members were subject to the same uniform, firm-wide policy had one existed.

Even if a common question of fact existed as to VLG's recording practices—which it does not—individualized inquiries like those listed above and whether the statute of limitations has run for each putative class member would independently preclude class certification. *See Parkis*, 2008 WL 94798, at *4. As set forth more fully in Section V.A below, resolving that issue would require

9

office-by-office and user-by-user determinations, such that no commonality exists.

### B. Del Real's Recordings Do Not Establish Commonality.

The primary evidence Plaintiffs rely on are the purported recordings by Del Real. These recordings are all from one phone line in one Chicago office, purportedly discovered and downloaded by one person—Del Real. Del Real has admitted that these recordings were accessed independently without authorization from VLG after she "play[ed] around with" the Grandstream portal. (Ex. 5 at 54:17-55:12.) Even at the summary judgment stage, when looking at the evidence in a light most favorable to Plaintiffs, this Court determined that the "evidence of whether VLG's phone system could have made the recordings in Del Real's online portal is, to say the least, mixed." (ECF 155 at 9.) That evidence cannot establish a firm-wide recording policy, and certainly cannot establish a firm-wide practice outside of that one VLG office. At most, it reflects an isolated, plaintiff-specific incident that cannot sustain commonality for class certification. *See Driver 1*, 265 F.R.D. at 308.

To circumvent the individualized nature of their proof, Plaintiffs rely on a veiled spoliation argument, asserting that data from the FreePBX System was destroyed. (ECF 160 at 5-6.) But Plaintiffs have no evidence—direct or circumstantial—that audio recordings from the FreePBX System were ever created, let alone stored. They rely on a misinterpreted quote from the deposition of Steven Armbruster that offers no support for the proposition that data was deleted. (ECF 160 at 6.) Mr. Armbruster said: "I don't know what there would have been to preserve." *Id.* The context of this statement clearly shows the meaning—because there were no recordings on VLG's servers or on any sort of firm-wide Grandstream portal, there could not have been anything to preserve. (Ex. 1 at 44:8-46:20, 54:17-55:18.) Plaintiffs were given multiple opportunities to inspect the servers owned and controlled by a non-party but never did. Instead, Plaintiffs ask the Court to infer

10

the existence of common evidence from its absence. Rule 23 does not permit certification based on speculation. *See Walmart,* 564 U.S. at 350 (finding that plaintiffs must "affirmatively demonstrate" there is a common question of fact).

### C. Security Video Does Not Support Class Certification.

Plaintiffs point to the presence of security cameras, which are separate and distinct equipment from the FreePBX phone system, in a failed attempt to demonstrate the existence of a firm wide policy of recording telephone calls. (ECF 160 at 4.) This is utterly fallacious. The testimony and evidence in this case support that there was no uniform firm-wide policy of using security cameras, nor was there any audio recording on those devices. (Ex. 2 at 57:3-8; Ex. 4 at 144:1-19; Ex. 13 at 247:2-255:8.) Moreover, the class and subclasses defined by Plaintiffs are limited to individuals who had *telephone conversations* with someone using the VLG *telephone system*, not security cameras. (*Id*. at 11.) Under Plaintiffs' reasoning, because there were no cameras at the offices in Tinley Park and the Boeing building during the Relevant Period, employees, clients, and potential clients who called those offices should be excluded from class membership. This is a *non sequitur* and has received far too much airtime.

### III. Because Plaintiffs Fail to Establish Commonality, Typicality Must Fail.

Rule 23(a)(3) requires plaintiffs prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). "To satisfy Rule 23(a)'s typicality requirement, 'there must be enough congruence between the named representative's claims and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group.'" *McKnight v. United Airlines, Inc.*, 2026 WL 879727, at *6 (N.D. Ill. Mar. 30, 2026), quoting *Spano v. Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011). To establish that their claims are typical for the proposed class, Plaintiffs must show that their claims

11

have "the same essential characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020). When each class member has unique factual circumstances, the class representatives included, the typicality requirement is not met. *Id.*

Plaintiffs seek to form two separate subclasses, one for individuals who had phone calls with any of the three VLG Illinois offices and one for individuals who had phone calls with the VLG Nashville office. Each named Plaintiff is a former employee of VLG, and Plaintiffs make no distinction as to which Plaintiff worked in which office. (ECF 160 at 9.) This factor must be considered because the Plaintiffs have the burden of establishing that each subclass meets each requirement of Rule 23 and there is no evidence of a firm-wide policy of recording calls. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993). If there is only evidence of recording at one office—which VLG maintains there is not—then employees who worked at other offices will not have the necessary congruence with all potential class members.

Additionally, VLG's contention that FreePBX's recording feature could be activated on an individual, extension-specific basis remains unrebutted. (Ex. 6 at 125:11-23; Ex. 14 at 33:16-34:9.) Evidence of the recording feature being activated firm-wide or for other individual extensions, including those of the Plaintiffs, does not exist. Plaintiffs, therefore, occupy a fundamentally distinct position than that of the unnamed class members, which encompasses "all employees, clients, and potential clients of the Vrdolyak Law Group ('VLG') who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system." (ECF 160 at 11.) Each of the proposed class representatives is a former employee who had access to the FreePBX System. Accordingly, each Plaintiff would have been individually capable of activating and using the call recording feature on that system for their particular line—either through the Grandstream portal that Del Real accessed or the methods

12

described by Walker and Norris. (Ex. 5 at 32:6-46:9; Ex. 6 at 125:11-23; Ex. 14 at 33:16-34:9.) Clients and potential clients do not have access to those capabilities and are in a different position with regard to knowledge and control and privacy expectations. Moreover, because the named Plaintiffs are uniquely vulnerable to statute of limitations defenses, there is not "enough congruence between the named representative's claims and that of the unnamed members." *Spano*, 633 F.3d at 586. Typicality cannot be satisfied here.

## IV. Plaintiffs do not Adequately Protect the Interests of the Proposed Class.

Rule 23(a) also demands that Plaintiffs prove by a preponderance of the evidence that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires a two-part analysis: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011). However, when "a major focus of the litigation will be on [an] arguable defense unique to a named plaintiff, then the named plaintiff is not an adequate representative." *McKnight*, 2026 WL 879727 at *10 (*quoting Westmoreland v. Hughes,* 144 F.4th 952, 956 (7th Cir. 2025)). Indeed, when a named plaintiff is subject to a unique defense, that plaintiff "will become distracted by the presence of a possible defense applicable only to [plaintiffs] so that the representation the rest of the class will suffer." *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 726 (7th Cir. 2011), citing *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980).

Here, Plaintiffs seek to certify a class consisting of "all employees, clients, and potential clients" of VLG who had a conversation with someone using VLG's telephone system between November 1, 2019, and January 28, 2020. (ECF 160 at 11). Plaintiffs fail to make any distinction

13

as to which of the proposed class representatives are intended to represent each subclass. None of the Plaintiffs are clients, potential clients, or non-employees. It is Plaintiffs' burden to define the class and subclasses in clear terms through objective criteria and to establish adequacy of each by a preponderance of evidence, but they fail to do so with anything other than vague descriptions. *See, Retired Chicago Police Ass'n.*, 7 F.3d at 599.

### A. The Tennessee Subclass Fails.

Alholm is the only named Plaintiff who worked in the Tennessee office during the Relevant Period. As noted above, Plaintiffs fail to offer any suggestion of when the FreePBX System was installed at the Nashville office. Plaintiffs' motion only notes that the installation across all VLG offices was complete by January 24, 2020. Alholm resigned on January 24, 2020. It therefore cannot be established by a preponderance of the evidence that Alholm was even employed by VLG when purported call recording was alleged to have taken place. "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality" and call into question the adequacy of that plaintiff's representation. *CE Design Ltd.*, 637 F.2d at 726. Alholm is also the subject of state law claims for breach of fiduciary duty and tortious interference arising from his concoction of this recording ruse to attempt to take all of VLG's clients in Tennessee. He clearly has personal interests, motivations, and considerations that are unique to him that could affect his representation of a Tennessee subclass.

### B. The Illinois Subclass Fails.

Alholm also cannot be a class representative for the Illinois subclass as he did not work in VLG's Chicago offices during the Relevant Period. Plaintiffs make no attempt to explain how, through objective criteria, Alholm could represent any potential Illinois subclass. He has not alleged that any of his telephone conversations "with a person using VLG's telephone system in

Illinois" were recorded, nor does he have any evidence of this.

Second, Alholm also has unique claims and defenses not raised by any other Plaintiff or shared by any potential Illinois subclass member. Alholm alleges two separate causes of action of "misappropriation of likeness" under T.C.A. 47-25-1105 and 765 ILCS 1075. (ECF 53 at 17-18.) These claims and the associated defenses raised by VLG are unique to Alholm and undermine his adequacy as a class representative. They are unique legal theories and do not have the same essential characteristics as the federal and state wiretap acts. VLG's defenses related to the misappropriation claims will necessarily only apply to Alholm. Additionally, based on Alholm's damage modeling for these claims he is placing substantially more value in his non-class claims.

Each of the named Plaintiffs, including Alholm, also fail to meet the adequacy requirement specifically as to the Illinois subclass. The Relevant Period is the same for all purported class members, and makes no distinction between the three offices that VLG has in the Chicagoland area. Each office had the FreePBX phone system installed at different points in time. It is necessary to establish whether the FreePBX System—the one at issue that purportedly was capable of system-wide recording—was even in place at a particular office during the Relevant Period. The only assertion Plaintiffs make in this regard is in their motion that the FreePBX System had been installed in all offices by January 24, 2020. The date of installation at each of the offices will have direct bearing on whether individual class members are in fact class members, and whether the Plaintiffs adequately represent them. Plaintiffs' failure to address this is fatal to class certification.

### C. The Class as a Whole Fails.

Each Plaintiff faces other unique defenses asserted by VLG with respect to the statutes of limitations, their ability to record calls, install software on their work computers, and their expectation of privacy. VLG has asserted a statute of limitations defense unique to each named

15

Plaintiff that is a central issue in the litigation and undermines Plaintiffs' adequacy as class representatives. (ECF 73 at 23-24). Plaintiffs' claims arise under the Federal Wiretap Act ("FWA") and the corresponding Tennessee Wiretapping Act ("TWA"), both of which are governed by a two-year statute of limitations, and the Illinois Wiretapping Act ("IWA"). 18 U.S.C. 2520(e); T.C.A. 39-13-603(d); 735 ILCS 5/13-2021. As explained at length in VLG's motion for summary judgment, each Plaintiff's claims should be time-barred based on the applicable statute of limitations and the date upon which each Plaintiff had the first opportunity to investigate an alleged violation of the FWA, TWA, and IWA. (*See* ECF 123 at 8-16.)

Each proposed class representative is subject to a unique statute of limitations defense based on when each had inquiry notice of their potential claims. As discussed at length in VLG's motion for summary judgment, each individual Plaintiff has testified to having inquiry notice of alleged telephone recordings as of a different date, and via different means, such that each Plaintiff is subject to a unique defense, as demonstrated by the fact that this Court has already disposed of Plaintiff Gallagher's federal claims based on the statute of limitations. The same individualized inquiry will need to occur for each additional plaintiff. VLG adopts its statute of limitation arguments from the summary judgment proceedings here to demonstrate the individualized assessments required for just each proposed class representative, let alone for each proposed class member. (*See* ECF 123 at 8-16.)

The subclasses, too, will face different legal and factual hurdles based on the different statutes of limitations applicable to each of the claims. As the Court noted in its ruling on summary judgment, the statute of limitations under the IWA is different from the TWA and FWA. (ECF 155 at 37-38.) Each Plaintiff must present individualized facts demonstrating that their potential claims would be eligible under the IWA, TWA, or FWA. They would be forced to litigate against a

16

"defense applicable only to [them] so that the rest of the class will suffer." *J. H. Cohn & Co.,* 628 F.2d at 999. The individualized timeliness issues are unique to each named Plaintiffs, not representative of the claims or defenses applicable to the putative class as a whole.

In an attempt to avoid this fatal defect, Plaintiffs argue that this Court has already considered and rejected VLG's statute of limitations defense. (ECF 160 at 17.) However, Plaintiffs' reliance on the Court's determination at the summary judgment stage is misplaced. At the summary judgment stage, the Court does not resolve issues of material fact or make determinations about credibility but draws inferences in favor of the non-moving party. *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1027 (N.D. Ill. 2012) ("Driver 2"). Class certification poses a different inquiry and requires the Court to resolve disputed factual and legal issues to determine if class certification is appropriate. The prerequisite of adequacy cannot be satisfied when the proposed class representatives are subject to unique defenses that threaten to become the focus of the litigation. *CE Design*, 637 F.3d at 726. They must also demonstrate that they are "well-positioned to prevail as an ordinary member of the putative class." *Al Haj v. Pfizer, Inc.*, 347 F.R.D. 212, 217 (N.D. Ill. 2020). Here, Plaintiffs will be forced to dedicate considerable attention to overcoming their unique factual claims and defenses surrounding notice, their ability to download software, and their expectations of privacy. Other class members would not be concerned with or rely on the same facts or circumstances as the proposed class members. *See e.g., Lipton v. Chattem, Inc.,* 289 F.R.D. 456, 461 (N.D. Ill. 2013). For these reasons, adequacy is not met.

### V. Plaintiffs Fail to Meet One of the Requirements in Rule 23(b).

For class certification, Plaintiffs must also satisfy one of the Rule 23(b) requirements. Plaintiffs argue that the proposed class complies with Rule 23(b)(3), or that "questions of law or fact common to class members predominate over any question affecting only individual members,

17

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3). Plaintiffs cannot show predominance or superiority.

### A. Plaintiffs' Claims Require Individualized Proof, Defeating Predominance.

Although commonality and predominance overlap, "the predominance criterion is far more demanding." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997); *see also Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015). To satisfy this heightened standard, Plaintiffs must demonstrate that their claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Accordingly, the court "must understand what the plaintiffs will need to prove and must evaluate the extent to which they can prove their case with common evidence." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022). This analysis begins "with the elements of the underlying cause of action." *Messner*, 669 F.3d at 815 (internal quotations omitted).

Plaintiffs bring claims under both the FWA, TWA, and IWA. To prove a violation of the FWA, "[a] plaintiff must show that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *3 (N.D. Ill.), citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). The TWA and the FWA can be analyzed using the same criteria and case law. *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008). Likewise, to prove a violation of the IWA, Plaintiffs must prove that VLG knowingly and intentionally used an eavesdropping device, in a surreptitious manner, to overhear, transmit, or record all or part of a "private conversation" to which it was not a party, without the consent of all

18

parties. *Peters v. Mundelein Consol. H.S. Dist. No. 120*, 2022 WL 39572, at \*11; 720 ILCS 5/14-2(a)(1)). In addition, the IWA requires that at least one participant intended the communication to be private "'under circumstances reasonably justifying that expectation,' with a 'reasonable expectation' meaning 'any expectation recognized by law.'" *Id.* (quoting 720 ILCS 5/14-1(d), (e)).

To prevail on their claims, each Plaintiff must prove that VLG intercepted, or attempted to intercept, that Plaintiff's electronic communication(s). Yet four of the six named plaintiffs—Alholm, Jackson, Smith, and Villagomez—have produced no evidence that any of their own electronic communications were intercepted, or that VLG attempted to intercept them. Jackson testified that she never heard her own voice on any of the calls. (Ex. 8 at 171:13-14.) Villagomez testified that she "know[s]" Del Real discovered recordings, but never saw the recordings on Del Real's computer, nor did she listen to any of the recordings. (Ex. 9 at 61:22-62:21.) Smith testified that "somebody told me that someone actually had recordings," but could not remember who, and he did not listen to Del Real's recordings. (Ex. 10 at 146:11-19.) Thus, determining whether VLG intercepted any communications would require a plaintiff-by-plaintiff inquiry into each class member's evidence, rather than proof common to the class. If the named Plaintiffs cannot identify any intercepted communications after three years, there is no basis to conclude that proposed class members could establish interception through common evidence.

Similarly, Plaintiffs cannot substantiate the Illinois claims through common evidence. For each allegedly recorded conversation of each individual class member, Plaintiffs need to prove that at least one participant intended the conversation to be private and that it was an objectively reasonable expectation of privacy for the particular circumstances of that conversation. *Cook Au Vin*, 2023 IL App (1st) 220601, ¶¶ 25, 34-35. Whether a conversation qualifies as "private" necessarily depends on the surrounding circumstances, including who could overhear the

19

conversation, where it occurred, and whether the circumstances reasonably justified an expectation of privacy. *Id.* ¶¶ 34–35. Those inquiries cannot be answered with generalized proof but instead require evidence unique to each allegedly recorded conversation. Thus, individualized questions predominate for the Illinois claims, too.

Predominance faces the same individualized hurdles with respect to applicable statutes of limitations, as well. At summary judgment, the Court engaged in an individualized analyses to assess whether each of the seven plaintiffs' claims was time-barred under the applicable statutes of limitations. This resulted in a judgment against one, and a finding that there were individualized factual inquiries that needed to be resolved for the other six plaintiffs—the same six proposed class members here. (ECF 155 at 39-49.) Even if the proposed class was made up of only other VLG employees, an individualized analysis would still be required. But here, Plaintiffs seek to have an even broader class that includes clients and potential clients who present additional individualized factual hurdles to establishing predominance. The required individualized inquiries eliminate any efficiencies that class treatment might otherwise provide and render a class action inferior to other methods of adjudication.

Predominance raises the same evidentiary problems that plague Plaintiffs' assertions of commonality with respect to establishing that VLG had a uniform practice of recording phone calls across all offices and using contested or inadmissible evidence to substantiate their claims. First, Plaintiffs point to VLG's use of security cameras in common areas to support that VLG recorded telephone calls. As addressed above, this is a *non sequitur*. The record establishes that security cameras were only present at some of VLG's offices and, where present, were not uniformly monitored, and were not capable of recording audio. (Ex. 1 at 46:19-58:11; Ex. 4 at 144:11-145:22.) The security camera "evidence" is not objective evidence of telephone call recording.

20

Second, Del Real's audio files do not establish a firm-wide practice of recording calls for all proposed class members. The files contained limited phone conversations, on limited dates, from Del Real's phone line, and always included her as a participant. (Ex. 5 at 27:8-15, 29:7-11; 32:6-34:1; 41:23-46:9.) Del Real's recordings do not establish a global policy or illustrate that each putative class member would be affected in a common way by alleged recording. Instead, for each class member, Plaintiffs would have to establish which phone line was called, at which office, on which particular date(s), whether it was on a landline or employee cell phone, whether the FreePBX System had been installed at that office on that date, whether global recording was enabled, and whether any recording was actually made. The individualized inquiries overwhelm any common proof and defeat predominance. *See Gorss Motels*, 29 F.4th at 845.

Third, Plaintiffs rely on several instances of inadmissible hearsay to substantiate conjectures about a firm-wide policy of recording phone calls When evidence is "critical to class certification," the district court "must conclusively rule" on any admissibility challenge before determining the requirements for class certification are met, including predominance of common claims. *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813 (7th Cir. 2010). The need for admissibility determination, therefore, derived not from the form the evidence took, but its necessity in determining class certification. *Id.* at 816. Accordingly, the following "evidence" should not be considered for class certification:

(a) The disputed conversation between Conlee and Alholm, where Conlee allegedly intimated that VLG was recording phone calls in the Chicago Boeing office. (ECF 160 at 4-5.) This Court has already found that this alleged conversation was "hearsay and not accepted under Rule 807." (ECF 155 at 7.)

(b) The disputed conversation between Alholm and Gipson. (ECF 160 at 5.) Gipson expressly denied that he had any such conversation with Alholm and disavowed knowledge of recordings in a contemporaneous email to Alholm in February 2020 that stated: "Let me be clear. At no time during my employment at VLG was I ever aware of phone calls being recorded. In fact, I don't believe in any way that the allegation is

21

true." (Ex. 12 at 27:3-28:4.) This Court has already determined this hearsay without any applicable exception. (ECF 155 at 12-16.)

(c) The May 25, 2023 text messages between Penny Jackson and Alholm about an alleged conversation Penny had with Kenny Jackson. (ECF 160 at 7.) This Court has already determined that those text messages do not satisfy the requirements of Rule 803(5) and are not subject to any hearsay exception. (ECF 155 at 17-19.) Additionally, as noted by the Court, the text messages have not been authenticated by Ms. Jackson.

(d) Text messages between Del Real, Alicea, and Alvarez that purport to describe VLG's alleged reaction to Alholm's resignation. (ECF 160 at 6-7.) Plaintiffs construe VLG's reaction to Alholm's resignation as evidence of recording practices. This seeks to offer interpretative opinions about what another person's behavior means in order to show that the alleged recording practices happened. This is impermissible hearsay. *See e.g.*, *O'Connor v. Ford Motor Co.*, 2025 WL 790240, *7 (N.D. Ill.); *Foy v. City of Chicago*, 2017 WL 11886346, *6 (N.D. Ill).

Individualized issues therefore predominate over any common question, and Plaintiffs have failed to establish predominance through "evidence that is common to the class rather than individual to its members." *Messner*, 669 F.3d at 811.

## B. Class Action is Not a Superior Method of Adjudication for These Claims.

Rule 23(b)(3) requires Plaintiffs to demonstrate that "a class action [is] superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "When individual issues predominate, [a] proposed class is not superior to other methods of adjudication." *Lipton*, 289 F.R.D. at 463. A core consideration for superiority is manageability, which encompasses "the entire range of practical problems that could render the class action inappropriate for a particular suit." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 439 (N.D. Ill. 2003), quoting *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000).

For the same reasons that predominance cannot be satisfied, superiority fails. At a minimum, the Court would have to determine which VLG office and extension an individual called, on which date(s), whether call recording was enabled for that extension at the time of the call, and whether the individual's communications were actually captured.

22

WHEREFORE, for the foregoing reasons, Defendant Vrdolyak Law Group, LLC, respectfully requests that this Court deny Plaintiffs' motion for class certification, and award any further relief the Court deems just and equitable.

Dated: July 10, 2026               Respectfully submitted,

By:  s/ Erin I. Wenger              
     Robert D. Sweeney
     Erin I. Wenger
     Tristan F. Lynch
     SWEENEY SCHARKEY LLC
     230 W. Monroe Street
     Suite 1500
     Chicago, Illinois 60606
     Tel. (312) 384-0500

     *Counsel for the Vrdolyak Law Group, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I have electronically filed the foregoing with the Clerk of the Court using the

CM/ECF system which sent notification of such filing to all parties of record.


Dated: July 10, 2026                                         s/ Erin I. Wenger

24