**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL ALHOLM ET AL., Plaintiffs, v. THE VRDOLYAK LAW GROUP, LLC, Defendant. | No. 22 CV 1820<br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Daniel Alholm, Jeannette Alicea, Penny Jackson, Rodney Smith, Lucero Del Real, and Erica Villagomez believe that VLG secretly recorded their telephone conversations while each was employed there. They bring class claims against VLG for illegal wiretapping under 18 U.S.C. § 2511 and section 39-13-601 of the Tennessee Code, and for illegal eavesdropping under section 5/14-1 of chapter 720 of the Illinois Compiled Statutes. [53] at 12–13, 15.

They now move to certify the following class:

> All employees, clients, and potential clients of the Vrdolyak Law Group ("VLG") who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system.

[159]. They also propose two subclasses:

> **Illinois Subclass:** All employees, clients, and potential clients of the Vrdolyak Law Group ("VLG") who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system in Illinois.

> **Tennessee Subclass**: All employees, clients, and potential clients of the Vrdolyak Law Group ("VLG") who had a telephone conversation between November 1, 2019, and January 28, 2020, with a person using VLG's telephone system in Tennessee.

*Id.*

For the reasons that follow, plaintiffs' motion is denied.

## I. Legal Standards

A court may only certify a class under Rule 23 if it meets the requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and one of the alternatives listed in Rule 23(b). *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Plaintiffs have moved to certify classes under Rule 23(b)(3), [160] at 21, which has two more requirements: (1) predominance, and (2) superiority. *Id.* (citing *Messner*, 669 F.3d at 811). Plaintiffs must prove by a preponderance of the evidence that their proposed class satisfies the requirements of Rule 23. *Id.* Failure to satisfy any of the requirements precludes certification. *Harriston v. Chi. Tribune Co.,* 992 F.2d 697, 703 (7th Cir. 1993).

"Rule 23 is more than 'a mere pleading standard.'" *Howard*, 989 F.3d at 597 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Thus, in evaluating whether Rule 23 has been satisfied, the court must "not accept the plaintiff's assertion[s] as conclusive." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Indeed, "[i]n the face of material disputes bearing on class certification, the trial court must receive evidence, whether by affidavit, evidentiary hearings, or otherwise, and then resolve the disputes or choose between competing perspectives." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 893 (7th Cir. 2025) (*citing West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002)). "This will often 'entail some overlap with the merits of the plaintiff's underlying claim,'" *see Howard*,

989 F.3d at 597 (quoting *Dukes*, 564 U.S. at 351), and it will sometimes require "much more than a 'peek'" at the merits, *see Arandell*, 149 F.4th at 893. Nevertheless, class-certification proceedings are not a "dress rehearsal for the trial on the merits," so the court may not "resolve disputed issues that affect *only* the merits." *Id.* (emphasis added).

Ultimately:

> The trial court must do its best to maintain a delicate balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits. But the trial court is not permitted to duck hard questions by observing that each side has some support, or that considerations relevant to class certification also may affect the decision on the merits. Tough questions must be faced and squarely decided.

*Id.* at 893–94 (cleaned up).

## II. Analysis

The parties are familiar with the factual backdrop here, which the Court laid out in its opinion denying in large part VLG's earlier motion for summary judgment. *See Alholm v. Vrdolyak Law Group, LLC*, No. 22 CV 1820, 2026 WL 1194954, at *1–*5 (N.D. Ill. May 1, 2026). Where particular allegations, pieces of evidence, or facts bear on the parties' legal arguments, the Court highlights them in its analysis. That analysis begins and ends with commonality and predominance, "which," here, "overlap in ways that make them difficult to analyze separately." *Bell v. PNC Bank*, 800 F.3d 360, 374 (7th Cir. 2015).

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That means that "the class claims 'must depend upon a common

contention' that is 'capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard*, 989 F.3d at 598 (quoting *Dukes*, 564 U.S. at 350). The key is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up). Put another way, the Court must determine if the question is "capable of proof at trial through evidence that is common to the class rather than individual members." *Bell*, 800 F.3d at 375 (quoting *Messner*, 669 F.3d at 818). Even a single common question that satisfies this standard can establish commonality. *Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024) (citing *Dukes*, 564 U.S. at 359). But not just any common question will do; "[t]he 'critical point is the need for *conduct* common to members of the class.'" *Id.* (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). Finally, the Court need not resolve the common question at this stage. *Bell*, 800 F.3d at 376. Rather, plaintiffs must merely demonstrate that a question susceptible to class-wide resolution exists. *Id.* at 375.

Rule 23(b)(3) is related, but more stringent; it requires that common questions predominate over any questions affecting only individual members. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "Efficiency is the animating principle" of the predominance requirement. *Howard*, 989 F.3d at 607 (citing *Chi. Tchrs. Union v. Bd. of Educ.*, 797 F.3d 426, 444 (7th Cir. 2015)). Because "the predominance inquiry requires a court to 'understand what the plaintiffs will need to prove and evaluate the extent to which they can prove their case with common

evidence,'" the analysis begins with identification of the elements of plaintiffs' claims. *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339–40 (7th Cir. 2023) (cleaned up) (quoting *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020)).

"[T]o succeed on their [federal] Wiretap Act claims, plaintiffs must prove that VLG (1) intentionally (2) acquired the (3) contents of (4) their oral communications (5) using a device." *Alholm*, 2026 WL 1194954, at *11 (citing 18 U.S.C. §§ 2510(4), 2511(1)(a); and then citing *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025)). "The same is true of their claims under the Tennessee wiretap statute, which is 'virtually identical to its federal counterpart.'" *Id.* (quoting *State v. King*, 437 S.W.3d 856, 866–67 (Tenn. Crim. App. 2013)). "Similarly, the Illinois eavesdropping statute prohibits 'knowingly and intentionally' using an 'eavesdropping device, in a surreptitious manner, for the purpose of overhearing or recording any private conversation' without the consent of all the parties to the conversation." *Id.* (cleaned up) (quoting 720 ILCS 5/14-2(a)(1), (2)).

For all three claims, the question that towers over all others is whether calls made over VLG's phone system were recorded. Plaintiffs say as much throughout their class-certification brief. *See* [160] at 14, 15, 18; [176] at 1. And every other question—whether the recording was intentional, whether the system used for the recording was a "device" or "eavesdropping device," and, for the Illinois claim, whether the recording was surreptitious and without consent—assumes that calls

were recorded in the first place. If the answer to the call recording question is "no," all other questions fall away.

So, the Court first considers whether that question is a common question that can be answered, yes or no, using common evidence. *See Bell*, 800 F.3d at 375; *Allstate*, 966 F.3d at 604 ("At class certification, the issue is not whether plaintiffs will be able to prove these elements on the merits, but only whether their proof will be common for all plaintiffs, win or lose."). Plaintiffs intend to rely on several pieces of common evidence to establish that VLG recorded calls made over its phone system, [160] at 4–7, but most of the evidence they identify will not be admissible at trial for that purpose. *See Bell*, 800 F.3d at 375 (asking courts to determine if the question is "*capable of proof at trial* through evidence that is common to the class rather than individual members" (emphasis added)).[1]

[1] In *Messner*, the Seventh Circuit held that district courts must rule on the admissibility of expert testimony that is "'critical to class certification' … before it may rule on a motion for class certification." 669 F.3d at 812 (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010)). Some district courts, including this one, have applied the rules of evidence more loosely when considering non-expert evidence at class certification. *See, e.g.*, *Vera v. HomeDeliveryLink, Inc.*, No. 23 CV 14278, 2025 WL 20468, at *4 n.5 (N.D. Ill. Jan. 2, 2025). But here, where discovery is complete, summary judgment is complete, and the Court is tasked with evaluating the availability of common evidence to establish a key issue at an upcoming trial, the Court sees no reason not to apply the Federal Rules of Evidence in full. *See also Hansen v. Country Mut. Ins. Co.*, No. 18 C 244, 2023 WL 6291629, at *7, *11 (N.D. Ill. Sept. 25, 2023) (limiting its analysis of class certification to evidence "admissible under the Federal Rules of Evidence" where the parties had already engaged in, among other things, "extensive, long-running discovery"). This is not a situation, in other words, where plaintiffs have moved for class certification "[a]t an early practicable time," *see* Fed. R. Civ. P. 23(c)(1)(A), and, therefore, where objections based on admissibility reasonably could be considered premature. In any case, plaintiffs do not argue that the Court should not strictly apply the Federal Rules of Evidence to resolve its motion. *See generally* [160], [176].

First, “evidence that Eddie Vrdolyak, managing partner of VLG, engaged in pervasive surveillance of his employees through a series of video cameras … and encouraged employees to monitor subordinates,” [160] at 4, might be admissible for the purpose of showing intent, *Alholm*, 2026 WL 1194954, at *12, but it is not admissible for establishing that VLG actually recorded calls made over its phone system. Federal Rule of Evidence 404(b)(1) prohibits using “[e]vidence of any other … act … to prove a person’s character in order to show that on a particular occasion the person acted in accordance with the character.” Fed. R. Evid. 404(b)(1). This is just such evidence; as VLG points out, the security cameras “are separate and distinct equipment from the FreePBX phone system,” [173] at 15. The same is true of evidence that “[t]he VLG camera system [] recorded sound,” [160] at 4.

Second, evidence that Mike Conlee and Chinua Gipson previously said that VLG had been recording calls, *id.* at 4–5, is hearsay and cannot be used to prove that VLG had been recording calls. *Alholm*, 2026 WL 1194954, at *5–*7. Similarly, text messages from Penny Jackson stating that Kenny Jackson told her that VLG attorney Benjamin Kelly told him that Kelly could access VLG’s call recordings, [160] at 7, are multi-layer hearsay and cannot be used to prove the truth of Kelly’s statements. *Alholm*, 2026 WL 1194954, at *7–*8; Fed. R. Evid. 801, 802, 805. Text messages between three VLG employees (who are also plaintiffs in this litigation) from January 2020 stating “that VLG managers were ‘freaking out’ after Mr. Alholm confronted VLG about its call recording practices” are inadmissible hearsay as well. [160] at 6. Contrary to plaintiffs’ contention, they are not admissible “present sense

impressions." [176] at 6. They describe events that happened "yesterday" and "this week," [160-13], so they were not "made while or immediately after" the events they describe. Fed. R. Evid. 803(1). Courts recognize that "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." *See United States v. Boyce*, 742 F.3d 792, 797 (7th Cir. 2014) (quoting Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules). But plaintiffs advance no argument as to why "precise contemporaneity" was not possible here and, if so, why a statement made, at best, a day after the narrated event was made after only "a slight lapse." *Compare with id.* (victim's statement to the 911 operator that defendant had "just" hit her and that victim had "just" run upstairs to her neighbor's house was made "nearly immediately after her observations," for purposes of present-sense-impression exception to hearsay rule). Nor are the text messages between the three VLG employees "recorded recollections," [176] at 6, as plaintiffs have not established that they are "on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately." *See* Fed. R. Evid. 803(5).[2]

[2] Under the heading of "Common Evidence Relating to VLG's FreePBX System," plaintiffs also discuss evidence that VLG allowed its phone system server to be repurposed and did not maintain backups of its phone system data. [160] at 5–6. Plaintiffs discuss this evidence as context for the Del Real recordings, which the plaintiffs present as common evidence of a common question. *Id.* at 6 ("Given Defendant's failure to preserve such material evidence, proposed class members developed evidence that Plaintiff Lucero Del Real in early 2020 inadvertently discovered a database of call recordings… ."). To the extent plaintiffs consider evidence that VLG did not maintain backups of its phone system to be, in and of itself, common evidence of a common question, plaintiffs never make that argument. In particular, plaintiffs never explain how that evidence would provide a common answer to the question of whether VLG recorded class members' calls. *See Dukes*, 564 U.S. at 350. The Court will not make plaintiffs' arguments for them. *See Tyler v. Runyon*, 70 F.3d 458, 470 (7th Cir. 1995). To be sure, the Court recognizes that the destruction of evidence could lead to an assumption "that [the destroyed] evidence would have been unfavorable to" VLG. *See*

The last bucket of evidence includes audio recordings of the phone calls of plaintiff Lucero Del Real and testimony about those recordings.[3] [160] at 6–7. But the recordings are only of Del Real's calls, which involve relatively few other class members. So, for the recordings to constitute common evidence, there must be "some glue" holding Del Real's calls together with the calls of the other class members—some fact showing that if Del Real's calls were recorded then those of other class members were as well. *See Dukes*, 564 U.S. at 352.

Plaintiffs contend that the content of the recordings provides the glue because, they represent, the recordings include sounds that could only have been recorded using a system-wide (as opposed to line-by-line or user-activated) recording feature. [160] at 7. They point out that Dean Walker, a consultant who helped administer VLG's phone system, [173-7] at 39:13–17, 61:8–63:12, testified in his deposition that only an administrator could "turn on recording for all calls to include .... transfer, hold music, [and] ringing." [125-2] at 1472:16:20–17:10. He further explained that "an individual user-activated call recording … wouldn't … record … the front desk answering the call and then transferring it to that user." *Id.* at 1472:17:10–15. But Walker also testified that if an extension were being recorded, the recording would

Committee on Pattern Civil Jury Instructions of the Seventh Circuit, Federal Civil Jury Instructions of the Seventh Circuit, at 27 (2017). But, again, plaintiffs do not make this point. Even assuming they did, the Court does not see how a general assumption of unfavourability would result in a further assumption that the destroyed evidence—data from VLG's phone system—would have been evidence of recording "that is common to the class." *Bell*, 800 F.3d at 375.

[3] Also in this bucket is expert testimony about the file names and metadata of the Del Real recordings. [160] at 7. But that testimony is only relevant to the authenticity of the recordings.

include hold music if the extension were put on hold and picked back up. *Id.* at 1481:52:6–18. Plaintiffs argue that Del Real's recordings exhibit characteristics consistent with Walker's description of system-wide call recording because the recordings include, they say, "calls being answered by one extension, placed on hold (including VLG's hold message), and transferred to another extension." [160] at 7.

The Court has reviewed all the recordings, however, and does not agree with plaintiffs' characterization of the evidence. Some recordings appear to be of calls made by Del Real and others of calls received by Del Real, but each begins the moment the call was answered by the recipient and ends the moment the phone was hung up or the call was transferred from Del Real's extension. No recordings include any ringing; none include any conversations that didn't involve Del Real; none include any audible transfer.

There are a few call recordings that include hold music, but the music does not seem to be coming from anywhere other than Del Real's extension. *See* [125-2] at 1481:52:6–18 (explaining how recording of an extension could include hold music). In three of those recordings, Del Real tells the caller that he or she is being placed on hold, the hold music begins to play, and the hold music stops when Del Real returns to the call.[4] In two other recordings, Del Real tells the caller that he or she is being transferred, the hold recording plays for a few seconds (six seconds in one, two

[4] *See* [140] at external-459-8008-20200127-141206-1580155969.16792; *id.* at external-459-8008-20200128-100318-1580227442.22015; *id.* at external-459-4004-20200127-131033-1580152260.15685.

seconds in the other), and then the call recording ends.[5] There is no audible indication that the transfer occurred, such as ringing, an answer on the new line, or even a click. In short, the contents of the recordings don't exhibit the characteristics of system-wide call recording that Walker identified. This cannot be the glue holding together class members' claims.

Plaintiffs also contend that the phone system could *only* record calls on a system-wide basis. [160] at 2–3. If true, that fact would be the "glue" making the Del Real recordings common evidence, as the system could have recorded Del Real's calls only if it was also recording every other call made on the system. If false, the recordings would not be common evidence, as plaintiffs have not identified any other admissible evidence that would allow a factfinder to determine whether the recordings were made using a system-wide or a line-by-line recording feature.

In a situation like this one—where commonality turns on the truth or falsity of a specific fact—courts must resolve any factual dispute. *See Arandell*, 149 F.4th at 886–87 (vacating certification of nationwide class in antitrust case due to the district court's failure "to engage more fully with the conflicting expert evidence" in order to determine whether a national market existed, which was determinative of plaintiffs' ability to use common proof to show antitrust impact); *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) ("A district court must also resolve disputes about historical facts if necessary to

[5] *See* [140] at external-459-3123200081-20200127-134256-1580154176.16297; *id.* at external-459-4004-20200127-151300-1580159589.18684.

determine whether the plaintiffs' evidence is capable of resolving a common issue central to the plaintiffs' claims."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983–84 (9th Cir. 2011). For example, in *Ellis*, an employment discrimination case, the appellate court vacated the district court's certification of a nationwide class because the district court found commonality without first resolving a factual dispute over whether promotional decisions were made at the local level or by upper management. *Id.* at 983 n.7 and accompanying text. "If the decisions were made at the local warehouse," it reasoned, "[p]laintiffs likely cannot show this decisionmaking process affected the class as a whole," so the plaintiffs "will be unable to show that all the employees' [] claims will in fact depend on the answers to common questions." *Id.* (quoting *Dukes*, 564 U.S. at 356). Thus, in *Ellis*, as here, commonality depended on resolution of a factual dispute about the "glue" holding together the class.

The Court therefore must examine the evidence to determine whether plaintiffs have established by a preponderance that VLG's phone system could only record calls on a system-wide basis.[6] *See Howard*, 989 F.3d at 597. But first, some background is necessary. VLG hired Mike Conlee to administer its phone system around October 4, 2019. [173-2] at 150:9–21. Conlee was tasked with providing a voice-over-IP phone system, and he first installed a phone system that operated on a software platform called 3CX in at least one of VLG's four offices. *Id.* at 31:7–12,

[6] The Court previously held in its order denying in part VLG's motion for summary judgment that there was sufficient evidence on this question for plaintiffs to survive summary judgment, *Alholm*, 2026 WL 1194954, at *12, but resolving plaintiffs' class-certification motion calls for a different standard.

158:6–23. But Conlee soon realized that 3CX, which was only capable of handling ten calls at a time, would not suffice for a phone system serving all four of VLG's offices, *id.* at 36:2–12, so he switched to a platform called FreePBX, *id.* at 91:22–92:4. FreePBX is a graphical user interface that sits on top of an open-source communications engine called Asterisk. [173-7] at 35:8–16; [125-2] at 1511:57:14–1512:58:10. FreePBX was the platform for VLG's phone system at the time that Del Real allegedly found and downloaded recordings of her calls. [160-12] ¶ 2; [173-2] at 192:13–18.

So, the more precise question is whether the version of FreePBX in use when Del Real purportedly found recordings of her calls could only record calls on a system-wide basis. On this question, Conlee testified in his deposition that call recording could only be activated "on the back end" and system-wide. [173-2] at 51:5–22. Jeffrey Norris, who helped Conlee get started in providing voice-over-IP services, [173-15] at 12:21–13:4, 14:11–22, testified that a phone system administrator could not "specifically say, 'I want this line recorded,'" adding that "[i]t's an all-or-nothing thing from the administration panel." *Id.* at 33:19–22. Unlike Conlee, however, Norris also testified that an end user could dial a key code that would activate recording for a specific call. *Id.* at 33:14–25. Walker, unlike Conlee and Norris, testified that call recording could be done globally, but that it "wouldn't need to be global [sic] recorded" because recording also could be "turned on for [one] extension only." [173-7] at 125:17–23; *see also, e.g.*, *id.* at 76:3–11, 78:24–79:3.

Because there is testimony pointing in multiple directions—three people involved in setting up or administering VLG's phone system saying three different things—the Court must analyze the conflicting testimony and weigh it accordingly. Although class certification proceedings are not a "dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, as the Court explained earlier, trial courts faced with material disputes bearing on class certification "must receive evidence, whether by affidavit, evidentiary hearings, or otherwise, and then resolve the disputes or choose between competing perspectives." *Arandell*, 149 F.4th at 893 (citing *West*, 282 F.3d at 938).[7]

That exercise sometimes involves weighing the credibility of fact witnesses whose testimony is presented in the form of affidavits or deposition transcripts. *See Bell*, 800 F.3d at 371 ("For class certification purposes, a judge need not accept the plaintiff's assertion that she met the requirements of Rule 23 as conclusive; instead 'the judge would receive evidence (*if only by affidavit*) and resolve the disputes before deciding whether to certify the class.'" (emphasis added) (quoting *Szabo*, 249 F.3d at 676)); *see also, e.g.*, *DePyper v. Roundy's Supermarkets Inc.*, No. 20 C 2317, 2025 WL 2430460, at *7–*8 (N.D. Ill. Aug. 22, 2025) (resolving credibility dispute and concluding that plaintiffs failed to show predominance because they "give little reason to put dispositive value in their 'unhappy camper' depositions in the face of conflicting 'happy camper' declarations"); *Loonsfoot v. Stake Ctr. Locating, LLC*, No. 3:23-CV-

[7] Neither party requested an evidentiary hearing on plaintiffs' class certification motion, so the Court proceeds with the parties' written submissions.

03171-DWD, 2025 WL 2222986, *13–*14 (S.D. Ill. Aug. 5, 2025) (commonality not satisfied after court found, as part of the "rigorous analysis necessary for Rule 23 certification," that declarations relied on by plaintiff were not credible); *Shaw v. Daifuku Servs. Am. Corp.*, No. 1:21-cv-01084-KES-CDB, 2024 WL 1526733, at *14–*15 (E.D. Cal. Apr. 9, 2024) (plaintiff failed to satisfy commonality and predominance after court weighed the credibility of fact witnesses' conflicting declarations); *In re Niaspan Antitrust Litigation*, 67 F.4th 118, 130 (3d Cir. 2023) ("Trial courts must engage in a rigorous analysis and find each of Rule 23's requirements met by a preponderance of the evidence before granting certification. They must do so *even if it involves judging credibility*, weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims." (emphasis added) (cleaned up)).

The Court does not find Walker's testimony less credible than Conlee's and Norris's testimony on the issue of whether VLG's phone system could only record calls on a system-wide basis. Walker was directly involved with administering VLG's FreePBX phone system, [173-7] at 61:8–63:12, and at that time, he had already installed several other FreePBX phone systems, *id.* at 35:17–24, 45:1–6. He also exhibited detailed knowledge of the different ways the system could record and the steps that would need to be taken to activate call recording. *See id.* at 76:3–84:4. In addition, without prompting, he immediately recognized the user panel by which Del Real discovered her recordings as a user panel from the FreePBX system. [125-2] at 1472:18:23–19:21.

In his deposition, Conlee did not exhibit the detailed knowledge that Walker exhibited. Rather, he repeatedly insisted that he has no knowledge of how call recording would be activated in the FreePBX system because he was learning the system on the fly and was never asked about call recording. [173-2] at 51:10–13, 52:2–18. In addition, he testified that he was unfamiliar with "code recording," *id.* at 192:22–193:2, which both Walker and Norris recognized as a feature of the FreePBX system, [173-7] at 73:14–21, 75:3–6, 81:23–82:2; [173-15] at 33:14–34:2. Conlee's testimony is contradicted by both Walker and Norris—who only know each other in passing, *see* [173-7] at 142:10–143:11—in other ways, too. For example, Conlee testified that he installed the 3CX system first at VLG's Tinley Park location, [173-2] at 158:8–15, but Walker and Norris testified that the 3CX system was installed first at VLG's Riverside location, [125-2] at 1471:12:4–8; [173-15] at 38:5–16. Conlee also repeatedly testified to lapses in memory when discussing the phone system. *See, e.g.*, [173-2] at 35:15–20 ("I don't recall [how long it took to install the 3CX system at any location]. It's all a blur."); *id.* at 180:10–11 ("For whatever reason in my mind I'm getting VLG confused with another customer."). At bottom, Conlee's credibility suffers due to failures in recollection and lack of knowledge.

Norris, unlike Walker, has no personal knowledge of VLG's FreePBX system. He testified that he provided some guidance to Conlee on an as-needed basis as Conlee first learned about voice-over-IP services and that he helped Conlee install the 3CX system at VLG's Riverside location. [173-15] at 12:21–13:19, 14:11–22, 38:6–16. But Norris also testified that he didn't even know that VLG had switched to a

FreePBX system until he read Conlee's deposition transcript. *Id.* at 27:5–15, 32:12–33:11, 39:13–19, 62:9–13. He also testified inconsistently throughout the deposition. For one thing, he testified that he was "familiar with … [the] Asterisk-based FreePBX platform as it existed in 2019 and 2020," *id.* at 55:2–7, but also testified that he was not familiar with the "feature sets" in FreePBX during that same time period, *id.* at 61:5–23. That inconsistency creates credibility problems, but it also implicates Norris's personal knowledge because, according to Norris's testimony, call recording is "instigate[d]" differently in different Asterisk-based systems. *Id.* at 56:18–57:10. Another inconsistency goes directly to the question of the FreePBX system's recording capabilities. Norris first testified that any recording "on the individual user level would have to be instigated by the user by a three-digit code that not many people were aware even worked." *Id.* at 54:21–24. But he later testified that an individual could record calls by "log[ging] in through a user panel." *Id.* at 61:5–23. In light of Norris's limited personal knowledge of VLG's FreePBX phone system and his internally inconsistent testimony, the Court sees no reason to give his testimony more than minimal weight.

To be sure, Walker signed a declaration about seventh months before his deposition that stated that "[c]all recording [on VLG's system] was controlled by a main switch that turned it on or off for the entire phone system." [160-3] ¶ 7. The Court doesn't credit this declaration for two reasons. First, Walker was incredibly consistent and precise throughout his deposition in explaining exactly how the FreePBX system could record individual extensions or lines. *See* [173-7] at 76:3–84:4;

125:17–23. Second, Walker testified that the declaration was "prewritten for [him]," *id.* at 118:21–119:4, and plaintiffs have not contested this assertion. Of course, such practice is common in civil litigation, but that is not a reason for the Court to weigh Walker's declaration more heavily than his deposition testimony. Walker's consistent and unequivocal testimony, obtained through live examination, is significantly more persuasive than a declaration that he signed but did not write. *See United States v. Mandel*, 578 F.2d 668, 672 (7th Cir. 1978) ("An affidavit, which can be and often is prepared by someone other than the affiant, is less likely to reflect fairly and accurately the affiant's own recollection or perception than is spontaneous oral testimony."); *Cent. States, Se. & Sw. Area Pension Fund v. Neiman*, No. 99 C 1181, 2000 WL 310285, at *6 (N.D. Ill. Mar. 24, 2000) ("A deposition carries more weight because an individual testifies in his own words in response to questioning and cross-examination, whereas an affidavit is generally drafted by an attorney."); *cf., e.g.*, *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (explaining that the sham-affidavit rule prevents a party from relying on a declaration that contradicts the party's prior sworn testimony).

The Court therefore finds, for purposes of resolving their class-certification motion, that plaintiffs have failed to demonstrate that it is more likely than not that VLG's phone system could only record calls on a system-wide basis. For that reason, the Del Real recordings do not constitute common evidence of call recording by VLG, and without such common evidence, the question of whether VLG recorded the calls

of each class member—“undeniably,” the “central issue in this case,” [160] at 18—cannot be a common question. *See Bell*, 800 F.3d at 375.

That’s not to say there are no common questions. The question of whether VLG’s FreePBX phone system was able to record phone calls only system-wide, which the Court just considered, is one. But that question does not predominate over the question of whether VLG actually recorded the calls of each plaintiff.

A common question predominates when “a failure of proof on the common question would end the case and the whole class will prevail or fail in unison.” *Bell*, 800 F.3d at 378 (cleaned up). In *Bell*, for example, a statewide class of bank employees sued a bank for violating state and federal laws through its unofficial policy of denying overtime pay. *Id.* at 372. The bank argued that the question of whether it had an unofficial policy of denying overtime pay, even if common to the class, did not predominate because its answer would “not resolve a key issue for all plaintiffs.” *Id.* at 378. That is because, the bank said, if the answer was “no,” then the class members would be “left with nothing in common and each class member [would have to] prove his or her claim individually.” *Id.* The Seventh Circuit found this to be “a convincing argument,” but for one problem: the proposed class claim was about the illegality of the alleged unofficial policy, so “[i]f, on the merits, the district court were to determine that there was no such unofficial policy, … then all of the class members’ claims would fail in unison.” *Id.* Any individual claim “would be based on an entirely different legal theory.” *Id.*

The common question the Court considers here—whether VLG's FreePBX phone system was only able to record system-wide—is different. It does not ask whether VLG had a policy or even a practice of recording plaintiffs' calls. It simply asks a factual question about the capabilities of the phone system. Unlike the question in *Bell*—whether a policy existed—a "no" answer does not mean that the claims plaintiffs assert *must* fail as to all class members. *See* [53] ¶ 27 (alleging that "all phone calls made on VLG phones were being recorded and existed in a database on the computer" without specifying the mechanism by which the calls were recorded); *see also id.* ¶¶ 29, 49, 52(a). Rather, it means that the admissible evidence of call recordings that plaintiffs have proffered cannot serve as common evidence, so the question of whether VLG recorded class members' calls becomes an individualized one. Because "failure of proof" would not "end the case" and cause "the whole class [to] fail in unison," *Bell*, 800 F.3d at 378, the question of whether VLG's FreePBX phone system was only able to record system-wide does not predominate.

Plaintiffs suggest two other common issues: "VLG's concealment of its recording practice," [176] at 2 n.1, and "each phone user's expectation of privacy," *id.* at 3. But neither of those issues, on their own or together, predominate over the key question of whether VLG recorded any or all of the calls made over its system. Because that question is "*the* central issue in this case," [160] at 18 (emphasis added), and, owing to a lack of common evidence, is not a common one, the proposed class cannot satisfy Rule 23(b)(3)'s predominance requirement, and the class cannot be certified.

At bottom, the Court recognizes that "[a] decision to deny or grant certification can have a considerable impact on the playing field of litigation." *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098, 1101 (7th Cir. 2019). That is as true in this case as in any other, as plaintiffs seek substantial statutory damages on behalf of a broad class comprising "[a]ll employees, clients, and potential clients of [VLG] who had a telephone conversation … with a person using VLG's telephone system." [159]. Having conducted the requisite "rigorous analysis," *Red Barn*, 915 F.3d at 1101, the Court cannot certify a class based on a few excerpts of testimony it does not credit and call recordings the contents of which do not live up to plaintiff's characterization.

Because the class's failure to satisfy predominance is enough to preclude certification, the Court declines to assess whether the proposed class satisfies the other requirements of Rule 23(a) and Rule 23(b)(3). *See Harriston,* 992 F.2d at 703.

## III. Conclusion

For the foregoing reasons, plaintiffs' motion for class certification is denied. [159].

ENTER:

Georgia N. Alexakis
United States District Judge

Date: 10/15/2026