IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL ALHOLM, JEANNETTE ALICEA, LUCERO DEL REAL, DANIEL GALLAGHER, PENNY JACKSON, RODNEY SMITH, and ERICA VILLAGOMEZ, individually and on behalf of those similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-01820 |
| v. | ) | Hon. Georgia N. Alexakis |
| THE VRDOLYAK LAW GROUP, LLC, | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

Plaintiffs Daniel Alholm, Jeannette Alicea, Lucero Del Real, Daniel Gallagher, Penny Jackson, Rodney Smith, and Erica Villagomez (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 37 and 26(b), respectfully move this Court to impose sanctions on Defendant Vrdolyak Law Group, LLC, ("VLG") for spoliation of evidence, up to and including default judgment.

VLG through its agent Mike Conlee and his company Sipcomm, Inc. ("Sipcomm") exercised exclusive custody, control, and possession of electronically stored information ("ESI") central to this case: the single Sipcomm server on which all data pertaining to VLG's FreePBX phone system was stored. VLG's duty to preserve—and ensure that its phone system vendor preserve—that ESI arose first with Plaintiff Alholm's resignation letter of January 24, 2020, which notified VLG of specific legal claims against it for allegedly using the FreePBX system to record users' phone calls. VLG undeniably acknowledged the evidentiary value of that data on February 14, 2020, when it sued Mr. Alholm for Defamation and related counts based on his allegations of

call recording. (Ex. 1, Complaint, *Vrdolyak Law Group, LLC v. Alholm*, Circuit Court of Cook County Illinois, Case No. 2020CH01852).

Despite its clear duty to preserve evidence relevant to litigation, neither VLG—a litigation firm staffed and led by litigators—nor its outside litigation counsel Robert Sweeney of Sweeney Scharkey LLC—sent a preservation hold to Sipcomm, nor made any effort to preserve that data. Instead, six months into VLG's suit against Alholm, VLG changed telecommunications providers and allowed Sipcomm to wipe all its FreePBX phone system data from the server, without so much as making a backup of the data, and repurpose the server for other uses. Since that time, VLG has strategically—and successfully—wielded the absence of this crucial evidence as a weapon against class certification and in its own motion for summary judgment.

Because VLG's destruction of evidence was so flagrant that it can only be attributed to intent, and because the loss of evidence is manifestly and extensively harmful to the resolution of this proposed class litigation on its merits, Plaintiffs respectfully move this court to enter default judgment against VLG as the most appropriate remedy available. In the alternative and upon a finding of prejudice but not intent, Plaintiffs move for an adverse jury instruction against VLG.

## STATEMENT OF FACTS

### A. VLG establishes and operates its FreePBX phone system through its agent, Mike Conlee, and his alter-ego companies, Surge IT and Sipcomm.

VLG contracted with a single provider, Mike Conlee, for both its information technology infrastructure (beginning in 2017) and for its telephone service (beginning October 2019). Conlee operated his IT company under the name Surge IT Support, Inc., and his telephone networking company under the name Sipcomm. (Ex. 2, Conlee Tr., p. 118:12-21). At the time, VLG claims it was unaware that Conlee had a financial interest or direct involvement in Sipcomm, (Ex. 5, Armbruster Tr., p. 21:16-22:19; Ex 4, Vrdolyak Tr., p. 93:12-19), though Conlee maintains he

disclosed the relationship to Eddie Vrdolyak, Steve Armbruster, and other firm leaders. (Ex. 2, p. 142:11-23.)

Although its October 2019 contract with VLG listed Jeff Norris as the Sipcomm signatory (Plaintiffs' Statement of Additional Material Facts in Opposition to Motion for Summary Judgment ("SAMF") [Dkt. 132-1] at ¶ 7), the Court has already and recently considered the limited extent of Norris' involvement in administering the VLG phone system. (Dkt. 195 at p. 16) (noting that Norris "has no personal knowledge of VLG's FreePBX system.")

According to Mike Conlee, "VLG had the final say" about all high-level IT decisions, including what type of phone system was used and whether or not a call recording feature was activated. (SAMF ¶ 2.) with Conlee describing his role as: "[…] more like an advocate, or I was advisory, I guess, would be a better word." Asked, over counsel's objection, "If VLG ever took the position that it didn't know what was going on with its phone system because that was all something Mike Conlee and Surge did, would that be an accurate statement?" Conlee testified, "No. The answer's no. They would know." (Ex. 2, Conlee Tr., 120:16-121:1). Vrdolyak is in charge of all aspects of the firm, has ultimate authority over all of VLG's affairs, and "everything . . . go[es] through him." (*Id.*)

In the time period at issue here, inclusive of January 24, 2020 through August 2020, VLG through its agent Mr. Conlee stored the data for the FreePBX system on a Sipcomm-owned server housed at QTS Data Centers in Chicago. Ex. 2, Conlee Tr., p. 40:2-24; Dkt. 132-1, SAMF ¶ 8) Contrary to customary telecom industry practices, Mr. Conlee did not maintain backups of the Sipcomm data. (Dkt. 132-1, SAMF ¶ 8).

**B. Plaintiff Alholm notifies VLG of potential wiretapping claims against them on January 24, 2020; VLG immediately consults with legal counsel and Sipcomm but takes no steps to preserve its phone data.**

In VLG's words, Mr. Alholm in his January 24, 2020, resignation letter "accused VLG of a host of unethical and illegal conduct relating to the non-consensual recording of phone calls at all VLG offices," and specifically of "violating Federal Law (18 U.S.C. 2511) Illinois law (720 ILCS 5/14-1) and Tennessee law (Tenn. Code Ann. § 39-13-601) by illegally recording phone conversations." (Ex. 1, ¶¶ 16-18). Alholm's letter further notified VLG that he had reported his allegations to the Tennessee and Illinois attorney licensure boards, that the allegations were "currently the subject of multiple bar association investigations and … likely to be the subject of federal and state criminal investigations." *Id*. By this point, VLG was already represented by attorney Robert Sweeney, who represented VLG continuously on this matter up to and including the present. (Ex. 4, Vrdolyak Tr., 11:14-16).

By January 25, 2020, VLG had apparently conferred with counsel when it requested that Alholm "immediately contact counsel for VLG" to "discuss his very serious allegations" and requested that he provide VLG's counsel with the name of his sources and any other "evidence or information" he had to support his allegations. (Ex. 1, ¶ 19). On Jan. 24 or 25, "VLG also contacted its IT consultant to determine whether the phone system was, or could be used, as Alholm alleged." (*Id*. at ¶ 21).

VLG was also contacted "[w]ithin days of Alholm's resignation … by both the Tennessee Board of Professional Responsibility ('TBPR') and the Illinois Attorney Registration and Disciplinary Commission ('IARDC') seeking responses to communications Alholm had sent those organizations prior to his resignation claiming that VLG was improperly and illegally recording phone communications at all of its offices." (*Id*. at ¶ 24).

Despite consulting with "its IT consultant" (presumably Conlee) on January 24 or 25 regarding Alholm's allegations (Ex. 1, ¶ 21), VLG did not ask Sipcomm to place a litigation hold on VLG's phone system data or take any comparable step to preserve it.

### C. VLG sues Plaintiff Alholm in Illinois, arguing that its FreePBX phone system was not technically capable of recording phone calls; six months later VLG's agent Mike Conlee deletes the server containing the disputed phone system's data.

VLG, again represented by Mr. Sweeney, sued Mr. Alholm in the Circuit Court for Cook County, Illinois on February 14, 2020, alleging that Alholm's accusations of phone recording constituted Defamation, Breach of Fiduciary Duty, Defamation both *per se* and *per quod*, False Light, and Tortious Interference with Business Expectancy. (*Id*. at ¶ 45-77). Every one of these counts incorporates the factual allegation that the call-recording accusations were "false." *Id*.

Mr. Vrdolyak, an experienced litigator, acknowledges that by filing suit, VLG was "almost guaranteeing that the issue of phone recordings are going to come to light and be part of [the] public record." Ex. 4, Vrdolyak Tr., p. 179:7-12.

Again, there is no indication in the record that VLG issued a preservation hold to Sipcomm, even informally, to preserve the FreePBX data.

### D. Six months after VLG files its Illinois lawsuit against Plaintiff Alholm alleging defamation, VLG destroys ESI central to its claims and Mr. Alholm's defenses in that suit.

In August 2020, six months into VLG's suit against Alholm regarding his allegedly defamatory statements about its call recording practices, VLG decided to change telecommunications providers. The reason for this transition, according to Armbruster, is that because VLG had switched IT providers from Conlee's Surge IT and over to CIO, "it was kind of just a natural progression that we were going to switch over to them [CIO] for the phones." (Ex. 5, Armbruster Tr., p. 55:17-19).

Once VLG's contract with Sipcomm ended in August 2020, the Sipcomm server was deleted and repurposed at a data canter in St. Charles, Illinois. (Ex. 2, Conlee Tr., pp. 41:20-42:8).

Steve Armbruster, a *cum laude* law graduate and seasoned litigator at VLG[1] testified that based on Conlee's denials that recording was possible on the FreePBX system, he did not consider the Sipcomm server to have evidentiary value:

> Once we were told by the IT people and the SIPComm people that there were no audio recordings and it [recording calls] wasn't authorized and it wasn't possible, I don't know what there would be to preserve. I don't know what evidence there would be.

(Ex. 5, Armbruster Tr., p. 103:12-20.).

**E. Having destroyed all relevant data, VLG repeatedly denies the existence of call recordings.**

Discovery proceeded in the Illinois litigation. Mr. Alholm in his interrogatories requested that VLG "Identify all audio and video recordings made by VLG between March 15, 2017 and February 1, 2020" (Ex. 6, Plaintiff's Interrogatory Answers, ¶ 13) and "Describe" any such recordings "that were erased or destroyed between March 15, 2017 and the present. …" *Id*. at ¶ 14). VLG in its December 5, 2022, response denied "ever making any audio recordings" or "ever directing any employee, agent or other individual to make such recordings." *Id*.

Mr. Alholm further requested production of "[a]ll documents and communications relating to the audio/video recording capabilities of the technology, equipment, or systems in VLG's Nashville office and/or the audio/video recording capabilities of the technology, equipment, or systems in any VLG office." (*Id*. at ¶ 12) VLG objected but stated "VLG will produce non-privileged documents and communications regarding the status of the call recording feature of VLG's telephone system. Investigation continues."

[1] Profile of Steven C. Armbruster, https://www.vlglaw.com/steve-armbruster

In response to Mr. Alholm's request for production of "[c]opies of audio files evidencing any and all unprivileged telephone conversations recorded by VLG from March of 2017 through February 1, 2020," VLG stated that "it has no knowledge of any such files in its possession, custody, or control." (Ex. 7, "Plaintiff's Responses to Defendant's Requests For Production" at ¶ 8).

Plaintiffs in the instant litigation similarly sought the Sipcomm phone data, requesting that VLG produce "all Documents and ESI relating to the design, capabilities, features, and/or implementation of Your Telephone Systems, including but not limited to instruction manuals, marketing materials, contracts, engagement agreements, and technical specifications" (See Ex. 8, Pltfs. RFPs ¶ 1) and "all recordings of internal or external calls placed using your Telephone System," (*id.*, ¶ 5), and other related requests (*id.*, ¶¶ 1-5, 7-8).

In an interrogatory response served February 6, 2023, Defendants again tacitly admit they made no effort to examine or preserve the Sipcomm server:

> 5. Identify and describe all actions taken by VLG to investigate whether its Telephone System was able to record calls and/or was actually recording calls, including but not limited to when VLG first learned of any allegation that its Telephone System was recording calls.
>
> RESPONSE: VLG first learned of the allegation when Alholm submitted his resignation letter on January 24, 2020. Since then, VLG has made inquiries of Michael Conlee (of Surge IT Support), Tomas Cervera (of CIO Landing), Dean Walker (of Surge IT Support), and Chinua Gibson (a former VLG employee). All have responded in writing, and their responses have previously been provided to Alholm. Further, VLG has requested repeatedly, for three years, that Alholm provide evidence supporting his allegations in his possession. Investigation continues.

(Ex. 9, Defs. Resp. to Pltfs. Interrogatories ¶ 5)).

On January 3, 2024, Plaintiffs also served discovery requests seeking, *inter alia*, "Documents sufficient to identify all telephone communications between VLG personnel and VLG

clients between October 4, 2019, and September 30, 2020 [….]" Ex. 3, Plaintiffs' Second RFPs, No. 2. In response to Plaintiffs' supplemental requests, VLG again objected and declined to produce responsive information. *Id*. In truth, VLG had not preserved the evidence.

## STANDARD OF REVIEW

In the Seventh Circuit, discovery decisions including Rule 37 sanctions are reviewed for abuse of discretion. *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 719 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 1859, 224 L. Ed. 2d 360 (2026) (affirming dismissal of complaint as sanction under Rule 37(e); district court undertook reasoned analysis and "ultimately found that Pable intentionally spoliated two categories of ESI and dismissal was appropriate to remedy the resulting prejudice) (citing *Wanko v. Bd. of Trs. of Ind. Univ.*, 927 F.3d 966, 969 (7th Cir. 2019)). Factual findings pursuant to those sanctions are reviewed for clear error. *Id*. (citing *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627 (7th Cir. 2018). "Under that standard, 'the district *720 court's decision is to be overturned only if no reasonable person would agree with the trial court's ruling.' " *Id*. (citing *REXA, Inc. v. Chester*, 42 F.4th 652, 671 (7th Cir. 2022) (itself quoting *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011)).

## ARGUMENT

### I. Sanctions including default judgment are appropriate under Rule 37(e).

Fed. R. Civ. P. 37(e) grants the Court authority to impose sanctions against a party for the spoliation of relevant electronically stored information, with the severity of sanctions based on the intentionality of the spoliating party and prejudice to the moving party.

The moving party must satisfy five threshold requirements to raise a Rule 37(e) spoliation motion: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed

to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. *Pable v. Chicago Transit Auth.*, No. 19 CV 7868, 2024 WL 3688708, at *6 (N.D. Ill. Aug. 7, 2024), *aff'd*, 145 F.4th 712 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 1859, 224 L. Ed. 2d 360 (2026) (citing *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022) (citing Fed. R. Civ. P. 37(e)).

If all threshold requirements are met, the court must determine if the party seeking the ESI has suffered prejudice or if the party with possession, custody, or control of the ESI intended to deprive the seeking party of the ESI. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958–59 (N.D. Ill. 2021); Fed. R. Civ. P. 37(e)(1), (2).

**A. The information sought was relevant ESI.**

Fed. R. Civ. P. 34 allows discovery of relevant ESI, including documents, records, "data or data compilations" that are "in the responding party's possession, custody, or control … ." *See Pable*, 2024 WL 3688708, at *6 ("For the purposes of discovery, relevant ESI encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in that case.") (quoting *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Data from the FreePBX system would show whether call recording was globally enabled on VLG's system; the data was therefore not only relevant, but the best evidence available to assess Mr. Alholm's wiretapping allegations. *Id.* (in case where employee-plaintiff's participation in unauthorized test of employer's cybersecurity was in dispute, plaintiff's text messages with supervisor leading up to the test were relevant ESI because "the extent of plaintiff's involvement in" the test "and his potential motive to conduct it" were "key issues"; and their text messages after the event discussing the litigation" were relevant as potential impeachment). The discovery sought—i.e. records of the "design, capabilities, features, and/or implementation" of the FreePBX

system, including "technical specifications" and all ESI "relating to the recording of calls placed on or through Your Telephone System" (Ex. 8, ¶ 1, 3) go to the core of the controversy: Was the FreePBX system at VLG configured to call phone calls, and if so, during what time periods and at what VLG offices?

**B. The information sought was ESI within VLG's custody, control, and/or possession.**

VLG cannot deny that the ESI was within the custody, control, and/or possession of VLG, by and through its agents Mike Conlee and Sipcomm. *See Pable v. Chicago Transit Auth.*, 145 F.4th 712, 719–22 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 1859, 224 L. Ed. 2d 360 (2026) (spoliation committed by plaintiff's counsel as plaintiff's representative "meaning that [attorney's] actions were directly attributable to [plaintiff]."). The Seventh Circuit construes agency under Illinois law as "a consensual, fiduciary relationship between two legal entities created by law," and stated that "[t]he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (citations omitted). Sipcomm operated under the close control of VLG and its agents—specifically Eddie Vrdolyak, Jr., but also Grant Stoffle and Dalia Martinez. (Ex. 9, ¶ 3).

VLG, and specifically Eddie Vrdolyak, Jr., exercised clear control over the "manner and method" of Sipcomm's work. Conlee testified that Eddie Vrdolyak actively directed and managed all decisions about its IT and telephone systems and "VLG had the final say" about all high-level IT decisions, including what type of phone system was used and whether or not a call recording feature was activated, while Conlee and Surge IT merely served as advisors. (SAMF ¶ 2.) Any request to activate call recording, according to Conlee, "would have to come directly from Eddie." (Ex. 2, Conlee Tr., at p. 55:12-13).

Sipcomm, in turn, was in direct control of the servers—which Conlee owned under the Sipcomm name—where the FreePBX data was stored. (Ex. 2, Conlee Tr., p. 40:2-24; Ex. 10, Walker Tr., p. 5:1-5). The Court has already heard proof that Conlee's other employees were relatives with inflated titles and one entirely "made up" employee (SAMF ¶ 1).; and has recently considered the limited extent of Jeff Norris' purported involvement in Sipcomm. (Dkt. 195, p. 16 (noting that Norris "has no personal knowledge of VLG's FreePBX system.")).

Up to the time of erasure, VLG through Conlee had total and unfettered control of the FreePBX server data.

**C. VLG's duty to preserve the ESI began on January 24, 2020, when it reasonably anticipated litigation; or at the latest on February 14, 2020, when VLG itself initiated litigation related to call recording.**

VLG's duty to preserve its FreePBX phone data began on January 24, 2020, when Plaintiff Alholm notified VLG that he had reported them to the Illinois and Tennessee bars for specific violations of Federal, Illinois, and Tennessee law.

The duty to preserve ESI under Rule 37(e) is triggered "when litigation is commenced or reasonably anticipated." *Pable,* 2023 WL 2333414, at *20 (N.D. Ill. Mar. 2, 2023) (workplace litigation was reasonably foreseeable and created duty on date plaintiff consulted with attorneys about his placement on administrative leave pending an internal investigation) (quoting *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 619 (N.D. Ill. 2022); also quoting *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 929 (N.D. Ill. 2021) ("Whether a duty to preserve has arisen is an objective inquiry, viewed from the perspective of the [alleged spoliator] at the time.").

Viewed from the perspective of the experienced litigators at VLG, who had the additional benefit of outside counsel, litigation about the FreePBX system must have appeared not only likely but inevitable. In Defendant's own words, Alholm on January 24, 2020 accused VLG of "a host

of unethical and illegal conduct relating to the non-consensual recording of phone calls at all VLG offices" and even provided citations to the specific federal, Illinois, and Tennessee laws he alleged had been violated. (Ex. 1, ¶ 16-17). Alholm further notified VLG that he had reported his allegations to the Tennessee and Illinois attorney licensure boards, that the allegations were "currently the subject of multiple bar association investigations and … likely to be the subject of federal and state criminal investigations." *Id*. VLG received far more explicit notice than that in *Pable*, where the plaintiff's placement on administrative leave was found to be sufficient.

And VLG did actually anticipate litigation as of January 25, 2020, when it asked Alholm to contact "counsel for VLG" to "discuss his very serious allegations" and requested that he provide VLG's counsel with the name of his sources and any other "evidence" he had to support his allegations. (*Id*. ¶ 19). *See LKQ Corp. v. Gen. Motors Co.*, No. 20 C 02753, 2022 WL 14634800, at *6 (N.D. Ill. Oct. 25, 2022) (defendant's claim that it did not anticipate litigation at the time it sent "warning letters" to a third party contending that plaintiff was infringing defendant's patent was "not believable;" defendant's "own conduct" was sufficient notice that either it or plaintiff would initiate litigation regarding the alleged infringement); *Pable*, 2023 WL 2333414, at *21 (N.D. Ill. Mar. 2, 2023), (citing *Laub v. Horbaczewski*, Case No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *5 (C.D. Cal. Jul. 22, 2020) (plaintiffs' "duty to preserve ESI ... developed long before the suit was filed" where, *inter alia*, plaintiffs "began to speak with counsel" more than 17 months before filing suit). VLG further anticipated litigation when, on January 24th or 25th, it contacted its IT consultant to determine whether the phone system was, or could be used, as Alholm alleged." (Ex. 1, ¶ 21).

VLG received further external warning when it was, "[w]ithin days of Alholm's resignation … contacted by both the Tennessee Board of Professional Responsibility ("TBPR") and the Illinois

Attorney Registration and Disciplinary Commission ("IARDC") seeking responses to Alholm's wiretapping allegations. (*Id*., ¶ 24).

Most conclusively, VLG itself on February 14, 2020 ***filed a lawsuit against Alholm directly pertaining to the wiretapping allegations***. Even Eddie Vrdolyak, Jr., admits that by suing Alholm for Defamation, Breach of Fiduciary Duty, Defamation both *per se* and *per quod*, False Light, and Tortious Interference with Business Expectancy—all based on Alholm's allegations of call-recording—VLG was "almost guaranteeing that the issue of phone recordings are going to come to light and be part of [the] public record." (Ex. 4, Vrdolyak Tr., p. 179:7-12.)

Mr. Vrdolyak's statements lay plain the material relevance of the evidence as well: The phone system was the core of the controversy, and VLG—a litigation firm, led by litigators, with the further assistance of independent litigation counsel—could not reasonably think otherwise.

### D. The ESI was lost because VLG failed to take reasonable steps to preserve it, despite appreciating the relevance of the information.

The material nature of the data was obvious as of January 24, 2020, and VLG maintained custody, possession, and control of that data through its agent Sipcomm until August 2020, when VLG terminated its contract with Sipcomm and allowed the FreePBX server to be wiped in the middle of its own litigation.

In August 2020, six months into VLG's Illinois suit against Alholm, VLG admittedly chose to change telecom providers without taking a single step to copy, download, transfer, or archive the phone system that was the subject of their own lawsuit. (Ex. 5, Armbruster Tr., pp. 103:9-106:3) ("I don't know what there would have been to preserve.")

This conduct is so facially unreasonable for a group of professional litigators that it can only be deemed intentional. *See LKQ Corp.*, 2022 WL 14634800, at *7 (N.D. Ill. Oct. 25, 2022) (Defendant GM "acted unreasonably in not preserving" documents "foreseeably relevant" to

patent dispute when GM "was already alleging at the time of deletion that LKQ was infringing the patent"); *Tomasian v. C.D. Peacock, Inc.*, Case No. 09 C 5665, 2012 WL 13208522, at *6 (N.D. Ill. Nov. 8, 2012) ("The duty to preserve documents in the face of pending litigation is not a passive obligation. Rather, it must be discharged actively.")

Finally, the ESI cannot be restored or replaced through additional discovery, because the Sipcomm server was the only repository of VLG's FreePBX phone system data, and no backups were ever made or maintained. Ex. 10, Walker Tr., pp. 6:19-7 (noting that Conlee's failure to make backups was contrary to industry practice). *Pable*, 2024 WL 3688708, at *30 (N.D. Ill., Aug 07, 2024) (finding that lost ESI could not be replaced where plaintiff's phone was wiped and "neither the user-generated data on the phone from the time of the [disputed cybersecurity test] and what followed … nor the phone's settings, can be reproduced.")

## II. VLG's spoliation was intentional and justifies the extraordinary sanction of default judgment.

Because all five of the *Pable* threshold requirements are clearly met, "the court must determine if the party seeking the ESI has suffered prejudice or if the party with possession, custody, or control of the ESI intended to deprive the seeking party of the ESI." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958–59 (N.D. Ill. 2021). "If prejudice but not intent exists, then the court can impose curative measures" including barring evidence, "forbidding the party that failed to preserve information from putting on certain evidence," or "instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Id.* (citing Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendments; *Charlestown Capital Advisers, LLC. v. Acero Junction, Inc.*, 18-CV-4437, 2020 WL 5849096, at *16-17, 2020 U.S. Dist. LEXIS 180982, at *54 (S.D.N.Y. Sep. 30, 2020); Thomas Y. Allman, *Dealing with Prejudice: How Amended Rule 37(e) Has Refocused ESI Spoliation Measures*, 26 Rich. J. L. &

Tech. 1, 64-66 (2020) (collecting cases). "If intent (which presumes prejudice) exists, then the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default." *Id*. at 958-959 (citing Fed. R. Civ. P. 37(e)(2)).

Here, there is plain evidence of intent because VLG controlled the ESI, understood its relevance to active litigation, permitted and benefited from its destruction, and makes conflicting and implausible claims about the reasons for that destruction.

**A. Evidence of intentional destruction by VLG is sufficient to justify the extraordinary sanction of default judgment.**

To establish intent, Plaintiff "must also show destruction in bad faith," meaning that the non-moving party destroyed the evidence "for the purpose of hiding adverse information.'" *Bracey v. Grondin*, 712 F.3d 1012, 1019–20 (7th Cir. 2013) ("Without having seen the video, no prison official could have known the tapes potentially contained adverse information and, without that knowledge, could have destroyed the tapes for the purpose of hiding adverse information.") (quoting Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644 (7th Cir.2008)). "If intent (which presumes prejudice) exists, then the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information *959 was unfavorable, or entering dismissal or default." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958-959 (N.D. Ill. 2021). Intent must be established by a preponderance of the evidence. *Pable*, 2024 WL 3688708, at *8 (N.D. Ill. Aug. 7, 2024) (citing *Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, No. 1:16-CV-03371, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021). Intent to deprive is often established using circumstantial evidence. *Id*. citing *Hollis*, 603 F. Supp. 3d at 623.

The Seventh Circuit has directed District Courts to enunciate "the necessary appropriateness finding before imposing its selected remedy," using guidelines including but not limited to "including the seriousness of the spoliation, the misrepresentations related to the spoliation, the importance of the spoliated ESI, and the need to redress the harm inflicted by the spoliation" as well as a finding that "lesser sanctions, such as adverse instructions or presumptions" cannot "eliminate—or even substantially mitigate" the prejudice to the moving party. *Pable*, 145 F.4th at 722 (7th Cir. 2025).

**1. VLG's spoliation was sufficiently serious to warrant a finding of intentionality.**

Here, the seriousness of the spoliation is grave because of the ease with which the data could have been preserved, the sophistication of the custodial party, the extensive notice VLG had of their duty to preserve, and the flagrance with which they breached that duty.

According to Mike Conlee, "VLG had the final say" about all high-level IT decisions, including what type of phone system was used and whether or not a call recording feature was activated. (SAMF ¶ 2.) with Conlee describing as role as "I was more like an advocate, or I was advisory, I guess, would be a better word." Asked, over counsel's objection, "If VLG ever took the position that it didn't know what was going on with its phone system because that was all something Mike Conlee and Surge did, would that be an accurate statement?" Conlee testified, "No. The answer's no. They would know." (Ex. 2, Conlee Tr., pp. 120:16-121:1). Vrdolyak is in charge of all aspects of the firm, has ultimate authority over all of VLG's affairs, and "everything . . . go[es] through him." (*Id.*) VLG nonetheless failed, at any point from January to August 2020, or during its transition from Sipcomm to another phone provider, to direct Conlee to preserve any record of the phone system at issue in its own litigation. Nothing in the record indicates that any obstacle hindered them from doing so, nor was there any urgency in changing providers. (Ex. 5,

Armbruster Tr., p. 55:17-19 (explaining that once VLG switched to "switched over for CIO for our IT, it was kind of just a natural progression that we were going to switch over to them [CIO] for the phones.")

The legal sophistication of multiple actors involved in destroying the evidence also demonstrates the seriousness of the discovery violation. *See U. S. v. Sura*, 511 F.3d 654, 659 (7th Cir. 2007) (citing *U.S.* v. Loutos, 383 F.3d 615, 619 (7th Cir.2004), (defendant-attorney was "particularly sophisticated" party with "nearly four decades of legal experience and was therefore "familiar with contracts and the need to carefully read documents that are contractual in nature and signed by the party." *Id.* )

VLG holds itself out as "one of Illinois's premier personal injury law firms" (Ex. 1, ¶ 1). VLG describes Eddie Vrdolyak, Jr., as "a seasoned trial attorney" and head of VLG's trial team, who "specializes in wrongful death, personal injury and medical malpractice" litigation, whose successful outcomes have been published by The Illinois Jury Verdict Reporter and the Illinois Settlement Reporter."[2] Attorney Steve Armbruster is billed as a *cum laude* law-school graduate who similarly "focuses on the area of civil litigation" with this own published successes.[3] VLG was furthermore from January 24, 2020 and up to the present continuously assisted guided by attorney Robert D. Sweeney, is a seasoned litigator of complex and high-value matters, whose accolades in the area of trial advocacy include serving "as an adjunct professor and head trial team coach at Loyola University Chicago School of Law" and admission to practice before the United States Supreme Court.[4] It is inconceivable that not one of these three men thought to preserve the

[2] Profile of Edward J. Vrdolyak, https://www.vlglaw.com/edward-j-vrdolyak
[3] Profile of Steven C. Armbruster, https://www.vlglaw.com/steve-armbruster
[4] Profile of Robert D. Sweeney, https://www.ssbpartners.com/our-team/robert-d-sweeney/

FreePBX records during a six-month period of active litigation about the operation of the FreePBX system.

VLG cannot point to any justification—a lack of reasonable anticipation of litigation, ignorance of the evidentiary value of the data, or having destroyed the data in a "routine procedure"—as have been recognized in spoliation cases. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672 (7th Cir. 2008) (affirming denial of spoliation sanction; Motel's pre-suit destruction of security logs and other electronic data related to guest's alleged sexual assault did not warrant discovery sanction; motel had no reason to anticipate litigation after it conducted investigation that revealed numerous contradictory accounts by guest and no evidence that sexual assault had occurred.); *Bracey v. Grondin*, 712 F.3d 1012, 1019–20 (7th Cir. 2013) (affirming denial of spoliation sanction; in absence of evidence that any prison official "actually viewed the relevant video (or deliberately avoided watching the video for fear of what it contained) … no prison official could have known the tapes potentially contained adverse information and, without that knowledge, could have destroyed the tapes for the purpose of hiding adverse information)") (citing *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir.1985) (affirming denial of spoliation sanction when records destroyed under routine procedures)).

**2. VLG's misrepresentations concerning the spoliation were sufficient to warrant a finding of intentionality.**

VLG's unreasonable conduct and conflicting statements around the ESI are clear evidence of misrepresentation. VLG "contacted its IT consultant" immediately upon receipt of Alholm's January 24, 2020 resignation letter for the stated purpose of determining "whether the phone system was, or could be used, as Alholm alleged." (Ex. 1, ¶ p 6). Yet both VLG and its capable counsel failed, not only here but for the next six months, to raise the issue of data preservation with that consultant.

This failure is in direct odds with Mr. Vrdoylak's admitted understanding of the ESI's evidentiary value as of VLG's February 2020 suit against Alholm. Also at odds with that understanding is Mr. Armbruster's testimony that he didn't "know what there would have been to preserve" on the Sipcomm server.

In fact, Mr. Armbruster's testimony appears to concede that VLG intentionally chose to allow the FreePBX data to be deleted, based on Conlee's representations:

> Once we were told by the IT people and the SIPComm people that there were no audio recordings and it wasn't authorized and it wasn't possible, I don't know what there would be to preserve. I don't know what evidence there would be.

(Ex. 5, Armbruster Tr., p. 103:12-20).

In light of VLG's obvious preservation duty and Armbruster's analysis, it is deceptive to feign ignorance or hide behind a theory of passive deletion. Analogously, the *Pable* plaintiff was found to have intentionally destroyed text messages after failing to take reasonable steps to deactivate a fifty-message cap on his messaging platform which triggered an auto-delete function, and "changed his story to explain why the messages were deleted," after his initial explanation was refuted. *Pable*, 2024 WL 3688708, at *8 (N.D. Ill. Aug. 7, 2024) (quoting *DR Distributors,* 513 F. Supp. 3d at 979 (N.D. Ill. 2021) ("disabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI"); *see also*, *DR Distributors*, *supra*, at 931-933 ("courts continue to expect litigants to reasonably investigate and alter routine data destruction once litigation is reasonably anticipated to satisfy their preservation duties.") (other citations omitted).

After failing in its preservation duty, VLG further dissembled when asked in discovery to "Identify and describe all actions taken by VLG to investigate whether its Telephone System was able to record calls and/or was actually recording calls" (Ex. 9, ¶ 5). In response, VLG asserted

that it "made inquiries of Michael Conlee (of Surge IT Support), Tomas Cervera (of CIO Landing), Dean Walker (of Surge IT Support), and Chinua Gibson (a former VLG employee)" and "has requested repeatedly, for three years, that Alholm provide evidence supporting his allegations in his possession. Investigation continues." *Id*. For a party to claim that "investigation continues" after it has knowingly destroyed the most central repository of evidence, and to shift the burden of producing those records to Mr. Alholm is plainly disingenuous.

Equally deceptive is VLG's claim that it searched its servers for call-recording evidence *after* Sipcomm had wiped the FreePBX server and VLG moved to a new phone provider. Mr. Armbruster testified that, after receiving Lucy Del Real's 39 recorded audio files in the discovery for this litigation—well after the December 2020 Sipcomm erasure—VLG directed its new provider CIO to search VLG's servers for any evidence of call recording. Armbruster Tr. 56:6-7. No doubt VLG would also consider this futile gesture to be part of a continuing investigation. *See Pable* ("Dismissal is the appropriate sanction in the instant case given the record demonstrating plaintiff and Duffy's evasive tactics and dishonesty, and the court's finding that plaintiff intended to deprive CTA of relevant ESI.")

**3. The spoliated ESI had sufficient evidentiary importance to warrant a finding of intentionality.**

The spoliated ESI is central to this litigation. As the Court noted in its recent Order "the question that towers over all others is whether calls made over VLG's phone system were recorded," and "[i]f the answer to the call-recording question is 'no,' all other questions fall away." (Dkt. 195, p. 5).

By destroying all records and data of its FreePBX system, VLG has denied to Plaintiffs, the Court, and the jury the best evidence to answer that question. The lost ESI could provide exactly the common, admissible evidence of call recording this Court has identified as essential to

class certification. ("Rather, it means that the admissible evidence of call recordings that plaintiffs have proffered cannot serve as common evidence, so the question of whether VLG recorded class members' calls becomes an individualized one"). VLG has further hamstrung Mr. Alholm's ability to defend himself in the Illinois litigation. That such an outcome can be obtained by sophisticated attorneys who were at all times in custody and control of the ESI is not coincidental, negligent, or reckless. It was calculated destruction, after the initiation of litigation and in bad faith, for the purpose of hiding adverse information.

And indeed, VLG has availed itself of the paucity of evidence it has created, blaming Plaintiffs for their inability to produce ESI that VLG intentionally allowed to be destroyed. (Dkt. 123, p. 18) (arguing for summary judgment; "there is no evidence of any kind identifying what device was used to make any of the alleged recordings."); (Dkt. 173 at 10) (arguing for denial of class certification; "Plaintiffs have no evidence—direct or circumstantial—that audio recordings from the FreePBX System were ever created, let alone stored.")

**4. The need to redress the harm inflicted justifies a finding of intentionality.**

The spoliation at issue was so intentional and so extensive that Default judgment is the most appropriate method to redress the harm inflicted. As in *Pable*:

> A lesser sanction would not be sufficient to cure the prejudice that CTA has suffered due to the spoliation because it is "impossible to determine the full extent of the spoliation." *See Williams v. Am. Coll. of Educ., Inc.*, No. 16 C 11746, 2019 WL 4412801, at *15 (N.D. Ill. Sept. 16, 2019). As a result, it is difficult to ascertain "the presumably unfavorable effect of that information, and thus no way to craft instructions or presumptions that would eliminate—or even substantially mitigate—the prejudice to [the defendant]." *Id.* at *16. Dismissal of the complaint will help deter other litigants from engaging in similar conduct. *See Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2012 WL 1886353, at *3 (N.D. Ill. May 23, 2012).

*Pable*, 2024 WL 3688708, at *9 (N.D. Ill. Aug. 7, 2024).

The full extent of spoliation here similarly cannot be determined. VLG may have erased evidence that no recording took place, that isolated incidents of recording took place, that individual users did or did not have the ability to activate that recording, or that—as Plaintiffs allege—a practice of global, system-wide recording was in place for a period of months. The only source of that information was the Sipcomm database which Sipcomm, under VLG's direction, did not back up or preserve.

Lesser sanctions are not appropriate because they would not "eliminate—or even substantially mitigate—the prejudice to" Plaintiffs. *Pable*, 145 F.4th at 722 (7th Cir. 2025).

**B. In the alternative and upon a finding of prejudice but not intent, the Court should impose a jury instruction as an appropriate curative measure.**

If the Court finds that prejudice exists, but not intent, the Court may impose curative measures including barring VLG from putting on certain evidence, and/or instructing the jury that it can consider "the circumstances surrounding the loss of the ESI." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958–59 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendments; other citations omitted).

Prejudice has already manifested in the denial of class certification which the Court acknowledges is based on a lack of evidence. It has also been used by VLG as a weapon, both in demanding that Alholm produce evidence it knows it destroyed, and in arguing repeatedly that Alholm's lack of evidence is grounds for summary judgment and denying class certification. (Dkt. 123, p. 18) (arguing for summary judgment; "there is no evidence of any kind identifying what device was used to make any of the alleged recordings."); (Dkt. 173 at 10) (arguing for denial of class certification; "Plaintiffs have no evidence—direct or circumstantial—that audio recordings from the FreePBX System were ever created, let alone stored.")

Plaintiffs are entitled to, at minimum, a jury instruction entitled the jury to draw an adverse inference from VLG's extensive spoliation.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Court grant the requested relief.

Date: October 19, 2025

Respectfully submitted,

John Spragens, TN Bar No. 31445
SPRAGENS LAW PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2025, a true and accurate copy of the foregoing motion has been served via the Court's CM/ECF system upon:

Robert D. Sweeney
Erin I. Wenger
SWEENEY SCHARKEY LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Tel. (312) 384-0500

*Counsel for Defendant Vrdolyak Law Group, LLC*

John Spragens